## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A.<br><br>Plaintiff,<br><br>v.<br><br>CIGNA HEALTH AND LIFE INSURANCE COMPANY, and SUNRISE SENIOR LIVING, INC.,<br><br>Defendants. | Civil Action No.  17-2055 (FLW) (DEA)<br><br>*Document electronically filed* |

---

### DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO DISMISS COUNTS I, II, IV AND V OF THE SECOND AMENDED COMPLAINT

---

E. Evans Wohlforth, Jr.
Calvin K. May
Timothy D. Tremba
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102-5310
(973) 596-4500

*Attorneys for Defendants*

## TABLE OF CONTENTS

**PAGE**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

PROCEDURAL HISTORY AND FACTUAL BACKGROUND ................................. 2

STANDARD OF REVIEW ..................................................................................................... 4

ARGUMENT ............................................................................................................................... 5

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT
      AGAINST CIGNA BECAUSE CIGNA'S AGREEMENT WITH MULTIPLAN
      DOES NOT OBLIGATE CIGNA TO PAY PLAINTIFF'S CLAIMS AT 85% OF
      BILLED CHARGES ........................................................................................................ 5

II.   PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT
      MISREPRESENTATION AGAINST CIGNA AND SUNRISE BECAUSE
      THERE WAS NO INCORRECT STATEMENT .................................................... 7

III.  PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA'S PENALTY
      PROVISION BECAUSE PLAINTIFF FAILED TO ISSUE A WRITTEN
      REQUEST TO SUNRISE AND CIGNA IS NOT THE PLAN
      ADMINISTRATOR. .......................................................................................................... 9

IV.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST CIGNA AND SUNRISE
      FOR BREACH OF FIDUCIARY DUTY BECAUSE PLAINTIFF WAS NOT
      ASSIGNED EQUITABLE CLAIMS AND IT DUPLICATES THE CLAIM FOR
      BENEFITS. ........................................................................................................................ 12

      A.    Plaintiff Does Not Have Standing to Bring a Fiduciary Duty Claim
            Through Its Assignment of Benefits. .............................................................. 12

      B.    Count V Seeks Relief Under ERISA § 502(a)(3) That Is Duplicative Of
            Count III's Claim For Benefits under § 502(a)(1). ..................................... 16

CONCLUSION ....................................................................................................................... 18

# **TABLE OF AUTHORITIES**

**PAGE(S)**

## CASES

*In re Advanta Corp. SEC. Litig.*,
    180 F.3d 525 (3d Cir. 1999)...................................................................................7

*In re Aetna UCR Litig.*,
    No. 07-cv-3541, 2015 U.S. Dist. LEXIS 84600 (D.N.J. June 30, 2015)...............16

*Arcand v. Brother Int'l Corp.*,
    673 F. Supp. 2d 282 (D.N.J. 2009) ........................................................................8

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)................................................................................................4

*Atl. Spinal Care v. Aetna*,
    No. 12-cv-6759, 2014 U.S. Dist. LEXIS 45789 (D.N.J. Mar. 31, 2014) ..............10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)................................................................................................4

*Biomed Pharms, Inc. v. Oxford Health Plans, Inc.*,
    775 F. Supp. 2d 730 (S.D.N.Y. 2011).............................................................14, 15

*Bloomfield Surgical Ctr. v. Cigna Health & Life Ins. Co.*,
    No. 16-8645 (SDW) (LDW), 2017 U.S. Dist. LEXIS 80895 (D.N.J. May 25,
    2017) ................................................................................................................7, 13

*Campo v. Oxford Health Plans, Inc.*,
    No. 06-cv-4332, 2007 U.S. Dist. LEXIS 45804 (D.N.J. June 26, 2007)...............11

*Chang v. Life Ins. Co. of N. Am.*,
    No. 08-cv-19, 2008 U.S. Dist. LEXIS 46815 (D.N.J. June 17, 2008)..............17, 18

*Cohen v. Horizon Blue Cross Blue Shield of N.J.*,
    No. 13-cv-3057, 2013 U.S. Dist. LEXIS 153438 (D.N.J. Oct. 25, 2013) ..............10

*Ctr. for Orthopedics & Sports Med. v. Horizon*,
    No. 13-1963 (KSH) (CLW), 2015 U.S. Dist. LEXIS 133763 (D.N.J. Sept. 30,
    2015) ......................................................................................................................12

*Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*,
    No. 09-cv-6566, 2010 U.S. Dist. LEXIS 128289 (D.N.J. Dec. 6, 2010)..............11, 14, 15, 17

*Demaria v. Horizon Healthcare Servs.*,
    2013 U.S. Dist. LEXIS 107422 (D.N.J. July 31, 2013)..........................................7

*DeVito v. Aetna, Inc.*,
    536 F. Supp. 2d 523 (D.N.J. 2008) ......................................................................18

*Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*,
    784 F. Supp. 2d 508 (D.N.J. 2011) ........................................................................7

*Duquesne Light Co. v. Westinghouse Elec. Co.*,
    66 F.3d 604 (3d Cir. 1995).....................................................................................8

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).....................................................................................4

*Frederico v. Home Depot*,
    507 F.3d 188 (3d Cir. 2007)..................................................................................7, 8

*Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*,
    24 F.3d 1491 (3d Cir. 1994)....................................................................................9

*High Crest Functional Med. LLC v. Horizon Blue Cross Blue Shield of N.J., Inc.*
    *(In re High Crest Functional Med. LLC)*,
    Civil Action No. 15-8876, 2017 U.S. Dist. LEXIS 47301 (D.N.J. Mar. 30,
    2017) .......................................................................................................................10

