**\*NOT FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____

THE PLASTIC SURGERY
CENTER, P.A.,

                     Plaintiff,

      v.

CIGNA HEALTH AND LIFE
INSURANCE COMPANY; and
SUNRISE SENIOR LIVING, INC.,

                    Defendants.

_____

Civil Action No. 17-2055 (FLW) (DEA)

**OPINION**

**WOLFSON, United States District Judge:**

Defendants Cigna Health and Life Insurance Company ("Cigna") and Sunrise Senior Living, LLC ("Sunrise")[1] (collectively, "Defendants") move to dismiss Counts One, Two, Four, and Five of Plaintiff The Plastic Surgery Center, P.A.'s ("Plaintiff" or "TPSC") Second Amended Complaint (the "SAC"), pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. In the SAC, TPSC, as the assignee of an employee of Sunrise, seeks to recover from an employee health benefit plan (the "Plan") sponsored by Sunrise and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*., the costs of plastic surgery services provided by TPSC to the Sunrise employee. Plaintiff opposes the Motion and has filed a Cross-Motion for Leave to File a Third Amended Complaint. For the reasons that follow, Defendants' Motion to Dismiss is

_____

[1] Sunrise was improperly named in the Second Amended Complaint as Sunrise Senior Living, Inc.

granted in part and denied in part, as follows:  (i) Defendants' Motion is granted, insofar as Defendants seek dismissal of Counts Two, Four, and Five; and (ii) Defendants' Motion is denied as to Count One.  Plaintiff's Cross-Motion for Leave to File its proposed Third Amended Complaint is denied; however, Plaintiff is given leave to file an amended complaint consistent with the dictates of this Opinion, rather than the form of the proposed amended complaint attached to Plaintiff's Cross-Motion.

## I.     **BACKGROUND**[2]

TPSC, a New Jersey professional association, is a licensed medical practice specializing in plastic and reconstructive surgery.  Second Amended Complaint ("SAC"), ¶ 1.  Pursuant to an Assignment of Benefits (the "AOB"), TPSC is the assignee of benefits of patient K.D.  *See id.* at ¶¶ 2, 20; The Plastic Surgery Center Assignment of Benefits (CIGNA0124), Declaration of Calvin K. May ("May Decl."), Ex. C, ECF No. 33-5.  According to the SAC, at all relevant times, K.D. was a participant or beneficiary of the Plan.  SAC ¶ 8.  The SAC alleges that Sunrise (the "Plan Sponsor" or "Plan Administrator") is the sponsor and administrator of the Plan, as those terms are defined under ERISA.  *Id.* at ¶ 9.  The SAC further alleges that Sunrise entered into a contract with Cigna (the "Claims Administrator") to administer the Plan.  *Id.* at ¶ 10.  In that regard, the SAC alleges that Sunrise delegated to Cigna, *inter alia*, "the discretionary authority to interpret and apply [P]lan terms and to make factual determinations in connection with its review of claims under the [P]lan."  *Id.*  at ¶ 11.  According to the SAC, "Cigna also

---

[2] The following factual allegations are taken from the SAC and are assumed as true for the purposes of the instant Motion.  *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must "accept all factual allegations as true, construe the . . . complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief.").

served as the *de facto* Plan Administrator by virtue of Sunrise's complete delegation of the Plan Administrator's duties to Cigna." *Id.* at ¶ 12.

On July 23, 2015, TPSC performed bilateral breast reconstruction services[3] (the "Medical Services") on K.D. *Id.* at ¶ 21. The SAC alleges that although TPSC billed $184,962.00 for the Medical Services, Defendants only paid TPSC $1,975.04 for the Medical Services. *Id.* at ¶ 22. The SAC further alleges that K.D. assigned to TPSC "any and all of K.D.'s legal rights and claims relating to and arising out of the [Medical Services] provided by TPSC to K.D., including her rights under the Plan." *Id.* at ¶ 20.

According to the SAC, prior to the date of the Medical Services, TPSC entered into a contract (the "TPSC-Multiplan Agreement") with third-party Multiplan, LLC ("Multiplan") to become a member of Multiplan's network of healthcare providers. *Id.* at ¶ 13. The SAC alleges that under TPSC's contract with Multiplan, TPSC must be reimbursed at eighty-five percent (85%) of its billed charges (the "Multiplan Rate"), less any applicable co-payments, deductibles, and co-insurance. *Id.* at ¶ 18. The SAC also alleges, "[o]n information and belief," that prior to the date of the Medical Services, "Cigna contracted with Multiplan to utilize Multiplan's network of providers for the benefit of members, participants, beneficiaries, or insured persons under polices issued, or benefits plans administered, by Cigna." *Id.* at ¶¶ 14, 16. According to the SAC, this second contract between Cigna and Multiplan (the "Cigna-Multiplan Agreement") required Cigna to pay TPSC the Multiplan Rate in connection with the Medical Services; *i.e.*, $157,217.70. *Id.* at ¶ 22.

---

[3] Specifically, the SAC alleges that, as a result of a breast cancer diagnosis and bilateral mastectomy, K.D. received the following Medical Services: "bilateral pectoralis elevation, bilateral serratus anterior flap, bilateral placement of tissue expanders and Allomax, complex closure and spy angiography followed by scar revision, removal of tissue expanders, full capsulotomy, placement of implants, and complex closure." SAC ¶ 21.

According to the SAC, prior to the date of the Medical Services, Cigna issued K.D. an identification card ("ID Card") bearing Multiplan's logo.  *Id.* at ¶¶ 15, 19, 33.  The SAC alleges that, by placing Multiplan's logo on the ID Card, Cigna and Sunrise represented that they would pay the rates to which TPSC and Multiplan had agreed.  *Id.* at ¶ 33.  The SAC further alleges that TPSC relied upon the Multiplan logo on the ID Card in deciding whether to provide the Medical Services to K.D.  *Id.* at ¶ 19.

Finally, the SAC alleges that, on April 14, 2016, TPSC requested Plan documents from Cigna, but did not receive the requested documents until June 30, 2017.  *Id.* at ¶¶ 42, 46.  While the SAC does not allege that TPSC ever made a request for Plan documents to Sunrise directly, according to the SAC, "[d]elivery of Plaintiff's April 14, 2016 request to Cigna constituted delivery to Sunrise, as Cigna was acting within this scope of its authority when it received the request," and was "under a fiduciary obligation to turn this request over to sunrise or to respond to it on behalf of Sunrise."  *Id.* at ¶¶ 43-44.

On February 6, 2017, after exhausting all claim appeal procedures and administrative remedies under the Plan, *id.* at ¶ 25, TPSC filed suit against Cigna in the Superior Court of New Jersey, Law Division, Monmouth County.  ECF No. 1-1.  The initial Complaint asserted claims for breach of contract, breach of an implied-in-fact contract, and unjust enrichment.  *Id.*

On March 29, 2017, Cigna removed the Complaint to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of ERISA preemption.  ECF No. 1.  On May 19, 2017, Plaintiff filed a First Amended Complaint ("FAC") against Cigna, asserting a single claim for wrongful denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B).  ECF No. 6.

