# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, SUNRISE SENIOR LIVING, L.L.C., and MULTIPLAN, INC., <br><br> Defendants. | Civil Action No: 3:17-cv-2055-FLW-DEA <br><br> *Document Electronically Filed* |

## MEMORANDUM IN SUPPORT OF MULTIPLAN INC.'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)

Rachel R. Hager, Esq.
**FINAZZO COSSOLINI O'LEARY MEOLA & HAGER, LLC**
67 East Park Place, Suite 901
Morristown, New Jersey 07960
Telephone:  (973) 343-4960
Facsimile:   (973) 343-4970
- and -
Errol J. King, Esq.
Katherine L. Cicardo, Esq.
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ, PC**
450 Laurel Street, 12th Floor
Baton Rouge, Louisiana 70801
(225) 381-7000
***Attorneys for Defendant MultiPlan, Inc.***

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................ 1

BACKGROUND ........................................................................................................ 2

    I.   The Parties ................................................................................................ 2

    II.  Plaintiff's Allegations .............................................................................. 3

LAW AND ARGUMENT ......................................................................................... 4

    I.   Legal Standard For Dismissal Under Rule 12(b)(6) ................................ 4

    II.  Plaintiff's Claims Should Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State A Claim Upon Which Relief Can Be Granted. ............... 6

        A.  The Terms Of The Agreement Do Not Support Plaintiff's Sole Breach Of Contract Claim Against MultiPlan ................................................... 6

        B.  Plaintiff's Complaint Fails To State A Claim For Breach Of Contract Against MultiPlan ................................................................................. 9

CONCLUSION ........................................................................................................ 11

4828-9542-5649 v1
2917223-000130 08/29/2018

# **TABLE OF AUTHORITIES**

**CASES**

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009) .................................................................................. 4, 5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................................ 5

*Brusco v. Harleysville Ins. Co.*,
   2014 WL 2916716 (D. N.J. June 26, 2014) ..................................................... 5

*Lewis-Burroughs v. Prudential Ins. Co. of Am.*,
   2015 WL 1969299 (D. N.J. Apr. 30, 2015) ..................................................... 5

*Schmidt v. Skolas*,
   770 F.3d 241 (3d Cir. 2014) ............................................................................ 5

*Structured Assets Tr. v. Long*,
   2017 WL 1282742 (N.J. Super. Ct. App. Div. Apr. 6, 2017) ......................... 10

**RULES**

Fed. R. Civ. P. 12(b)(6) ...................................................................................... passim

Defendant, MultiPlan, Inc. ("MultiPlan"), respectfully submits this Memorandum in Support of its Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) (the "Motion"), and in response to the Third Amended Complaint and Jury Demand (the "Complaint") filed by Plaintiff, The Plastic Surgery Center, P.A. ("TPSC" or "Plaintiff"), and respectfully states as follows:

## PRELIMINARY STATEMENT

As Plaintiff's allegations make clear, the crux of its Complaint is that it seeks payment for medical services it provided to Cigna insureds, including patient K.D. However, Plaintiff has failed to plead sufficient factual content to allow this Court to reasonably infer that MultiPlan is liable for the misconduct alleged. Specifically, Plaintiff's only claim against MultiPlan for breach of contract is legally deficient, as the "Ancillary Service Agreement" (the "Agreement") upon which Plaintiff's claim is based expressly states that MultiPlan is not liable for the "payment" of health care services. In addition, Plaintiff has failed to allege any facts whatsoever, much less any specific conduct on the part of MultiPlan, to establish that MultiPlan breached an express term of the Agreement, as is required to state a claim for breach of contract under New Jersey law. Accordingly, and for the reasons set forth more fully below, Plaintiff's sole claim against MultiPlan for breach of contract, as asserted in Count III of the Complaint, fails as a matter of law and should be dismissed with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

4828-9542-5649 v1
2917223-000130 08/29/2018

# BACKGROUND

## I. The Parties

TPSC is a New Jersey licensed medical practice specializing in plastic and reconstructive surgery that allegedly provided medical services to patient K.D., who was a participant or beneficiary of an employee welfare benefit plan sponsored by Defendant Sunrise Senior Living, LLC ("Sunrise") at the time such services were rendered. *See* Complaint, ¶¶ 1–2, 9. Defendant Sunrise is alleged to be the "Plan Sponsor" and "Plan Administrator" of the employee welfare benefit plan under which K.D. was allegedly covered. *Id.* ¶ 10. Plaintiff further alleges that Defendant Sunrise contracted with Defendant Cigna Health and Life Insurance Company ("Cigna"), an insurance and healthcare claims administration company, to administer the plan in question, and that Defendant Cigna in turn contracted with Defendant MultiPlan to utilize MultiPlan's network of participating providers for the benefit of members, participants, beneficiaries, or insured persons under benefit plans administered by Cigna.