*Mason v. Coca-Cola Co.*,
    774 F. Supp. 2d 699 (D.N.J. 2011) ........................................................................7

*McCoy v. Bd. of Trs. of Laborers' Int'l Union Local No. 222*,
    188 F. Supp. 2d 461 (D.N.J. 2002), *aff'd*, 2003 U.S. App. LEXIS 5756
    (3d Cir. Mar. 25, 2003) ........................................................................................17

*Montefiore Med. Ctr. v. Local 272 Welfare Fund*,
    2015 U.S. Dist. LEXIS 145469 (S.D.N.Y. Oct. 19, 2015) ..............................14, 15

*Morley v. Avaya, Inc. Long Term Disability Plan*,
    No. 04-409, 2006 U.S. Dist. LEXIS 53720 (D.N.J. Aug. 3, 2006) .......................17

*N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*,
    801 F.3d 369 (3d Cir. 2015)...............................................................................12, 13

*Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*,
    388 F.3d 393 (3d Cir. 2004)..................................................................................12

*Pension Benefit Guar. Corp. v. White Consol. Indus.*,
    998 F.2d 1192 (3d Cir. 1993)..................................................................................5

*Phillips v. Cty. of Allegheny*,
    515 F.3d 224 (3d Cir. 2008)....................................................................................4

*Piscopo v. Public Service Electric and Gas Co.*,
  No. 13-cv-552, 2015 U.S. Dist. LEXIS 82982 (D.N.J. June 25, 2015)...................................11

*Porcellini v. Strassheim Printing Co., Inc.*,
  578 F. Supp. 605 (E.D. Pa. 1983) ........................................................................................9

*Premier Health Ctr., P.C. v. UnitedHealth Grp.*,
  292 F.R.D. 204 (D.N.J. 2013)...............................................................................................13

*Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*,
  Civil Action No. 16-01649, 2017 U.S. Dist. LEXIS 26671 (D.N.J. Feb. 27,
  2017) .......................................................................................................................................9

*Rojas v. Cigna Health & Life Ins. Co.*,
  793 F.3d 253 (2d Cir. 2015)............................................................................................14, 15

*Spine Surgery Assocs. & Discovery Imaging, P.C. v. INDECS Corp.*,
  50 F. Supp. 3d 647 (D.N.J. 2014) ....................................................................................9, 10

*Stallings v. IBM Corp.*,
  No. 08-3121 (RBK/JS), 2009 U.S. Dist. LEXIS 81963 (D.N.J. Sep. 8, 2009) .......................9

*Varity Corp. v. Howe*,
  516 U.S. 489 (1996)..............................................................................................14, 16, 17

*In re Wargotz v. NetJets, Inc.*,
  No. 09-cv-4789, 2010 U.S. Dist. LEXIS 47118 (D.N.J. May 13, 2010)................................11

**Statutes**

28 U.S.C. § 1132(a)(3)............................................................................................................12, 17

28 U.S.C. § 1445(d) .....................................................................................................................3

29 U.S.C. § 1001 ..........................................................................................................................1

29 U.S.C. § 1002(16)(A)...........................................................................................................10, 11

29 U.S.C. § 1132(a)(1)(B) .......................................................................................................2, 3

29 U.S.C. § 1132(c)(1)............................................................................................................9, 10

29 U.S.C. § 1132(c)(1)(B) ....................................................................................................9, 10, 11

N.J.S.A 26:2S-6.1(c)....................................................................................................................13

**Rules**

Fed. R. Civ. P 12(b)(6)..............................................................................................................1, 4

iv

Rule 9(b) ...................................................................................................................7

Defendants Cigna Health and Life Insurance Company ("Cigna") and Sunrise Senior Living, LLC (improperly named as Sunrise Senior Living, Inc.) ("Sunrise") respectfully submit this memorandum of law in support of their motion to dismiss Counts I, II, IV and V of the Second Amended Complaint ("SAC"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set forth below, Defendants respectfully request that the motion be granted and that these claims be dismissed with prejudice.

## PRELIMINARY STATEMENT

Plaintiff, a plastic surgery center, alleges that it is owed money from an employee health benefit plan (the "Plan") governed by the Employee Retirement Income Security Act, 29 U.S.C. § 1001 *et seq.* ("ERISA") for plastic surgery services provided to an employee of Sunrise, the sponsor of the Plan.  Only one Count of the Complaint states a claim that can survive outright dismissal:  the straightforward ERISA claim for benefits actually raised under the ERISA statute (Count III).  The balance of the claims fail as a matter of law.

The breach of contract (Count I) claim fails because neither CIGNA nor Sunrise is a party to an agreement with Plaintiff, and the agreement Plaintiff does rely upon lacks the term Plaintiff alleges.  The negligent misrepresentation claim (Count II) fails because there was no misstatement.  The accused statement (actually a logo on the patient's insurance card) does not approach the detailed misstatement of party obligations necessary to sustain Plaintiff's theory of the case.  At most, it signifies that CIGNA uses a certain pricing vendor, a true statement.  The economic loss rule bars the claim in any event.  In Count (IV), Plaintiff fails to allege (likely because it cannot) the pre-requisites to claiming a statutory penalty for failure to provide Plan documents against Sunrise, and CIGNA is the wrong party to sue under this provision in any event.  Lastly, Count IV for breach of fiduciary duty is invalid under several distinct strands of

ERISA law, not least because Plaintiff—a medical provider/assignee of a claim for benefits—lacks standing to bring a claim for breach of fiduciary duty to the Plan.