On July 27, 2017, Plaintiff filed the SAC, adding Sunrise as a Defendant, and asserting five causes of action against Cigna and Sunrise.  ECF No. 15.  Count One asserts a breach of

contract claim against Cigna, alleging that: (i) under the Cigna-Multiplan Agreement and TPSC-Multiplan Agreement (collectively, the "Multiplan Agreements"), Cigna was obligated to reimburse TPSC in the amount of $157,217.70 (85% of the billed charges) for the Medical Services rendered to K.D.; and (ii) Cigna breached its contractual obligations by only reimbursing TPSC for $1,975.04 of the billed amount. *See* SAC ¶¶ 28-30. Count Two asserts a claim for negligent misrepresentation "in the alternative in the event it turns out . . . that Cigna was not a party to the agreement with Multiplan requiring it to reimburse Plaintiff" at the Multiplan Rate. *Id.* at ¶ 32. Specifically, Plaintiff alleges that by including the Multiplan logo on the ID Card, Defendants misrepresented that they would pay the Multiplan Rate, which representation Plaintiff reasonably relied upon in deciding to perform the Medical Services. *See id.* at ¶¶ 33-34. Count Three asserts a claim against Defendants for wrongful denial of benefits under § 502(a)(1)(B) of ERISA. *See id.* at ¶¶ 35-40. In Count Four, Plaintiff alleges that Cigna and Sunrise's failure to respond to Plaintiff's request for Plan documents within thirty days constitutes a violation of Section 502(c)(1) of ERISA, 29 U.S.C. § 1132(c)(1)(B). *Id.* at ¶¶ 41-49. Finally, Count Five asserts a claim for breach of fiduciary against Defendants, pursuant to § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3). *Id.* ¶¶ 50-58. As relief, Plaintiff seeks: (i) reimbursement in the amount of $155,242.66 for the costs of the Medical Services; (ii) compensatory damages in the amount of $45,210 as a result of Defendants' violations of ERISA's statutory penalty provision; and (iii) "any and all other appropriate relief this Court deems just and proper." SAC at 9.

Defendants filed the instant Motion to Dismiss on October 25, 2017. ECF No. 33. On November 20, 2017, Plaintiff filed an Opposition to Defendant's Motion, as well as a Cross-

Motion seeking leave to file a Third Amended Complaint.  ECF No. 36.  Defendants filed their

Reply and Opposition on December 14, 2017.  ECF No. 40.

## II.  LEGAL STANDARD

### A.  Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim upon which relief can be

granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual

allegations as true, construe the complaint in the light most favorable to the plaintiff, and

determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled

to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation

marks and citation omitted).  Although Federal Rule of Civil Procedure 8(a)[4] does not require

that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v.

Twombly*, 550 U.S. 544, 555 (2007) (citation omitted).  Thus, to survive a Rule 12(b)(6) motion

to dismiss, a complaint must contain sufficient factual allegations to raise a plaintiff's right to

relief above the speculative level, so that a claim "is plausible on its face."  *Id.* at 570; *Phillips v.

Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[4] In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court reaffirmed that Federal
Rule of Civil Procedure 8(a) "requires only 'a short and plain statement of the claim showing
that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . .
claim is and the grounds upon which it rests.'"  *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S.
41, 47 (1957)).

While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In accordance with the pleading requirements set forth in *Twombly* and *Iqbal*, the Third Circuit has formulated "a three-step process for district courts to follow in reviewing the sufficiency of a complaint." *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation, quotation marks, and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citation and quotation marks omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation, quotation marks, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### B.    Federal Rule of Civil Procedure 15(a)

In addition to opposing Defendant's Motion to Dismiss, Plaintiffs have moved, pursuant to Federal Rule of Civil Procedure 15(a), for leave to file a Third Amended Complaint. Under Rule 15(a), a plaintiff may amend its pleading once as a matter of course. *See* FED. R. CIV. P. 15(a). At all other times, the plaintiff must seek leave of the court to amend its complaint, and "[t]he court should freely give leave when justice so requires." *Id.* When considering a motion to amend, "[t]he Supreme Court has instructed that although 'the grant or denial of an opportunity to amend is within the discretion of the District Court, . . . outright refusal to grant

the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely an abuse of that discretion and inconsistent with the spirit of the Federal Rules.'" *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   Nonetheless, a court may deny a plaintiff leave to amend for a variety of reasons, including undue delay, bad faith, dilatory motive, prejudice, and futility.  *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997); *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004).  Under Third Circuit precedent, a "futile" amendment is one that fails to state a claim upon which relief could be granted.  *Burlington*, 114 F.3d at 1434; *Grayson v. Mayview State Hospital*, 293 F.3d 103, 113 (3d Cir. 2002).  Thus, in determining whether a complaint, as amended, is futile, courts must apply the sufficiency standard set forth under Rule 12(b)(6). *Shane*, 213 F.3d at 115.  "Accordingly, if a claim is vulnerable to dismissal under Rule 12(b)(6), but the plaintiff moves to amend, leave to amend generally must be granted unless the amendment would not cure the deficiency."  *Id*.

## III.   <u>DISCUSSION</u>

In their Motion to Dismiss, Defendants argue that Plaintiff has failed to state a claim for breach of contract, negligent misrepresentation, violation of § 502(c)(1) of ERISA, and violation of § 502(a)(3) of ERISA.[5]  The Court will examine each of those arguments, in turn.

### A.   **Count One:  Breach of Contract**

In Count One, Plaintiff asserts a claim for breach of contract solely against Cigna, which claim is premised on the existence of the Multiplan Agreements.  Specifically, Plaintiff alleges, "[o]n information and belief," that pursuant to the Cigna-Multiplan Agreement, when Cigna

---

[5] Defendants do not move to dismiss Count Three of the SAC, which alleges a claim for wrongful denial of benefits under § 502(a)(1)(B) of ERISA.

became a participant in Multiplan's network, it "agreed to reimburse healthcare providers within Multiplan's network, such as Plaintiff, according to the terms negotiated between Multiplan and the healthcare providers in its network," including the terms of the TPSC-Multiplan Agreement. SAC ¶ 17. Plaintiff alleges that Cigna breached the Cigna-Multiplan Agreement, because, the TPSC-Multiplan Agreement required Plaintiff to be reimbursed at 85% of its billed charges, and Cigna failed to reimburse Plaintiff at the Multiplan Rate. *Id.* at ¶¶ 18, 29-30.

Cigna moves to dismiss Count One, arguing that the language of the Cigna-Multiplan Agreement has no requirement that Cigna reimburse providers within Multiplan's network at the Multiplan Rate. Specifically, Cigna maintains that the Cigna-Multiplan Agreement is comprised of two integrated documents, a Master Services Agreement and a Statement of Work,[6] and contends that the language of those documents demonstrates that: (i) Multiplan is a service provider hired by Cigna to negotiate adjusted fees for claims referred to it by Cigna; (ii) Cigna has discretion to refer claims to Multiplan; and (iii) Multiplan is not authorized to agree on Cigna's behalf that Cigna shall pay a certain rate on a provider's claim. Defs.' Br. at 6. Thus, Cigna argues that because the TPSC-Multiplan Agreement does not require Cigna to pay whatever rate is negotiated with a provider by Multiplan, Plaintiff has failed to state a claim for breach of contract.

In opposition, Plaintiff disputes that the Master Services Agreement and the Statement of Work are the documents that govern its breach of contract claim, and thus, contends that the

---

[6] Defendant attaches the Master Services Agreement and the Statement of Work to its Motion, May Decl., Exs. A-B, ECF Nos. 33-3, 33-4, and argues that, although those documents are not directly cited in the SAC, they may be considered without converting the instant Motion into a motion for summary judgment, because the Cigna-Multiplan Agreement was referenced in the SAC, and thus, Plaintiff is on notice of the contents of that Agreement. *See* Defs.' Br. at 5 n. 1. As the Court explains, *infra*, consideration of those documents is not proper at this juncture.