MultiPlan is a New York corporation with its principal place of business in New York, New York and is the operator of a Preferred Provider Organization ("PPO") network. As such, MultiPlan enters into agreements with health care providers, which then become "participating providers" in MultiPlan's PPO network. These participating providers agree, pursuant to their contracts with

MultiPlan, to accept a negotiated rate of reimbursement for rendering health care services in return for MultiPlan's agreement to contract with third-party payors (e.g., insurance companies, employee benefit plans, self-funded insurance plans, health maintenance organizations, and/or third party administrators) ("Payors"), such as Cigna, which insure, sponsor or administer health benefit plans, for access to MultiPlan's PPO network. However, MultiPlan is not responsible for making any payments to participating providers for medical expenses incurred by members of clients' health plans. MultiPlan is not an insurance company and does not sponsor, insure, issue, or administer health benefit plans to or for any consumers or employers, nor does it receive any premiums from any consumers or employers relating to its network arrangements.

## II.   Plaintiff's Allegations

In its Complaint, Plaintiff alleges that it entered into a contract with Defendant MultiPlan "to become a member of a network of healthcare providers and was a member of MultiPlan's network" on the date it rendered medical services to patient K.D., and that its contract with MultiPlan "requires Plaintiff to be reimbursed at eighty-five percent (85%) of its billed charges, less any applicable co-payments, deductibles and co-insurance." *See* Complaint, ¶¶ 14, 19. Plaintiff claims that its billed charges for services rendered to patient K.D. on July 23, 2015 totaled $184,962.00, and that pursuant to its Agreement with MultiPlan, "it was entitled to

3

be paid eighty-five percent (85%)" of such charges, or $157,217.70. *Id.* ¶ 23. Plaintiff further contends that "Defendants paid [it] $1,975.04 towards the medical services [Plaintiff] provided to K.D. on July 23, 2015," and that Defendants still owe Plaintiff $155,242.66 for such services pursuant to Plaintiff's Agreement with MultiPlan. *Id.* ¶¶ 24–25.

As the foregoing allegations make clear, however, Plaintiff has failed to plead any facts to state a claim for breach of contract against MultiPlan that is plausible on its face. Accordingly, Plaintiff's only claim against MultiPlan cannot survive this Motion to Dismiss and must necessarily be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

## LAW AND ARGUMENT

### I.   Legal Standard For Dismissal Under 12(b)(6)

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its own face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quotation omitted). While a court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the nonmoving party, it need not assume the truth of conclusory allegations, as mere "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss. *See, e.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Instead,

4

the complaint must contain sufficient "'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Ashcroft*, 556 U.S. at 678.

It is well-established that "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record" in deciding a motion to dismiss. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)). There is a recognized exception, however: "Documents integral to or relied upon in a complaint may of course be considered on a Rule 12(b)(6) motion, even if they are not literally attached." *Lewis-Burroughs v. Prudential Ins. Co. of Am.*, 2015 WL 1969299, at *4 (D.N.J. Apr. 30, 2015); *see also Brusco v. Harleysville Ins. Co.*, 2014 WL 2916716, at *5 (D.N.J. June 26, 2014) ("However, a court may also 'consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.'" (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

In the instant case, the Ancillary Services Agreement[1] between Plaintiff and Beech Street, a MultiPlan affiliate, is repeatedly referenced in Plaintiff's Complaint,

---

[1] The Ancillary Service Agreement was filed into the record of this action by Plaintiff, TPSC, on or about November 20, 2017, in connection with Plaintiff's Brief in Opposition to Defendant Cigna's Motion to Dismiss and was attached as Exhibit A to the Declaration of Benjamin D. Light, Esq. *See* Rec. Doc. 36-2. According to Mr. Light, "[t]he first four pages of this exhibit is correspondence from MultiPlan stating that it had acquired the Beech Street network and

5

and is specifically relied upon by Plaintiff as the very basis for its sole claim for breach of contract against MultiPlan, as stated in Count III of the Complaint. It is therefore appropriate for this Court to consider the Agreement in adjudicating the instant Motion. *See id.*

### II. Plaintiff's Claims Should Be Dismissed Pursuant To Rule 12(b)(6) For Failure To State A Claim Upon Which Relief Can Be Granted.