This case is about whether Plaintiff received correct payment under the terms of an ERISA plan.  The case should proceed under the section of ERISA that specifically provides for such a claim in this Court—29 U.S.C. § 1132(a)(1)(B), the section alleged in Count III.  Sunrise, as the Plan Sponsor and Administrator, and CIGNA, as the Plan's claims administrator, are ready to defend the resolution of the claims as proper under the Plan.  The balance of the allegations should be cleared away.  They are unnecessary to Plaintiff getting full relief if its claim for benefits has merit (it does not), and are not worth the attention of the Court nor the expenditure of its resources.

<u>**PROCEDURAL HISTORY AND FACTUAL BACKGROUND**</u>

Plaintiff The Plastic Surgery Center, P.A. ("Plaintiff") specializes in plastic and reconstructive surgery.  Second Am. Compl. ("SAC") ¶ 1 [ECF No. 15].  Plaintiff allegedly provided medical services to a patient, K.D. (the "Patient") on July 23, 2015.  SAC ¶ 2.  The Patient was allegedly "a participant or beneficiary of an employee welfare benefit plan" sponsored and administered by Sunrise.  SAC ¶¶ 8, 9.  Sunrise allegedly contracted with Cigna to administer the plan.  SAC ¶ 10.

Plaintiff billed $184,962.00 for the July 23 procedure.  SAC ¶ 22.  Defendants allegedly paid $1,975.04 for the services.  SAC ¶ 23.  Plaintiff alleges that a contract exists between it and a third-party, Multiplan, LLC ("Multiplan") under which Plaintiff is a member of Multiplan's network and which, allegedly, entitles Plaintiff to 85% of the billed amount, or $157,217.70.  Plaintiff further alleges (on information and belief) that a second contract between Cigna and Multiplan requires Cigna to pay the Multiplan rate.  SAC ¶¶ 13, 14, 17, 18, 22.

"[I]n the alternative in the event it turns out to be the case that Cigna was not party to an agreement with Multiplan requiring it to reimburse Plaintiff at rates established and agreed upon between Multiplan and Plaintiff[,]" Plaintiff alleges that the Patient's Cigna ID card bore, *inter alia,* a Multiplan logo.  Plaintiff further alleges that this logo constitutes a misrepresentation by Cigna that it would pay the rates to which Plaintiff and Multiplan had independently agreed. SAC ¶¶ 10, 15, 32, 33.  Plaintiff alleges that it reasonably relied on the statement allegedly manifested in this logo, to its detriment.  SAC ¶ 34.

Finally, Plaintiff alleges that it requested documents, including the Patient's plan, from Cigna on April 14, 2016 and never received them until June 30, 2017.  SAC ¶¶ 42, 46.  The Complaint does not say that this request was made to Sunrise and it does not say that the request was made in writing.

On February 6, 2017, Plaintiff filed suit in the Superior Court of New Jersey, Law Division, Monmouth County against Defendant Cigna Health and Life Insurance Company ("Cigna") and unnamed corporate defendants.  [ECF No. 1-1].  Notably, Plaintiff's state court complaint asserted only claims for breach of contract, breach of implied-in-fact contract, and unjust enrichment.  *Id.*

Cigna removed the action to this Court on March 29, 2017, pursuant to 28 U.S.C. § 1445(d).  [ECF No. 1].  As suggested by the Court during the parties' initial pretrial conference of May 5, 2017, and in order to avoid preemption, Plaintiff filed a First Amended Complaint ("FAC") on May 19, 2017 to assert a single claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  [ECF No. 6].  Cigna answered the FAC on July 10, 2017.  [ECF No. 12].  With Cigna's consent, Plaintiff then sought and obtained leave to file a Second Amended Complaint ("SAC") to add Defendant Sunrise Senior Living, LLC (improperly named as Sunrise Senior Living, Inc.) ("Sunrise") and to assert additional causes of action.  [ECF Nos. 13, 14].

3

For reasons that are unclear, the SAC also added a number of new claims: (1) breach of contract against Cigna, (2) negligent misrepresentation against Cigna and Sunrise, (3) a claim for benefits under ERISA against Cigna and Sunrise, (4) a claim for a penalty under ERISA against Cigna and Sunrise, and (5) a claim for breach of fiduciary duty under ERISA against Cigna and Sunrise. [ECF No. 15]. As directed by the Court during the September 7, 2017 case management conference, the parties conferred on September 12, 2017 regarding the viability of the new claims in the SAC. This motion follows.

## STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus "a complaint must do more than allege the plaintiff's entitlement to relief. [It] has to show such entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

While the Court must accept a complaint's well-pleaded factual allegations, it should disregard "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Santiago*, 629 F.3d at 128; *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) ("The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions."). Here, even construing the allegations within Counts I, II, IV, and V in the light most favorable to Plaintiff, *see Phillips v. Cty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008), they do not state actionable claims. For this reason, they ought to be dismissed.

**ARGUMENT**

For the reasons stated below, Cigna and Sunrise request that the Court dismiss Counts I, II, IV, and V, and reduce this case to the claim that Cigna originally answered—a claim for benefits under ERISA.