Court cannot look to those documents in determining whether Plaintiff has a plausible claim. Specifically, Plaintiff notes that although K.D.'s ID Card bore the Multiplan logo when she presented it to Plaintiff on June 1, 2015, the Master Services Agreement proffered by Defendants was executed by Cigna on July 22, 2015, one day before Plaintiff provided Medical Services to K.D.  Therefore, Plaintiff argues that, because the Multiplan logo was already affixed to the ID Card in June 2015, the Master Services Agreement attached to Defendants' Motion could not have been the contract in place at the time of the Medical Services; rather, Plaintiff argues that there must have been an earlier contract.  Furthermore, Plaintiff argues that even if the Court were to consider the Master Services Agreement and Statement of Work, those documents are ambiguous as to Cigna's reimbursement obligation, and thus, cannot serve as the basis for dismissing Count One.

As the outset, I find that consideration of the Master Services Agreement and the Statement of Work is inappropriate on this Motion.  Generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."  *In re Burlington Coat Factory*, 114 F.3d at 1426; *see W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n. 6 (3d Cir. 2010).  "However, an exception to the general rule is that a 'document *integral to or explicitly relied* upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'"  *In re Burlington Coat Factory*, 114 F.3d at 1426 (citation omitted); *see Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014); *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an *undisputedly authentic* document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.") (emphasis added).  "The rationale underlying this exception is that the primary problem raised by looking to documents outside the

10

complaint—lack of notice to the plaintiff—is dissipated '[w]here plaintiff has actual notice . . . and has relied upon these documents in framing the complaint.'" *In re Burlington Coat Factory*, 114 F.3d at 1426 (quoting *Watterson v. Page*, 987 F.2d 1, 3-4 (1st Cir. 1993)).

Here, I find that consideration of the version of the Master Services Agreement and Statement of Work proffered by Defendants is not proper at this juncture, because Plaintiff raises factual disputes as to whether that is the contract that underlies its breach of contract claim. Specifically, in light of the fact that K.D.'s ID Card already bore the Multiplan logo in June of 2015, yet the Master Services Agreement was not executed by Cigna until one day before the July 22, 2015 Medical Services, albeit with an effective date of April 1, 2015, questions exist as to whether the documents proffered by Defendants were the agreements in place at the time of the Medical Services, and thus, whether those documents form the basis of Plaintiff's breach of contract claim. These disputes are more properly resolved in a summary judgment motion, where the Court can consider affidavits and other discovery. Accordingly, because the parties dispute whether the version of the Master Services Agreement and the Statement of Work submitted by Defendants governs Plaintiff's breach of contract claim, I decline to consider those documents on the instant Motion, and thus, Cigna's Motion to Dismiss Count One on the basis of the language of those documents is denied.[7] *See Nasruddin v. Harrison*, No. 16-935, 2016 WL 5660361, at *2 (D.N.J. Sept. 27, 2016) (declining to consider a contract attached to the defendant's motion to dismiss, where a dispute existed over whether it was "the right contract" referenced in the plaintiff's complaint); *see also Healey Alternative Inv. P'ship v. Royal Bank of Canada*, No. 10-1567, 2010 WL 5055804, at *1 (D.N.J. Dec. 2, 2010) (declining to consider

---

[7] Of course, Cigna shall not be precluded from raising any arguments regarding dismissal of Plaintiff's breach of contract claim upon the filing of the Third Amended Complaint, or at a later stage of this litigation.

documents attached to a motion to dismiss, where the plaintiff argued that they were "not relied upon or integral to the complaint.").

Having found that consideration of the Master Services Agreement and the Statement of Work is improper at this time, the Court turns to whether Plaintiff has adequately stated a claim for breach of contract.  To establish a claim for breach of contract under New Jersey law, "a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform [its] obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 392 N.J. Super. 245, 265 (App. Div. 2007).  Here, I find that Plaintiff's allegations are sufficient to sustain a claim for breach of contract:  Plaintiff asserts that contracts exist between itself and Multiplan and Multiplan and Cigna, which contracts require Cigna to pay Plaintiff at the Multiplan Rate, and that Cigna breached its contractual obligation by failing to pay Plaintiff as such, resulting in financial harm to Plaintiff.  SAC ¶¶ 28-30.  Accordingly, Cigna's Motion to Dismiss Count One is denied without prejudice.[8]

### B.    Count Two:  Negligent Misrepresentation

In Count Two, Plaintiff asserts a claim for negligent representation based on Cigna's inclusion of the Multiplan logo on K.D.'s ID Card.  *See* SAC ¶¶ 31-34.  In that regard, Count Two is pled in the alternative, alleging that, in the event that there is no contract between Cigna and Multiplan that requires Cigna to reimburse Plaintiff at the Multiplan Rate, Defendants'

---

[8] I note that in the proposed Third Amended Complaint submitted with Plaintiff's Cross-Motion, Plaintiff seeks to add Multiplan as a defendant, and to assert its breach of contract claim against both Multiplan and Cigna.  Because Multiplan is a central party to the agreements that form the basis of Plaintiff's claim for breach of contract, I grant Plaintiff leave to amend its SAC to add a breach of contract claim against Multiplan.  Should Plaintiff choose to file a Third Amended Complaint asserting a breach of contract claim against Cigna and Multiplan, those parties may raise any defenses to Plaintiff's breach of contract claim that they deem warranted, including preemption.

inclusion of the Multiplan logo on the ID Card constitutes a misrepresentation that Defendants

would reimburse providers within Multiplan's network, including TPSC, at the Multiplan Rate.

*See id.* at ¶¶ 32-33.  Plaintiff alleges further that it relied upon the Multiplan logo in deciding to

provide Medical Services to K.D., believing that Defendants would reimburse Plaintiff at the

Multiplan Rate.  *See id.* at ¶ 34.

      In order to state a claim for negligent misrepresentation under New Jersey law, a plaintiff

must allege:  "(1) an incorrect statement, (2) negligently made, (3) upon which plaintiff

justifiably relied, and (4) resulted in economic loss or injury as a consequence of that reliance."

*Mason v. Coca-Cola Co.*, 774 F. Supp. 2d 699, 704 (D.N.J. 2011) (citing *H. Rosenblum, Inc. v.*

*Adler*, 93 N.J. 324, 334 (1983)); *see Wilson v. McCann*, No. A-0520-13T1, 2014 WL 5326173,

at *5 (N.J. Super. Ct. App. Div. Oct. 21, 2014) ("In order to sustain a cause of action based on

negligent misrepresentation, the plaintiff must establish that the defendant negligently made an

incorrect statement of a past or existing fact, that the plaintiff justifiably relied on it and that his

or her reliance caused a loss or injury.").

      Here, Plaintiff has failed to state a claim for negligent misrepresentation, because

Plaintiff has not sufficiently alleged that Defendants made an incorrect statement of past or

existing fact, negligent or otherwise.  *See Adamson v. Ortho-McNeil Pharm., Inc.*, 463 F. Supp.

2d 496, 504 (D.N.J. 2006) ("Because Plaintiff has not established that the Defendants propagated

any incorrect statements, Plaintiff cannot set forth a claim for negligent misrepresentation and

this claim must be dismissed pursuant to Rule 12(b)(6).").  To that end, the only alleged

statement, correct or incorrect, that Plaintiff references in its negligent misrepresentation claim is

the inclusion of the Multiplan logo on the ID Card.  However, to the extent that the inclusion of

Multiplan's logo even constitutes a statement attributable to Defendants, it certainly does not

constitute an incorrect statement of past or existing fact regarding the rate at which Defendants would reimburse Multiplan providers.  In that regard, while the inclusion of the logo on K.D's identification card may indicate some relationship between Multiplan and Cigna, it cannot be plausibly inferred, from the inclusion of the logo alone, that Defendants would reimburse a provider within the Multiplan network at the Multiplan Rate.  Accordingly, because Plaintiff has not sufficiently alleged an incorrect statement, Count Two is dismissed.