#### A. *The Terms Of The Agreement Do Not Support Plaintiff's Sole Breach Of Contract Claim Against MultiPlan.*

Plaintiff's breach of contract claim against MultiPlan is, in essence, a claim for payment of medical services rendered to patient K.D. However, the Agreement upon which Plaintiff's claim is based (and which was filed into the record by Plaintiff as Exhibit A to the Declaration of Benjamin D. Light, Esq., *see* Rec. Doc. 36-2) makes absolutely clear that MultiPlan is not liable to Plaintiff for the "payment" of health care services.

In particular, the Agreement states as follows:

> **2.3 Liability for Claims Decisions.** Payors shall be liable for claims decisions and for the payment of Payors' portions of claims pursuant to the applicable Plan. *Beech is not a Payor and shall not be responsible or liable for any claims decisions or for the payment of any claims submitted by Provider for furnishing Covered Services or non-Covered Services to Eligible Persons. Beech shall not be an insurer, guarantor or underwriter of the responsibility or liability of any Payor or any other party to provide benefits pursuant to any Plan.*

---

was assuming the Ancillary Service Agreement Plaintiff had entered with Beech Street. The remaining pages of this exhibit constitute Plaintiff's Ancillary Service Agreement with Beech Street." *Id.* ¶ 2.

6

*See* Ancillary Service Agreement, § 2.3, p. 2, Rec. Doc. 36-2, p. 9 (italics and underlined emphasis added; bolded in original). "Payors" is defined in § 1.9 of the Agreement as "the parties responsible for the payment of Covered Services rendered to Eligible Persons who have access to the Beech Network pursuant to a Network Access Agreement" *See* Ancillary Services Agreement, § 1.9, p. 1, Rec. Doc. 36-2, p. 8. "Network Access Agreement" is then defined in § 1.7 as "an agreement between a Payor or one or more intermediaries and Beech or a Beech Affiliate[2] to access the Beech Network." *See* Ancillary Services Agreement, § 1.7, p. 1, Rec. Doc. 36-2, p. 8. The Agreement goes on to state that "Beech's template Network Access Agreement specifies that *the right to access this Agreement through the Network Access Agreement shall be subject to the terms of this Agreement*." *Id.* (emphasis added).

Article IV of the Agreement, entitled "BILLING AND COMPENSATION," also makes clear that the Payor, rather than MultiPlan, is the party responsible for the processing and payment of claims for health care services:

> **4.1 Billing.** Provider will bill Payors or their designees directly at Provider's usual billed charges for Covered Services furnished by Provider. Provider will bill Payors or their designees at the address identified by such Payors or their designee on properly completed UB 92/HCFA 1500 or successor forms i) within 90 days of rendering services; ii) if Payor is the secondary payor, within 90 days of the explanation of payment from the primary payor; or iii) as otherwise

---

[2] "Beech Affiliate" is defined in §1.1 of the Agreement as "any person, firm, corporation, partnership, association or other entity that directly or indirectly or through one or more entities controls, is controlled by or is under common control with Beech." *See* Ancillary Services Agreement, § 1.1, p. 1, Rec. Doc. 36-2, p. 8.

7

required by applicable state law. Claims received after this time period may be denied for payment, and Provider shall not bill the payors, Eligible Persons or Beech or a Beech Affiliate for any such denied claims. Provider will cooperate and comply with the billing procedures established by Beech and Payors as set forth in the Provider Manual or otherwise communicated to Provider.

**4.2 Compensation.** Payment for Covered Services under this Agreement is the sole responsibility of the Payor and shall be the lesser of Provider's usual billed charges or the reimbursement amount provided in Exhibit A, subject to applicable claim coding and bundling rules (if any) and minus applicable Copayments, Coinsurance and Deductibles. The rates in this Agreement will be payment in full for all services furnished to Eligible Persons under this Agreement. Except when coordination of benefits applies, undisputed amounts due and owing under this Agreement for a clean claim (as defined under applicable law) for Covered Services will be payable within 30 days of receipt of such clean claim by the applicable Payor or Payor designee or within the timeframe required by the applicable state's prompt payment of claims law. Subject to the terms of the applicable Network Access Agreement, if payment is not made within such timeframe, Provider may elect not to extend the discount under this Agreement but only if Provider requests an adjustment to the claim with the applicable Payor within 60 days of receipt of payment or, if no payment was made, within 60 days of the date that payment was due.