**I.     PLAINTIFF FAILS TO STATE A CLAIM FOR BREACH OF CONTRACT AGAINST CIGNA BECAUSE CIGNA'S AGREEMENT WITH MULTIPLAN DOES NOT OBLIGATE CIGNA TO PAY PLAINTIFF'S CLAIMS AT 85% OF BILLED CHARGES.**

In Count I, Plaintiff alleges a new state law cause of action for breach of contract under a bifurcated theory of privity.  Allegedly, Plaintiff has an agreement with Multiplan to pay certain rates and Multiplan has an agreement with Cigna that compels Cigna to pay those rates.    SAC ¶ 29.  Plaintiff specifically alleges, upon information and belief, that "when Cigna became a participant in Multiplan's network, it agreed to reimburse healthcare providers within Multiplan's network, such as Plaintiff, according to the terms negotiated between Multiplan and the healthcare providers in its network."  SAC ¶17.

Plaintiff's problem is that the Cigna/Multiplan agreement simply has no such requirement.  There are two integrated documents, a Master Services Agreement and then a subordinate Statement of Work incorporated thereto.  *See* Decl. of May ¶3 Master Services Agreement; ¶ 4 Statement of Work No. 1 for Provider Network Services ("Statement of Work").[1]

---

[1] The Court may consider the Master Services Agreement and Statement of Work between Cigna and MultiPlan without converting Cigna's motion into one for summary judgment because, "the reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond.  When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished."  *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1197 (3d Cir. 1993).  The SAC references and relies upon Cigna's agreement with MultiPlan.

Review of these documents makes clear that Multiplan is a service provider hired to negotiate adjusted fees for claims referred to it by Cigna.

Under the Statement of Work, at sections 1.1(A)(1) and (2), MultiPlan agreed to "receive claims referred by [Cigna]" and "attempt to price referred claims according to the terms of . . . provider contracts." *See* Statement of Work, Ex. <u>B</u> to May Decl.  Under section 1.1(B), Cigna agreed to "forward claims to [MultiPlan] as determined by [Cigna], in a mutually agreed upon format." *Id.*  The Statement of Work establishes that Cigna has discretion to refer claims to MultiPlan, because Cigna can refer claims to Multiplan or not as it sees fit.

Even more fatal to Plaintiff's claim, nowhere in the Master Services Agreement does Cigna promise to pay an amount negotiated between MultiPlan and providers.  *See* Master Services Agreement, Ex. <u>A</u> to May Decl.  On the contrary, the Master Services Agreement makes clear that Multiplan had no power to bind Cigna whatsoever:

> The status of [MultiPlan] is that of an independent contractor and not that of a servant, agent, or employee of [Cigna] or any Affiliated Company.  Neither [MultiPlan] nor [MultiPlan] Personnel will hold itself out as, or claim to be acting as, an employee, agent, or servant of [Cigna] or any Affiliated Company. <u>[MultiPlan] is not authorized to, and will not make any agreements or representations on behalf of [Cigna] or any Affiliated Company</u>.

Master Services Agreement at §13.2 (emphasis added).  This provision makes clear that MultiPlan is not authorized to agree on Cigna's behalf that Cigna shall pay a certain rate on a provider's claim.  In fact, Cigna is not obligated to use MultiPlan's services to reprice claims at all.

Thus, the obligation that Plaintiff alleged, upon information and belief, that Cigna is required to pay amounts based upon an agreement between Multiplan and medical providers does not actually exist.  There can be no claim for breach of contract between the provider and Cigna therefore, and the breach of contract claim must be dismissed.

## II. PLAINTIFF FAILS TO STATE A CLAIM FOR NEGLIGENT MISREPRESENTATION AGAINST CIGNA AND SUNRISE BECAUSE THERE WAS NO INCORRECT STATEMENT.

Hedging its "on information and belief" bet that there is some contractual obligation obligating Cigna to pay providers at whatever rate MultiPlan separately promised, Plaintiff puts a few chips on the fact that its Patient's insurance card shows a MultiPlan logo. Plaintiff alleges that, in the event that there is no actual contractual obligation, this simple logo silently implies everything Plaintiff imagined Cigna's MultiPlan contract said—that Cigna would pay Plaintiff at 85% of its billed charges. This claim for negligent misrepresentation fails for several reasons.

Negligent misrepresentation requires a showing of: "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance." *Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (citations omitted). Rule 9(b) applies to a claim for negligent misrepresentation. *Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 532 (D.N.J. 2011); *Demaria v. Horizon Healthcare Servs.*, 2013 U.S. Dist. LEXIS 107422, *18 (D.N.J. July 31, 2013). Plaintiff must therefore "allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007); *see also In re Advanta Corp. SEC. Litig.*, 180 F.3d 525, 534 (3d Cir. 1999) (fraud claimant must allege "the who, what, when, where, and how: the first paragraph of any newspaper story").

Plaintiff alleges that, "Cigna issued K.D. an identification card indicating Cigna participated in Multiplan's network." SAC ¶ 15. Plaintiff alleges that "[b]y including the Multiplan logo on K.D.'s identification card, Cigna and Sunrise represented that they would abide by a healthcare provider's agreement with Multiplan, such as Plaintiff's, to participate in the Multiplan network at agreed upon reimbursement rates." SAC ¶ 33. The Court will be able

to see that the logo does nothing of the kind.  Plaintiff extrapolates this complex, two-part (Cigna to MultiPlan, MultiPlan to provider) contractual obligation out of thin air, not from the simple Multiplan logo.  Far from "inject[ing] precision or some measure of substantiation" into its claim, *Frederico,* 507 F.3d at 200, Plaintiff's alleged misstatement of fact requires a leap of fantasy.