Moreover, even if Plaintiff had adequately pled a claim for negligent misrepresentation, Plaintiff would be barred from pursuing that claim under the economic loss doctrine, because Count Two is comprised of the exact same allegations that form Plaintiff's breach of contract claim.  "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement only flows from a contract.'"  *Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 562 (D.N.J. 2002) (quoting *Duquesne Light Co. v. Westinghouse Elec. Co.*, 66 F.3d 604, 618 (3d Cir. 1995)).  In that regard, "the economic loss doctrine 'defines the boundary between the overlapping theories of tort law and contract law by barring the recovery of purely economic loss in tort . . . .'"  *Travelers Indem. Co. v. Dammann & Co.*, 594 F.3d 238, 244 (3d Cir. 2010) (citation omitted).  "[W]hether a tort claim can be asserted alongside a breach of contract claim depends on whether the tortious conduct is extrinsic to the contract between the parties."  *State Capital Title & Abstract Co. v. Pappas Bus. Servs., LLC*, 646 F. Supp. 2d 668, 676 (D.N.J. 2009); *Chen v. HD Dimension, Corp.*, No. 10-863, 2010 WL 4721514, at *8 (D.N.J. Nov. 15, 2010).  "An alleged misrepresentation is extraneous to an agreement when it breaches a duty 'separate and distinct from the performance' of the agreement's terms."  *Montclair State Univ. v. Oracle USA, Inc.*, No. 11-2867, 2012 WL 3647427, at *5 (D.N.J. Aug. 23, 2012) (citation omitted).

For example, "a plaintiff may be permitted to proceed with tort claims sounding in fraud in the inducement so long as the underlying allegations involve misrepresentations unrelated to the performance of the contract, but rather precede the actual commencement of the agreement." *State Capital Title*, 646 F. Supp. 2d at 676; *see Peters v. Countrywide Home Loans, Inc.*, No. 15-6329, 2016 WL 2869059, at *4 (D.N.J. May 17, 2016) ("The economic loss doctrine 'does not bar claims for fraud in the inducement of a contract,' because fraud in the inducement is fraud that induces the other party to enter into the contract in the first place.") (quoting *Bracco*, 226 F. Supp. 2d at 563-64); *Montclair State*, 2012 WL 3647427 at *4 ("Only those pre-contractual misrepresentations that are extraneous to the parties' contract may be brought alongside a breach of contract claim.").   Conversely, courts have applied the economic loss doctrine where the tort claim contemplated by the plaintiff is not extraneous to the contract, "'but rather on fraudulent performance of the contract itself.'"   *Unifoil Corp. v. Cheque Printers & Encoders Ltd.*, 622 F. Supp. 268, 271 (D.N.J. 1985) (quoting *Foodtown v. Sigma Mktg. Sys., Inc.*, 518 F. Supp. 485, 490 (D.N.J. 1980)); *see*, *e.g.*, *Tri Coast LLC v. Sherwin-Williams Co.*, No. 16-3366, 2018 WL 468279, at *6 (D.N.J. Jan. 18, 2018) (finding that the economic loss doctrine barred the plaintiff's negligent misrepresentation claim, where the plaintiff's alleged injury flowed from its contract with the defendant); *Longo v. Envtl. Prot. & Improvement Co., Inc.*, No. 16-09114, 2017 WL 2426864, at *7 (D.N.J. June 5, 2017) (finding that the plaintiff's negligent misrepresentation claim was barred by the economic loss doctrine, where the plaintiff failed to allege any conduct on the part of the defendant that was extrinsic to the parties' contract).

Here, I find that economic loss doctrine bars Plaintiff's negligent misrepresentation claim, because Count Two is devoid of any allegations that Plaintiff suffered economic loss extrinsic to the alleged Multiplan Agreements.   *See Smith v. Citimortgage, Inc.*, No. 15-7629,

15

2015 WL 12734793, at *7 (D.N.J. Dec. 22, 2015) ("[N]egligent misrepresentation claims are

barred by the economic loss doctrine where a plaintiff has not identified a duty owed

independent of the contractual relationship.").  In that regard, as currently pled, the alleged

misrepresentation in this case is not extraneous to the Multiplan Agreements; rather, Plaintiff

specifically points to the agreements with Multiplan as forming the basis of its negligent

misrepresentation claim.  *See* SAC ¶ 33 ("By including the Multiplan logo on K.D.'s

identification card, Cigna and Sunrise represented that they would abide by a healthcare

provider's *agreement* with Multiplan . . . to participate in the Multiplan network at *agreed upon*

reimbursement rates.") (emphasis added); *id.* at ¶ 34 ("Plaintiff reasonably relied upon the

Multiplan logo as indicating that the services provided to K.D. would be reimbursed at the rates

Plaintiff negotiated with Multiplan.").  Accordingly, because Plaintiff's negligent

misrepresentation claim is premised solely on allegations intrinsic to the alleged Multiplan

Agreements, the Court finds that the economic loss doctrine applies, and Plaintiff's negligent

misrepresentation claim is dismissed.[9]

---

[9] Indeed, Plaintiff does not even attempt to distinguish its negligent misrepresentation claim from its breach of contract claim in its Opposition, arguing only that a plaintiff is entitled to plead claims in the alternative.  *See* Pl.'s Br. at 9-10.  However, where the economic loss doctrine applies, courts have rejected the argument that a plaintiff may plead a tort claim based on the same conduct in the alternative.  *See*, *e.g.*, *Longo*, 2017 WL 2426864 at *5-7 (dismissing the plaintiff's negligent misrepresentation claim as barred by the economic loss doctrine, over the plaintiff's argument that it could plead its tort and contract claims in the alternative).  While a limited exception exists allowing plaintiffs to plead contract and fraud claims in the alternative when the validity of a contract is in dispute, *see Shapiro v. Barnea*, No. 06-811, 2006 WL 3780647, at *4 (D.N.J. Dec. 21, 2006), here, the parties do not dispute the validity of the Multiplan Agreements; rather, they dispute the scope of Defendants' obligations under those Agreements.  *See State Capital Title*, 646 F. Supp. 2d at 677 n. 3 (dismissing fraud claim as barred by the economic loss doctrine, despite recognition that "the economic loss doctrine does not bar a fraud claim pled in the alternative when the validity of the contract is in dispute[,]" where the parties did not dispute the validity of the contract at issue).  Accordingly, Plaintiff's negligent misrepresentation claim is barred under the economic loss doctrine.

**C.      Count Four:  Failure To Supply Requested Information Under § 502(c)(1)**

In Count Four of the SAC, Plaintiff alleges that Defendants failed to comply with § 502(c)(1) of ERISA by refusing to produce certain documents and materials requested by Plaintiff.  SAC ¶¶ 41-49. Specifically, Plaintiff alleges that although it requested Plan documents from Cigna on April 14, 2016, Plaintiff did not receive the requested documents until June 30, 2017.  *Id.*  Plaintiff further alleges that Cigna was under a fiduciary obligation to either respond to Plaintiff's request or to turn that request over to Sunrise.  *Id.* at ¶¶ 43-44.