****

**4.4 Limitation on Billing Eligible Persons.** Provider agrees that in no event, including but not limited to nonpayment by Payor, Payor's insolvency or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from or have any recourse against Eligible Persons or persons other than the applicable Payor for Covered Services. In addition, Provider shall not bill Eligible Persons for any amounts not paid due to Provider's failure to comply with the requirements of Utilization Management, failure to file a timely claim or appeal or due to the application of claim coding and bundling rules.

****

> **4.6 Underpayments.** Except as otherwise set forth herein, if Provider believes Provider has been underpaid for a Covered Service, Provider must submit a written request for an appeal or adjustment within 180 days from the date of Payor's payment or explanation of payment. The requirement must be submitted in accordance with the provider payment appeal process set forth in the Provider Manual. Requests for appeals or adjustments submitted after this date may be denied for payment, and Provider will not be permitted to bill Payor, the Eligible Person, Beech or a Beech Affiliate for those services for which payment was denied.

*See* Ancillary Services Agreement, pp. 3–4, Rec. Doc. 36-2, pp. 10–11.

Accordingly, Plaintiff's sole claim for breach of contract against MultiPlan fails as a matter of law and must be dismissed based on the plain language of the Agreement, as it is not MultiPlan that is responsible for payment as the Agreement expressly provides.

> B. *Plaintiff's Complaint Fails To State A Claim For Breach Of Contract Against MultiPlan.*

The elements for a claim of breach of contract under New Jersey law are: (1) that "the parties entered into a contract with specific terms;" (2) that "the moving party acted in accordance with the contract;" (3) that "the non-moving party failed to act ('breached') accordingly;" and (4) that "the breach resulted in damages to the moving party. *Id.* at 482. In interpreting a contract, courts read the document as a whole, impose clear and unambiguous terms, and enforce the contract as written." *Structured Assets Tr. v. Long*, 2017 WL 1282742, at *2 (N.J. App. Div. Apr. 6, 2017) (citing *Barr v. Barr*, 418 N.J. Super. 18, 31–32 (N.J. App. Div. 2011)).

9

In support of its breach of contract claim against MultiPlan, as asserted in Count III of the Complaint, Plaintiff broadly alleges that

> [i]n the event that Cigna's contract with MultiPlan does not require Cigna to reimburse Plaintiff 85% [of] the billed charges at issue in this case, then MultiPlan will have breached its contract with Plaintiff and Plaintiff will have been damaged in an amount equal to 85% of its billed charges at issue in this case, less any other amounts paid towards those charges by Cigna and/or Sunrise.

*See* Complaint, ¶ 42. Yet, Plaintiff's allegations are nothing more than a formulaic recitation of the legal elements for a breach of contract claim under New Jersey law, as Plaintiff has failed to allege any *facts*, much less identify any particular *conduct* on the part of MultiPlan, that constitutes a breach of the Ancillary Service Agreement. Indeed, Plaintiff does not even identify the specific contractual provisions that MultiPlan allegedly breached. Such threadbare conclusions are insufficient to sustain Plaintiff's breach of contract claim and cannot survive this Motion to Dismiss. *See Twombly*, 550 U.S. at 555 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."). As such, the sole claim asserted by Plaintiff against MultiPlan in Count III of the Complaint is subject to dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

10

## **CONCLUSION**

For the foregoing reasons, MultiPlan respectfully requests that its Motion to Dismiss be granted, and that Plaintiff's Third Amended Complaint and Jury Demand be dismissed in its entirety, and with prejudice, as to Defendant MultiPlan in accordance with Federal Rule of Civil Procedure 12(b)(6).

Dated:   August 31, 2018

                                          Respectfully submitted,

                                          By: */s/ Rachel R. Hager*
                                          Rachel R. Hager, Esq.
                                          **FINAZZO  COSSOLINI  O'LEARY MEOLA & HAGER, LLC**
                                          67 East Park Place, Suite 901
                                          Morristown, New Jersey 07960
                                          Telephone:   (973) 343-4960
                                          Facsimile:   (973) 343-4970

                                          ***Attorneys for Defendant MultiPlan, Inc.***