All Plaintiff alleges is a logo indicating that the Patient's plan is a part of the Multiplan "Network Savings Program."  *See* Ex. B to SAC [ECF No. 15 at 74].  Plaintiff itself alleges that this is, in fact, a correct statement.  *See* SAC ¶ 17 ("Cigna became a participant in Multiplan's network[.]").  Thus, the only statement embodied in the MultiPlan logo is in fact correct. Whatever further statement Plaintiff imports into the logo is its own—the logo does not objectively represent that Cigna "agreed to reimburse healthcare providers within Multiplan's network . . . according to the terms negotiated between Multiplan and the healthcare providers in its network."  SAC ¶ 17.  Plaintiff makes no effort to allege its basis for assuming that Cigna or Sunrise meant what Plaintiff claims it assumed they meant by putting the MultiPlan logo on the card.

Alternatively, in the event that Plaintiff's breach of contract survives this motion to dismiss, Plaintiff's negligent misrepresentation claim is precluded by the economic-loss doctrine. That doctrine "prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract."  *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995); *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 308 (D.N.J. 2009) ("Whether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties.").  Thus, the economic losses which Plaintiff seeks to recover in its negligent misrepresentation claim are the same as those it seeks to recover in its contract claim, and the conduct giving rise to the misrepresentation claim

is not extrinsic to the contract—either through express contract or negligent misrepresentation, Plaintiff seeks payment of 85% of its billed charges.  The negligent misrepresentation claim is therefore precluded by the economic-loss doctrine.

## III.    PLAINTIFF FAILS TO STATE A CLAIM UNDER ERISA'S PENALTY PROVISION BECAUSE PLAINTIFF FAILED TO ISSUE A WRITTEN REQUEST TO SUNRISE AND CIGNA IS NOT THE PLAN ADMINISTRATOR.

Count IV of the SAC asserts a claim arising from Defendants' supposed failure to supply Plaintiff with certain documents within thirty (30) days of a request in violation of 29 U.S.C. § 1132(c)(1)(B).  "In order to state a claim under § 1132(c)(1), a plaintiff must allege that 1) it made a request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request."  *Spine Surgery Assocs. & Discovery Imaging, P.C. v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014).

> Section 502(c)(1) is a penal statute and as such is "narrowly construed." *Groves*, 803 F.2d at 118.  This means that the terms of the statute are strictly defined, *see Haberern v. Kaupp Vascular Surgeons Ltd. Defined Benefit Pension Plan*, 24 F.3d 1491, 1505 (3d Cir. 1994), and a plaintiff seeking damages under the statute must show compliance with the "statutory prerequisites." *Porcellini v. Strassheim Printing Co., Inc.*, 578 F. Supp. 605, 611 (E.D. Pa. 1983).  In this dispute, Plaintiff[] must therefore show that there was "written request" for plan information, IBM failed to comply with the request, and a monetary penalty is warranted. *See* § 1132(c)(1).

*Stallings v. IBM Corp.*, No. 08-3121 (RBK/JS), 2009 U.S. Dist. LEXIS 81963, at *32 (D.N.J. Sep. 8, 2009).

Preliminarily, and fatal to Plaintiff's claim, Plaintiff has failed to allege a *written* request to any Defendant.  *See Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, Civil Action No. 16-01649, 2017 U.S. Dist. LEXIS 26671, at *13 (D.N.J. Feb. 27, 2017) ("Although Plaintiff alleges that it 'requested plan materials on behalf of Patients A.G., C.P.,

[and] B.G.,' Plaintiff does not allege that it sent a *written* request. . . . For that reason, Count Eight is insufficiently pled and dismissed without prejudice.").

As to Sunrise, Plaintiff here has failed to allege that it strictly complied with 502(c)(1)(B) because there is no allegation that Plaintiff ever made a written request to Sunrise, the Plan Administrator.  Plaintiff's excuse that it allegedly wrote instead to Cigna, as Sunrise's agent, is insufficient as a matter of law.  *See High Crest Functional Med. LLC v. Horizon Blue Cross Blue Shield of N.J., Inc. (In re High Crest Functional Med. LLC)*, Civil Action No. 15-8876, 2017 U.S. Dist. LEXIS 47301, at *9 (D.N.J. Mar. 30, 2017) (dismissing section 502(c)(1)(B) claim against plan administrator where plaintiffs alleged only that they requested plan documents from the claims administrator and finding respondeat superior theory unpersuasive).

With respect to Cigna, Plaintiff's claim fails because it is not the "Plan Administrator" of the plan as defined by ERISA and therefore is not responsible for providing plan documents to Plaintiff under the statute.  This is established on the face of the SAC.  *See* SAC ¶ 9 (alleging that Sunrise is plan sponsor and administrator).  ERISA defines the 'administrator', in pertinent part, to mean "the person specifically so designated by the terms of the instrument under which the plan is operated." 29 U.S.C. § 1002(16)(A).  "[C]ourts have consistently held that the statute [29 U.S.C. § 1132(c)(1)] means what it says:  the Plan administrator is the only liable entity on this count." *See Spine Surgery Assocs. & Discovery Imaging, P.C. v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014) ("[L]iability attaches only to the specifically designated plan administrator."); *accord Atl. Spinal Care v. Aetna*, No. 12-cv-6759, 2014 U.S. Dist. LEXIS 45789, at *39 (D.N.J. Mar. 31, 2014) (where SPD identified employer as plan administrator, court held that "'as [Aetna] is not the administrator, it cannot be held liable under 29 U.S.C. § 1132(c)(1)(B)'") (quoting *Cohen v. Horizon Blue Cross Blue Shield of N.J.*, No. 13-cv-3057, 2013 U.S. Dist. LEXIS 153438, at *26 (D.N.J. Oct. 25, 2013)); *Ctr. for Special Procedures v.*