Defendants argue that Plaintiff has failed to state a claim under § 502(c)(1) against either Sunrise or Cigna, because:  (i) Plaintiff does not allege that it made a specific *written* request to Sunrise, the Plan Administrator, for the requested Plan documents; and (ii) Cigna is not the Plan Administrator, and thus, has no statutory responsibility for providing Plan documents to Plaintiff under ERISA.

Section 502(c)(1) of ERISA imposes a statutory penalty of up to $100 a day on "any administrator . . . who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary . . . by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request . . . ."  29 U.S.C. § 1132(c)(1).  ERISA defines an "administrator" as

> (i) the person specifically so designated by the terms of the instrument under which the plan is operated;
>
> (ii) if an administrator is not so designated, the plan sponsor; or
>
> (iii) in the case of a plan for which an administrator is not designated and a plan sponsor cannot be identified, such other person as the Secretary may by regulation prescribe.

17

29 U.S.C. § 1002(16)(A).  Section 104(b)(4), the relevant subchapter, provides that the "administrator shall, upon *written request* of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated."  29 U.S.C. § 104(b)(4) (emphasis added); *Bicknell v. Lockheed Martin Group Benefits Plan*, 410 Fed. Appx. 570, 577 (3d Cir. 2011).  Thus, to state a claim under § 502(c)(1) of ERISA, "a plaintiff must allege that 1) it made a [written] request to a plan administrator, 2) who was required to provide the requested material, but 3) failed to do so within 30 days of the request."  *Spine Surgery Assocs. & Discovery Imaging, PC v. INDECS Corp.*, 50 F. Supp. 3d 647, 656 (D.N.J. 2014).  As a penal statute, the terms of § 502(c)(1) must be "construed strictly," *Haberern v. Kaupp Vascular Surgeons Ltd. Defined Ben. Pension Plan*, 24 F.3d 1491, 1505 (3d Cir. 1994), and thus, a plaintiff seeking relief under § 502(c)(1) must demonstrate compliance with each of these statutory requirements.

Here, Plaintiff fails to state a claim for relief under § 502(c)(1), because the SAC does not allege that Plaintiff ever made a written request for Plan documents to Sunrise, the Plan Administrator.  Indeed, Plaintiff concedes that it never made a written request to Sunrise.  *See* Pl.'s Br. at 11.  Rather, Plaintiff seeks to amend the SAC to add an allegation that it made a written request for Plan documents from Cigna and argues that although Cigna is not the Plan Administrator, Cigna may be held liable under § 502(c)(1) as the *de facto* Plan Administrator, because Sunrise delegated to Cigna "the discretionary authority to perform a full and fair review" of Plaintiff's claim.  *Id.*  Alternatively, Plaintiff argues that even if Cigna is not liable under § 502(c)(1), this Court should find that Plaintiff's request on Cigna constituted service of the

request upon Sunrise under a theory of agency, and thus, that Sunrise is liable under § 502(c)(1). I disagree.

First, Plaintiff's failure to allege that it submitted a written request for documents to Sunrise, the Plan Administrator, is fatal to Plaintiff's § 502(c)(1) claim.  As the Court has already noted, to establish a violation under § 502(c)(1), a Plaintiff must demonstrate strict compliance with the requirements of that statute, including that it made a written request to the plan administrator.  *See Haberern*, 24 F.3d at 1505.  Thus, courts within this District have routinely dismissed § 502(c)(1) claims where the plaintiff fails to allege that it made a written request for plan documents.  *See*, *e.g.*, *Progressive Spine & Orthopaedics, LLC v. Empire Blue Cross Blue Shield*, No. 16-01649, 2017 WL 751851, at *5 (D.N.J. Feb. 27, 2017) (dismissing the plaintiff's § 502(c)(1) claim where the plaintiff did "not allege that it sent a *written* request.") (emphasis in original); *Segura v. Dr. Reddy's Labs., Inc.*, No. 11-6188, 2012 WL 6772060, at *10 (D.N.J. Dec. 21, 2012) (dismissing § 502(c)(1) claim for failure to allege that the plaintiff made a written request for plan documents from the plan administrator); *McDonough v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 09-571, 2011 WL 4455994, at *7 (D.N.J. Sept. 23, 2011) (dismissing the plaintiff's § 502(c)(1) claim, where the plaintiff failed to allege that she made a written request to the plan administrator for plan documents).  Accordingly, because the SAC fails to allege that Plaintiff submitted a written request for Plan documents to Sunrise, Count Four must be dismissed as to Sunrise for failure to state a claim.[10]

---

[10] The Court also rejects Plaintiff's alternative argument that its request to Cigna effectively constituted a request upon Sunrise.  Specifically, Plaintiff contends that "by appointing Cigna as the party to conduct the full and fair review, it actually appointed Cigna as its agent to receive those requests." Pls. Br. at 12.  However, Plaintiff has cited no authority for that theory, and, in any event, the Court cannot agree that a written request on Cigna is sufficient under § 502(c)(1), because the statute specifically provides that the written request must be made upon the plan administrator.  *See* 29 U.S.C. § 104(b)(4).  Thus, to find that Plaintiff satisfied the statutory

Second, with respect to Cigna, Plaintiff's § 502(c)(1) claim fails because Cigna is not the Plan Administrator for the Plan.  As explained, *supra*, § 502(c)(1) imposes liability only on an "administrator," and ERISA defines the term "administrator," in relevant part, as "the person specifically so designated by the terms of the instrument under which the plan is operated . . . ." 29 U.S.C. § 1002(16)(A)(i).  Seizing on this statutory language, courts have interpreted § 502(c)(1) as only imposing liability on one entity, the plan administrator, and thus, have dismissed § 502(c)(1) claims asserted against other parties, including claims administrators.  *See Mondry v. Am. Family Mut. Ins. Co.*, 557 F.3d 781, 794 (7th Cir. 2009) ("[T]his court and others have held that liability under section 1132(c)(1) is confined to the plan administrator and have rejected the contention that other parties, including claims administrators, can be held liable for the failure to supply participants with the plan documents they seek."); *INDECS*, 50 F. Supp. 3d at 656 ("[C]ourts have consistently held that the statute means what it says: the Plan administrator is the only liable entity on this count."); *see*, *e.g.*, *Cohen v. Horizon Blue Cross Blue Shield of New Jersey*, No. 13-03057, 2013 WL 5780815, at *9 (D.N.J. Oct. 25, 2013) ("As Horizon is not the administrator, it cannot be held liable under 29 U.S.C. § 1132(c)(1)(B)."). Here, it is undisputed that Sunrise, not Cigna, is the Plan Administrator.  SAC ¶ 9.  Accordingly, because Cigna is not the Plan Administrator, Cigna is not a proper defendant on Plaintiff's § 502(c)(1) claim.

Nonetheless, seeking to circumvent the fact that Cigna is not the Plan Administrator, Plaintiff argues that Cigna is a proper defendant under § 502(c)(1) because Cigna serves as the

---

perquisites to asserting a § 502(c)(1) claim by sending a written request to Cigna would inject an exception into the statute, in violation of the Third Circuit's instruction to strictly construe § 502(c)(1). *See Haberern*, 24 F.3d at 1505.  Accordingly, because Plaintiff concedes that it never requested Plan documents from Sunrise directly, I find that Plaintiff cannot state a § 502(c)(1) claim against Sunrise through a theory of agency.