*Conn. Gen. Life Ins. Co.*, No. 09-cv-6566, 2010 U.S. Dist. LEXIS 128289, at *31-32 (D.N.J. Dec. 6, 2010) (Collecting cases and stating "Plaintiff's allegation that the relevant SPDs expressly designate 'CIGNA Corporation' as the 'claims administrator' does not suffice to indicate that Defendants are the plan administrator for the plans at issue.  Thus, the potentially liable party under 29 U.S.C. § 1132(c)(1)(B) would be the plan sponsor of each ERISA plan, not Defendants."). Put simply, section 502(c)(1) does not apply to Cigna because Cigna is not the plan administrator of the ERISA benefits plan here at issue.

Finally, for the same rule of strict construction that dooms Plaintiff's attempt to impose liability on Sunrise based on theories of agency, so too fails Plaintiff's argument that Cigna was a *de facto* plan administrator.  *See* SAC ¶ 12; *see also Campo v. Oxford Health Plans, Inc.*, No. 06-cv-4332, 2007 U.S. Dist. LEXIS 45804, at *13-15 (D.N.J. June 26, 2007) (refusing to hold Oxford liable under section 502(c)(1) where it was not the plan administrator and rejecting attempt to impose liability based on *de facto* plan administrator theory); *Piscopo v. Public Service Electric and Gas Co.*, No. 13-cv-552, 2015 U.S. Dist. LEXIS 82982, at *16-18 (D.N.J. June 25, 2015) (dismissing with prejudice the plaintiff's claim for penalties under ERISA section 502(c)(1)(B) where the plaintiff "conclusorily assert[ed] that [the defendants] [we]re administrators and fiduciaries of each plan and/or *de facto* under ERISA" but had "not pled any facts indicating that [the defendants] f[ell] within th[e] statutory definition" of plan administrator, which "refers only to '(i) the person specifically so designated by the terms of the instrument under which the plan is operated; (ii) if an administrator is not so designated, the plan sponsor; or (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe'") (quoting 29 U.S.C. § 1002(16)(A)), aff'd, 650 F. App'x 106 (3d Cir. 2016); *In re Wargotz v. NetJets, Inc.*, No. 09-cv-4789, 2010 U.S. Dist. LEXIS 47118, at *15 (D.N.J. May 13, 2010)

("Plaintiff invites the Court to identify NetJets, Inc. and NJ Executive Services, Inc. as '*de facto*' administrators but cites to no binding precedent allowing this Court to do so.  In fact, this Court is inclined to agree with another court in this district, which refused to recognize a '*de facto*' administrator since doing so 'would require the Court to ignore the statutory language that imposes a duty on the plan's "administrator" alone.'").

Count IV, therefore, should be dismissed as to both Defendants.

## IV.   PLAINTIFF FAILS TO STATE A CLAIM AGAINST CIGNA AND SUNRISE FOR BREACH OF FIDUCIARY DUTY BECAUSE PLAINTIFF WAS NOT ASSIGNED EQUITABLE CLAIMS AND IT DUPLICATES THE CLAIM FOR BENEFITS.

Plaintiff lastly adds a claim for breach of fiduciary duty against Cigna and Sunrise.  This claim fails as to both defendants for the reasons stated below.

### A.   Plaintiff Does Not Have Standing to Bring a Fiduciary Duty Claim Through Its Assignment of Benefits.

Plaintiff, as a healthcare provider, has no primary standing to assert a claim under 28 U.S.C. § 1132(a)(3).  *See Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("By its terms, standing under the statute is limited to participants and beneficiaries.").  Thus, if Plaintiff is to have any standing to bring a claim for breach of fiduciary duty under ERISA, it must depend on its assignment of benefits.  *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015) ("[H]ealthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary.").  "In determining what claims a healthcare provider may bring under ERISA, courts look to the language of the assignment." *Ctr. for Orthopedics & Sports Med. v. Horizon*, No. 13-1963 (KSH) (CLW), 2015 U.S. Dist. LEXIS 133763, at *13 (D.N.J. Sept. 30, 2015).  Plaintiff's Assignment of Benefits here states:

1. <u>Assignment of Right to Reimbursement and Payment</u>. Pursuant to N.J.S.A 26:2S-6.1(c) and the common law, I hereby assign any and all of my rights to receive payments to any and all benefits under my insurance policy to my medical provider, The Plastic Surgery Center, P.A. ("TPSC"), relating to and/or arising out of any and all medical treatment provided by TPSC to me, including, but not limited to, major medical, personal injury protection (PIP), and workers' compensation benefits otherwise payable to me, regardless of whether TPSC is a participating or non-participating provider of my health insurance carrier.

2. <u>Irrevocable Assignment of All Benefits and Legal Rights</u>. I hereby irrevocably assign to TPSC any and all of my legal rights, benefits, and claims relating to and/or arising out of my health insurance policy/policies and the medical treatment provided by TPSC to me; the assignment to TPSC includes, but is not limited to, any and all of my legal rights to major medical, personal injury protection (PIP), and workers compensation benefits, and includes, but is not limited to, my assignment of any and all legal rights to file and prosecute my legal rights and benefits to any and all appeals, claims, and litigation against my health insurance policy/policies relating to and/or arising out of the aforesaid.