"*de facto* plan administrator" for the Plan.  Pl.'s Br. at 11.  While the parties have not cited, and the Court has not found, any Third Circuit case addressing the issue of whether a party can be held liable under a *de facto* plan administrator theory, "the majority of Courts of Appeals that have addressed this issue have rejected this theory."  *Campo v. Oxford Health Plans, Inc.*, No. 06-4332, 2007 WL 1827220, at *5 (D.N.J. June 26, 2007); *see Ibson v. United Healthcare Servs., Inc.*, 877 F.3d 384, 390 (8th Cir. 2017) (rejecting the argument that a party could be held liable under § 502(c)(1) as a *de facto* plan administrator); *Connecticut Gen. Life Ins. Co. v. Humble Surgical Hosp., L.L.C.*, 878 F.3d 478, 486 (5th Cir. 2017) ("The Fifth Circuit has never adopted the *de facto* plan administrator theory."); *Smiley v. Hartford Life & Acc. Ins. Co.*, 610 F. App'x 8 (11th Cir. 2015) ("We have consistently rejected the use of the *de facto plan* administrator doctrine . . . ."); *Mondry*, 557 F.3d at 794 (adopting the majority approach by rejecting the *de facto* administrator theory); *Lee v. Burkhart*, 991 F.2d 1004, 1010 (2d Cir. 1993) (same); *McKinsey v. Sentry Ins.*, 986 F.2d 401, 404 (10th Cir. 1993) (same).  Recognizing as much, in *Campo*, the court "decline[d] to adopt the minority view recognizing a non-administrator as the *de facto* plan administrator that can be held liable under Section 502(c)," finding that "[t]o do so would require the Court to ignore the statutory language that imposes a duty on the plan's 'administrator' alone."  2007 WL 1827220 at *5; *see also Piscopo v. Pub. Serv. Elec. & Gas Co.*, 650 F. App'x 106, 110 n. 10 (3d Cir. 2016) (affirming dismissal of the plaintiff's claim § 502(c)(1) claim, where the plaintiff asserted that the defendants were "administrators and fiduciaries of each plan and/or *de facto* under ERISA," but had not pled any facts showing that the defendants fell within the statutory definition of "administrator.").  For the same reasons, I reject Plaintiff's argument that Cigna can be held liable as the *de facto* plan administrator, and thus, Plaintiff's claim under § 502(c)(1) of ERISA is dismissed.

### D.     Count Five:  § 502(a)(3) of ERISA

In Count Five, Plaintiff asserts a § 502(a)(3) claim against Defendants for breach of fiduciary duty.  Specifically, in addition to "repeat[ing] the foregoing paragraphs *as if the same were set forth at length herein*," SAC ¶ 50 (emphasis added), Count Five includes the following list of allegations:

- "In the event Sunrise participated in the decision to in any way approve payment of only $1975.04 under the Plan for the [Medical Services] at issue, then Sunrise breached its fiduciary duty by allowing its own financial interest under the self-insured Plan to affect its determination.  Sunrise, as the Sponsor of a self-insured Plan, must contribute more to the Plan as the actual medical costs of the Plan participants and beneficiaries increase." *Id.* at ¶ 52.
- "In the event Sunrise did not participate in the decision in any way to approve payment of only $1975.04 under the Plan for the [Medical Services] at issue, then Sunrise breached its duty as the Plan Sponsor to assure that Cigna, as co-fiduciary, was appropriately discharging its obligations." *Id.* at ¶ 53.
- "Cigna breached its fiduciary duty by allowing its conflict of interest described above to affect its decision to reimburse Plaintiff only $1975.04 for a complex reconstructive surgery for which it reasonably billed $184,962.00."  *Id.* at ¶ 54.
- "In the event the Court enters a judgment determining that Cigna was not obligated to reimburse Plaintiff according to the Multiplan contacts alleged above, then Cigna also breached its fiduciary duty by affixing the Multiplan logo to K.D's identification card, thereby giving the false impression of participation in the Multiplan network." *Id.* at ¶ 55.
- "Cigna also breached its fiduciary duty by failing to consider or address Plaintiff's argument, made during the internal appeals process, that the Multiplan contracts required reimbursement at eighty five percent (85%) of Plaintiff's billed charges."  *Id.* at ¶ 56.
- "Cigna also breached its fiduciary duty by, on information and belief, failing to transmit Plaintiff's request for documents, described in Count Four, to Sunrise and by failing to respond to the request itself."  *Id.* at ¶ 57.
- "Cigna also breached its fiduciary duty by wrongfully withholding money owed to Plaintiff and by not applying the terms of the Plan."  *Id.* at ¶ 58.

As relief, Plaintiffs request compensatory damages and "any and all other appropriate relief this Court deems just and proper."  *See* SAC at 9.

Defendants argue that Count Five should be dismissed:  (1) the AOB to Plaintiff did not include the right to assert equitable claims on behalf of Plaintiff, and thus, Plaintiff lacks standing to assert a § 502(a)(3) claim for breach of fiduciary duty; and (2) the relief that Plaintiff

seeks in Count Five is duplicative of Plaintiff's claims under §§ 502(a)(1)(B) and 502(c)(2) of ERISA, and thus, should be dismissed under *Varity Corp. v. Howe*, 516 U.S. 489, 515 (1996). In opposition, Plaintiff contends that it has standing to assert a § 502(a)(3) claim, and argues that it would be premature, at the pleadings stage, to dismiss Plaintiff's claims for breach of fiduciary duty as duplicative of its claim for benefits.

### 1.   Standing

Section 502(a) of ERISA authorizes a "participant or beneficiary" to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a)(1)(B). By its terms, ERISA's civil enforcement provision thus limits standing to plan participants[11] or beneficiaries.[12] *Id.*; *Pascack Valley Hosp. v. Local 464A UFCW Welfare Reimbursement Plan*, 388 F.3d 393, 400 (3d Cir. 2004) ("By its terms, standing under [ERISA] is limited to participants and beneficiaries."). Concededly, Plaintiff is neither a participant nor a beneficiary of the Plan. Rather, Plaintiff argues that it has ERISA standing because it is the assignee of a beneficiary of the Plan, K.D.

While "ERISA itself is silent on the issue of derivative standing and assignments," *N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372 (3d Cir. 2015), the Third Circuit has

---

[11] Under ERISA, a "participant" is defined as:

> [A]ny employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

[12] ERISA defines a "beneficiary" as "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder." 29 U.S.C. § 1002(8).

extended standing to assert ERISA claims to health care providers who have obtained a valid assignment of benefits from a plan participant. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, No. 17-1663, 2018 WL 2224394, at *2 (3d Cir. May 16, 2018) ("[A] valid assignment of benefits by a plan participant or beneficiary transfers to such a provider both the insured's right to payment under a plan and his right to sue for that payment."); *CardioNet, Inc. v. Cigna Health Corp.*, 751 F.3d 165, 176 n. 10 (3d Cir. 2014) (holding that health care providers have standing to assert "properly assigned" ERISA claims on behalf of plan participants); *N. Jersey Brain & Spine Ctr.*, 801 F.3d at 372 ("Healthcare providers that are neither participants nor beneficiaries in their own right may obtain derivative standing by assignment from a plan participant or beneficiary."). Defendants do not dispute the general premise that a valid assignment of benefits confers ERISA standing upon a provider; rather, Defendants contend the assignment at issue in this case only conferred derivative standing upon Plaintiff to assert *legal* claims on behalf of K.D., and thus, that Plaintiff lacks standing to assert a § 502(a)(3) claim for *equitable* relief on behalf of K.D.