The Plastic Surgery Center Assignment of Benefits (CIGNA0124), Ex. <u>C</u> to May Decl.; *see also* SAC ¶ 20 (referencing Assignment of Benefits).  The limited nature of Plaintiff's assignment here has legal significance.  *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 n.4 (3d Cir. 2015) (unless an assignment of benefits contains "limitless language," provider-assignees do not have derivative standing to assert "whatever rights the assignors possessed"); *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, 292 F.R.D. 204, 218 (D.N.J. 2013) ("The notion that an assignment to a healthcare provider of the right to reimbursement for services rendered by that provider automatically gives the provider standing as a beneficiary to assert a full array of claims under the ERISA statute is a facile one.").

First, the Assignment of Benefits primarily assigns "rights to receive payments to any and all benefits."  Where an assignment is directed only towards the right to seek payment of benefits, this Court will dismiss vestigial claims for breach of fiduciary duty.  *See Bloomfield*

*Surgical Ctr. v. Cigna Health & Life Ins. Co.*, No. 16-8645 (SDW) (LDW), 2017 U.S. Dist. LEXIS 80895, at *5-7 (D.N.J. May 25, 2017) (granting motion to dismiss claim for breach of fiduciary duty where "the portions of the AOB that assign the right to commence legal action include language limiting that assignment to recovering payment for services rendered to the Patient"); *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289, at *28 (D.N.J. Dec. 6, 2010) (dismissing a plaintiff's ERISA breach of fiduciary cause of action for lack of standing, because the complaint did not indicate that the patients "assigned a claim for violation of fiduciary duty as opposed to a claim for benefits under the plans"). So will federal courts beyond. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) ("Not all ERISA assignments convey the same rights. For example, an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty. . . By expressly assigning only their right to payment, Rojas's patients did not also assign any other claims they may have under ERISA."); *Biomed Pharms, Inc. v. Oxford Health Plans , Inc.*, 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011) (rejecting fiduciary duty claim because assignment conferred only right to seek monetary relief for services rendered); *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2015 U.S. Dist. LEXIS 145469, *3 (S.D.N.Y. Oct. 19, 2015) ("By expressly assigning only their right to payment, Montefiore's patients did not also assign any other claims they might have under ERISA. Here, the Fund's beneficiaries assigned their rights only to "monies and/or benefits . . . to cover the costs of care and treatment," which are recoverable in damages. Thus, the assignments did not include the right to seek injunctive or other equitable relief to enforce other rights under ERISA.") (citations and quotations omitted).

A claim for breach of fiduciary duty classically sounds in equity. Any doubt with respect to the issue under ERISA was removed by the Supreme Court in *Varity Corp. v. Howe*, 516 U.S.

489, 512 (1996), which held that the statute created a right of action for breach of fiduciary duties solely under Section 502(a)(3)'s reference to "other equitable relief." (*See* discussion *infra* next section). But, the Assignment of Benefits grants only "*legal* rights, benefits, and claims relating to and/or arising out of my health insurance policy/policies" including various other "*legal* rights" (emphases added). In contrast with the grant of legal rights, there is no similar assignment of equitable rights and remedies. In fact, the assignment cannot plausibly be read to include claims for injunctive relief or for breach of fiduciary duty. Plaintiff's assignment form is expressly directed to payment of benefits for services rendered. It does not mention fiduciary claims or any other type of equitable claim.

The law is well settled that an ERISA fiduciary duty claim cannot be pled by a provider who lacks standing under an assignment of benefits. *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289, at *28 (D.N.J. Dec. 6, 2010) (dismissing a plaintiff's ERISA breach of fiduciary cause of action for lack of standing, because the complaint did not indicate that the patients "assigned a claim for violation of fiduciary duty as opposed to a claim for benefits under the plans"). The law is the same outside of our Circuit. *See Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) ("Not all ERISA assignments convey the same rights. For example, an assignment may give the assignee the right to bring only a claim for benefits, but not a claim for breach of fiduciary duty. . . By expressly assigning only their right to payment, Rojas's patients did not also assign any other claims they may have under ERISA."); *Biomed Pharms, Inc. v. Oxford Health Plans , Inc.*, 775 F. Supp. 2d 730, 736 (S.D.N.Y. 2011) (rejecting fiduciary duty claim because assignment conferred only right to seek monetary relief for services rendered); *Montefiore Med. Ctr. v. Local 272 Welfare Fund*, 2015 U.S. Dist. LEXIS 145469, *3 (S.D.N.Y. Oct. 19, 2015) ("By expressly assigning only their right to payment, Montefiore's patients did not also assign any other claims they might

have under ERISA.  Here, the Fund's beneficiaries assigned their rights only to "monies and/or benefits . . . to cover the costs of care and treatment," which are recoverable in damages. Thus, the assignments did not include the right to seek injunctive or other equitable relief to enforce other rights under ERISA.") (citations and quotations omitted).

Plaintiff cannot plead a fiduciary duty claim because no defendant owes it such a duty and Plaintiff did not acquire such a claim by assignment.  Count V therefore must be dismissed.

### B.   Count V Seeks Relief Under ERISA § 502(a)(3) That Is Duplicative Of Count III's Claim For Benefits under § 502(a)(1).