"In determining what claims a healthcare provider may bring under ERISA, courts look to the language of the assignment." *Ctr. for Orthopedics & Sports Med. v. Horizon*, No. 13-1963, 2015 WL 5770385, at *4 (D.N.J. Sept. 30, 2015). Here, the relevant AOB provides,[13] in pertinent part:

1. Assignment of Right to Reimbursement and Payment.
Pursuant to N.J.S.A 26:2S-6.1(c) and the common law, I hereby assign any and all of my rights to receive payments to any and all benefits under my insurance policy to my medical provider, The Plastic Surgery Center, P.A. ("TPSC"), relating to and/or arising out of any and all medical treatment provided by TPSC to me, including, but not limited to, major medical, personal injury protection (PIP), and workers' compensation benefits

---

[13] Because the AOB is expressly referenced in and an integral document to, the SAC, *see* SAC ¶¶ 2, 20, and is of undisputed authenticity, it may be considered without converting this Motion into one for summary judgment. *Skolas*, 770 F.3d at 249.

otherwise payable to me, regardless of whether TPSC is a participating or non-participating provider of my health insurance carrier.

       2. Irrevocable Assignment of All Benefits and Legal Rights.
I hereby irrevocably assign to TPSC any and all of my legal rights, benefits, and claims relating to and/or arising out of my health insurance policy/policies and the medical treatment provided by TPSC to me; the assignment to TPSC includes, but is not limited to, any and all of my legal rights to major medical, personal injury protection (PIP), and workers compensation benefits, and includes, but is not limited to, my assignment of any and all legal rights to file and prosecute my legal rights and benefits to any and all appeals, claims, and litigation against my health insurance policy/policies relating to and/or arising out of the aforesaid.

AOB, May Decl., Ex. C at ¶¶ 1-2.

    Defendants point to the language of the AOB – providing that K.D.'s assignment to TPSC includes "and all of my *legal* rights" and "any and all *legal rights* to file and prosecute my *legal rights* and benefits to any and all appeals, claims, and litigation against my health insurance policy/policies relating to and/or arising out of the aforesaid," *id.* (emphasis added) – and argue that the assignment only grants Plaintiff derivative standing to pursue *legal* rights on behalf of K.D.  And, because § 502(a)(3) provides for equitable, rather than legal, relief, Defendants maintain that Plaintiff lacks standing to assert Count Five.

    The Court cannot agree, at this early stage, that the AOB unambiguously limited Plaintiff's derivative standing to claims seeking legal relief on behalf of K.D.  To that end, while Defendants cite to some language in the AOB that may support their narrow interpretation of the scope of Plaintiff's derivative standing, the AOB also provides that K.D.'s "assignment to TPSC includes, *but is not limited to*, . . . any and all legal rights to file and prosecute my legal rights and benefits to any and all appeals, claims, and litigation against my health insurance policy/policies relating to and/or arising out of the aforesaid." *Id.*  Thus, because the AOB does not contain clear limiting language, the Court finds it inappropriate, without a full factual record, to determine whether K.D. intended to grant Plaintiff the right to pursue equitable relief on her

behalf.  *See High Crest Functional Med., LLC v. Horizon Blue Cross Blue Shield of New Jersey, Inc.*, No. 15-8876, 2017 WL 1202654, at *4 (D.N.J. Mar. 30, 2017) (finding, at the pleading stage, that deferral of a decision on whether the scope of the patient's assignment of benefits included the right to assert claims for breach of fiduciary duty and failure to provide plan documents until the factual record was developed was warranted); *Zapiach v. Horizon Blue Cross Blue Shield of New Jersey*, No. 15-5333, 2016 WL 796891, at *4 (D.N.J. Feb. 29, 2016) (finding that it was premature, at the pleadings stage, to determine whether an assignment of benefits also included an assignment of the patient's right to assert a claim for breach of fiduciary duty).

### 2.    *Plaintiff Fails to State a Claim under § 502(a)(3)*

However, even if Plaintiff has standing to assert a claim under § 502(a)(3), Count Five must be dismissed, because Plaintiff seeks duplicative relief, and § 502(a)(3) does not authorize a claim seeking money damages.  In that regard, § 502(a)(3) of ERISA provides that "[a] civil action may be brought . . . by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."  29 U.S.C. § 1132(a)(3).  Section 502(a)(3) thus authorizes equitable relief directly to a participant or beneficiary to redress any act or practice which violates any provision of ERISA, including a breach of the statutorily created fiduciary duty of an administrator.  *Bixler v. Cent. Pa. Teamsters Health & Welfare Fund*, 12 F.3d 1292, 1298 (3d Cir. 1993).

Here, Defendants cite the Supreme Court's decision in *Varity* for the proposition that an individual may not bring a claim for breach of fiduciary duty under § 502(a)(3) when such a

claim is duplicative of a claim based upon denial of benefits.  *See Varity*, 516 U.S. at 507-15.  In

addressing the meaning of "appropriate equitable relief" in § 502(a)(3), the *Varity* Court

explained that § 502(a)(3) serves as a "catchall" provision, which acts "as a safety net, offering

appropriate equitable relief for injuries caused by violations that § 502 does not elsewhere

adequately remedy."  *Id*. at 512.  In dictum, the Court anticipated the circumstance in which a

plaintiff presents overlapping claims for benefits and breach of fiduciary duty, observing that in

such cases:

> We should expect that courts, in fashioning "appropriate" equitable relief, will keep in
> mind the "special nature and purpose of employee benefit plans," and will respect the
> "policy choices reflected in the inclusion of certain remedies and the exclusion of others."
> Thus, we should expect that where Congress elsewhere provided adequate relief for a
> beneficiary's injury, there will likely be no need for further equitable relief, in which case
> such relief normally would not be "appropriate."

*Id*. at 515 (internal citations omitted).  In that case, the Court found that the plaintiffs could assert

a claim under § 502(a)(3), because, absent reliance on that provision, they would have "no

remedy at all."  *Id*.

Defendants argue that this Court should dismiss Count Five under *Varity*, because the

relief that Plaintiff seeks in connection with its § 502(a)(3) claim is provided for under §§

502(a)(1)(B) and § 502(c)(1).  Neither the Supreme Court nor the Third Circuit has addressed

directly whether *Varity* precludes a plaintiff from simultaneously pursuing claims under §

502(a)(1)(B) and § 502(a)(3), and there is a split among the other circuits, as well as within this

district, as to the effect of that decision.  *DeVito v. Aetna, Inc.*, 536 F. Supp. 2d 523, 533 (D.N.J.

2008).  On one hand, several courts have held that *Varity* does not impose a bright-line rule

mandating the dismissal of § 502(a)(3) claims whenever a § 502(a)(1)(B) claim is also brought.

*See DeVito*, 536 F. Supp. 2d at 533 ("The Court is persuaded by the reasoning of those courts

that have found that *Varity* does not establish a bright-line rule at the motion to dismiss stage of

the case."); *Zurawel v. Long Term Disability Income Plan for Choices Eligible Employees of Johnson & Johnson*, No. 07-5973, 2010 WL 3862543, at *19 (D.N.J. Sept. 27, 2010) ("There is no bright-line rule precluding the assertion of a § 1132(a)(3) claim merely because a plaintiff has also brought a claim under § 1132(a)(1)(B)."); *see also Parente v. Bell Atl. Pennsylvania*, No. 99-5478, 2000 WL 419981, at *3 (E.D. Pa. Apr. 18, 2000) ("The language used by the Supreme Court in *Varity* does not mandate the dismissal of § 1132(a)(3) claims whenever a § 1132(a)(1)(B) claim also is brought.").