Even if Plaintiff had been assigned the right to bring an equitable claim for breach of fiduciary duty, Plaintiff cannot plead this type of claim where its grievance is essentially a failure to pay benefits and where an award of benefits would make the Plaintiff whole.  In such a case, the fiduciary duty claim is duplicative of the benefit claim and it should be dismissed.

Section 502 is where ERISA grants private rights of action.  Section 502(a)(1)(B) creates the private right of action to collect benefits owed under an ERISA plan.  The Supreme Court has held that a claim for breach of ERISA fiduciary duties must be brought under section 502(a)(3) and that section 502(a)(3) is a "catchall" provision that "act[s] as a safety net, offering appropriate equitable relief for injuries caused by violations *that § 502 does not elsewhere adequately remedy*".  *Varity Corp. v. Howe*, 516 U.S. 489, 512 (1996) (emphasis added).  Of course, that is precisely the situation here:  the gist of the case at bar is a claim for benefits, Plaintiff's Section 502(a)(3) fiduciary duty claim simply restates that claim for benefits, and, thus, the claim is "elsewhere adequately remed[ied]" at 502(a)(1)(B).

Thus, *Varity* holds that a 502(a)(1)(B) claim for benefits could not be recast as a claim for breach of fiduciary duty under 502(a)(3), and that a redundant 502(a)(3) claim must be dismissed.  516 U.S. at 515; *see also In re Aetna UCR Litig.*, No. 07-cv-3541, 2015 U.S. Dist.

LEXIS 84600, at *52 (D.N.J. June 30, 2015) (dismissing section 502(a)(3) fiduciary duty claim which essentially alleged that claims administrator made benefit reductions that were unauthorized by plan documents); *Chang v. Life Ins. Co. of N. Am.*, No. 08-cv-19, 2008 U.S. Dist. LEXIS 46815, at *7-8 (D.N.J. June 17, 2008) (dismissing section 502(a)(3) claim seeking to enjoin defendant "from engaging in any further prohibited action under ERISA" because that relief was available under section 502(a)(1)(B)); *Ctr. for Special Procedures v. Conn. Gen. Life Ins. Co.*, No. 09-6566 (MLC), 2010 U.S. Dist. LEXIS 128289, at *29 (D.N.J. Dec. 6, 2010) ("Because a breach of fiduciary duty claim would be duplicative of Plaintiff's claims for the alleged wrongful denial of benefits . . . Count 11 will be dismissed insofar as it asserts a claim for breach of fiduciary duty.") (citing *Morley v. Avaya, Inc. Long Term Disability Plan*, No. 04-409, 2006 U.S. Dist. LEXIS 53720, *66 (D.N.J. Aug. 3, 2006)).

On its face, Plaintiff's claim for breach of fiduciary duty seeks no true equitable relief. Although Count V cites section 502(a)(3) (29 U.S.C. § 1132(a)(3)), that Count requests no injunction or other equitable remedy. Plaintiff's "wherefore" clause following its allegations makes clear that the SAC specifically seeks only compensatory damages. *See* SAC at 9. Even if Plaintiff had mentioned some form of equitable relief, it would not save the claim under *Varity.* If a claim for benefits under section 502(a)(1) will make the claimant whole, then equitable relief under section 502(a)(3) is redundant and thus not available. *See, e.g., McCoy v. Bd. of Trs. of Laborers' Int'l Union Local No. 222*, 188 F. Supp. 2d 461, 472 n.10 (D.N.J. 2002) (equitable relief under § 502(a)(3) "not appropriate" where plaintiff "cannot receive anything in his breach of fiduciary duty claims that I have not already awarded him under his claims for benefits"), *aff'd*, 2003 U.S. App. LEXIS 5756 (3d Cir. Mar. 25, 2003). Here, Plaintiff's claim for benefits, if credited, would make it whole.

Because Count V duplicates the relief sought in Count III, and because section 502(a)(1) provides an adequate remedy, Plaintiff's claim for breach of fiduciary duty cannot survive.[2]

## **CONCLUSION**

For the foregoing reasons, Cigna respectfully requests that Counts I, II, IV, and V of Plaintiff's Second Amended Complaint be dismissed, with prejudice.

Respectfully submitted,

Dated: October 25, 2017
      Newark, New Jersey

    *s/ E. Evans Wohlforth, Jr.*
E. Evans Wohlforth, Jr., Esq.
Calvin K. May Esq.
Timothy D. Tremba, Esq.
**GIBBONS P.C.**
One Gateway Center
Newark, NJ  07102-5310
Tel: (973) 596-4500
Fax: (973) 596-0545
Email:  ewohlforth@gibbonslaw.com
cmay@gibbonslaw.com
ttremba@gibbonslaw.com

*Attorneys for Defendant*
*Cigna Healthcare, Inc.*

---

[2] In *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 533 (D.N.J. 2008), Judge Hochberg rejected a "bright-line rule" that 502(a)(3) claims are automatically subject to dismissal at the pleadings stage when the complaint asserts a 502(a)(1)(B) claim.  Cigna is not taking that position here; instead, Cigna submits that the SAC lacks allegations raising a plausible breach of fiduciary duty claim that is discrete from Plaintiff's claim for benefits.  As Chief Judge Brown held in *Chang*, to allow Plaintiff to proceed with Count III in such a scenario "would lead to a significant waste of the Court's and the parties' resources."  2008 U.S. Dist. LEXIS 46815, at *10-11.