Other courts have held that dismissal is warranted, even at the motion to dismiss stage, where a plaintiff asserts claims for equitable relief under § 502(a)(3) that are duplicative of his or her claims for benefits under § 502(a)(1)(B). *See Dupont v. Sklarsky*, No. 08-1724, 2009 WL 776947, at *9 (D.N.J. Mar. 20, 2009) (dismissing the plaintiff's claim for equitable relief, because "Plaintiff's remedy of an equitable lien does not constitute additional relief that would not be provided through his 502(a)(1)(B) claim."); *Chang v. Life Ins. Co. of N. Am.*, No. 08-0019, 2008 WL 2478379, at *4 (D.N.J. June 17, 2008) (dismissing the plaintiff's claim for equitable relief, where the plaintiff's 502(a)(3) claim "appear[ed] to be nothing more than an attempt to couch the request for relief it had previously set forth [under § 502(a)(1)(B] . . . in the language of equity."); *see also Stallings ex rel. Estate of Stallings v. IBM Corp.*, No. 08-3121, 2009 WL 2905471, at *10 (D.N.J. Sept. 8, 2009) (granting summary judgment on the plaintiff's § 502(a)(3) claim, because it was duplicative of the plaintiff's claim for benefits under § 502(a)(1)(B)). These courts have found that prohibiting a plaintiff from proceeding under § 502(a)(3), when relief is otherwise available under § 502(a)(1)(B), is consistent with the Third Circuit's instruction "that a court must apply ERISA § 502(a)(3)(B) cautiously when an

individual plan beneficiary seeks 'appropriate equitable relief.'" *Ream v. Frey*, 107 F.3d 147, 152-53 (3d Cir. 1997).

Here, while the Court need not reach the issue of whether *Varity* precludes a plaintiff, under any circumstances, from asserting claims under both § 502(a)(1)(B) and § 502(a)(3), I find that dismissal of Plaintiff's § 502(a)(3) claim is warranted, because Count Five is wholly duplicative of Counts Three and Four, in that it is based on the same conduct and seeks relief otherwise available under §§ 502(a)(1)(B) and 502(c)(1) of ERISA.  To that end, the allegations in the SAC overwhelmingly center on either:  (i) Defendant's determination that Plaintiff was only entitled to partial reimbursement under the Plan, *see* SAC ¶¶ 52-54, 56, 58; or (ii) Defendants' alleged failure to respond to Plaintiff's request for Plan documents.  *See id.* at ¶ 57. However, in §§ 502(a)(1)(B) and 502(c)(1), ERISA provides express remedies for those alleged violations.[14]  While the Court expresses no view on whether a plaintiff is barred, under any circumstances, from simultaneously pursuing claims under § 502(a)(1)(B) and § 502(a)(3), here, because Plaintiff's § 502(a)(3) claim is premised on allegations for which other sections of ERISA provide an adequate remedy, dismissal of Plaintiff's § 502(a)(3) claim is warranted.

Even if that were not the case, Count Five must still be dismissed, because Plaintiff seeks only compensatory damages in connection with its § 502(a)(3) claim, and compensatory damages are a classic form of legal relief that are not available under § 502(a)(3).  In that regard, § 502(a)(3) provides that a civil action may be brought by a participant, beneficiary, or fiduciary

---

[14] Indeed, the only basis that Plaintiff cites as distinguishing its breach of fiduciary duty claim from its claim for benefits is the allegation in Count Five that, by affixing the Multiplan logo to the ID Card, Defendants misrepresented that they would reimburse TPSC at the Multiplan Rate. Pl.'s Br. at 14; *see* SAC ¶ 55.  However, the Court has already ruled that Plaintiff has failed to adequately plead a negligent misrepresentation claim, and thus, this allegation cannot serve as the basis for Plaintiff's § 502(a)(3) claim.

of a plan to:  "(A) to *enjoin* any act or practice which violates any provision of this subchapter or

the terms of the plan, or (B) to obtain other *appropriate equitable relief* (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C.

§ 1132(a)(3).  Here, Plaintiff does not seek an injunction, and thus, Plaintiff's only potential

avenue for relief is under subsection (B) of § 502(a)(3).  However, the Supreme Court has held

that the phrase "appropriate equitable relief" in § 502(a)(3)(B) refers to "those categories of

relief that were typically available in equity (such as injunction, mandamus, and restitution, but

not compensatory damages)."  *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993); *see Graden*

*v. Conexant Sys. Inc.*, 496 F.3d 291, 300 (3d Cir. 2007) ("To determine what qualifies as

'equitable' relief, the Supreme Court has drawn a bright-line distinction between traditional

equitable relief (e.g., injunction, equitable lien, constructive trust), which is available under §

1132(a)(3), and traditional legal relief (e.g., money damages), which is not.").

       For example, in *Mertens*, the Court held that a class of beneficiaries could not assert a §

502(a)(3) claim against the plan's actuary, because the plaintiffs sought "nothing other than

compensatory damages —monetary relief for all losses their plan sustained as a result of the

alleged breach of fiduciary duties," and "money damages are . . . the classic form of legal relief."

508 U.S. at 255; *see Hein v. F.D.I.C.*, 88 F.3d 210, 224 (3d Cir. 1996) ("Because Hein requests

monetary damages under ERISA § 502(a)(3) and such damages are legal damages not available

pursuant to *Mertens*, we will instruct the district court to dismiss all three of Hein's fiduciary

duties claims for monetary damages."); *Univ. Spine Ctr. v. Horizon Blue Cross Blue Shield of*

*New Jersey*, No. 16-8021, 2018 WL 1169126, at *3 (D.N.J. Mar. 6, 2018) (dismissing the

plaintiff's § 502(a)(3) claim, where the plaintiff sought "legal, rather than equitable relief, which

is not authorized under the statute.").  Similarly, here, Plaintiff seeks a compensatory damage

award of \$155,242.66 for the reimbursement allegedly due under the Plan, plus an award of \$45,210 in statutory penalties.  This classic form of monetary damages is not available under § 502(a)(3), and thus, Count Five is dismissed.[15]

> **E.   Motion for Leave to File a Third Amended Complaint**

As noted, Plaintiff also cross-moves to file a Third Amended Complaint.  In connection with its Cross-Motion, Plaintiff has attached a proposed Third Amended Complaint, which is nearly identical to the SAC, but seeks to add Multiplan as a defendant, for the purpose of asserting a breach of contract claim against Multiplan.  While the Court grants Plaintiff leave to amend the SAC to add a breach of contract claim against Multiplan, because the remainder of Plaintiff's proposed Third Amended Complaint is inconsistent with the present Opinion, the proposed Third Amended Complaint cannot be filed in its current form.  Accordingly, Plaintiff is given leave to file a Third Amended Complaint, consistent with this Opinion, within thirty (30) days of the date hereof.

**IV.   <u>CONCLUSION</u>**

For the foregoing reasons, Defendants' Motion to Dismiss is granted, insofar as it seeks dismissal of Counts Two, Four, and Five, and those claims are dismissed.  Defendant's Motion is denied, insofar as it seeks dismissal of Count One.  Plaintiff's Cross-Motion for Leave to File its proposed Third Amended Complaint is denied; however, Plaintiff is given leave to file an amended complaint consistent with the dictates of this Opinion, rather than the proposed form.

---

[15] While Plaintiff notes that it also seeks "all other appropriate relief [that] this Court deems just and proper" in connection with Count Five, "[m]erely adding a request for relief that this Court 'may deem just and equitable' does not transform a claim sounding in law to one sounding in equity."  *Univ. Spine Ctr*, 2018 WL 1169126 at *3.

Dated:  May 31, 2018                                     /s/ Freda L. Wolfson
                                                          Hon. Freda L. Wolfson
                                                          United States District Judge