UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE PLASTC SURGERY CENTER, P.A., | |
| Plaintiff, | Civil Action No.: 17-2055 (FLW) |
| v. | |
| | **OPINION** |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, *et al.*, | |
| Defendant. | |

**WOLFSON, United States District Judge**:

In this action, Plaintiff The Plastic Surgery Center, P.A. ("Plaintiff" or "TPSC"), as the assignee of an employee of Sunrise Senior Living ("Sunrise"), seeks to recover the costs of plastic surgery services provided by TPSC to the Sunrise employee, from an employee health benefit plan (the "Plan") sponsored by Sunrise and governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*. Plaintiff has also asserted various contractual and quasi contractual claims under New Jersey state law, which pertain to the plastic surgery services rendered to the employee of Sunrise. Defendants Multiplan, Inc. ("Multiplan"), Cigna Health and Life Insurance Company, ("Cigna"), and Sunrise (collectively, "Defendants") originally moved for partial dismissal of Plaintiff's Third Amended Complaint (the "TAC"). In response, Plaintiff opposed the Motions and filed a Cross Motion for leave to file a proposed Fourth Amended Complaint ("FAC"). Now, Defendants challenge Counts Three through Six of the proposed FAC pursuant to Federal Rule of Civil Procedure 15(a)(2), on the basis of futility.[1]

---

[1] Defendants Cigna and Sunrise withdrew their dismissal motion after TPSC cross moved for leave to file a proposed Fourth Amended Complaint, and instead filed a joint opposition to TPSC's Cross Motion. Although Multiplan did not withdraw its motion to dismiss TPSC's Third Amended Complaint, Multiplan has also opposed TPSC's Cross-Motion on the same basis as its

1

For the reasons set forth herein, Plaintiff's Cross-Motion to file the proposed Fourth Amended Complaint is **DENIED** as to Counts Three through Six. In that regard, the only claims remaining in the proposed FAC are the following: (1) wrongful denial of benefits under ERISA against Cigna, Sunrise, and the Plan in Count One; and (2) the breach of contract claim against Cigna in Count Two. Plaintiff is directed to file its FAC within 15 days from the date of Order accompanying this Opinion, consistent with this Opinion.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The following facts are taken from TPSC's proposed Fourth Amended Complaint ("FAC") and are presumed to be true for the purpose of this motion. TPSC, a professional association incorporated under the laws of New Jersey, operates as a licensed medical practice which specializes in plastic and reconstructive surgery. FAC, ¶ 1. K.D., to whom TPSC rendered medical services, is employed by Sunrise and is a participant or beneficiary of the Plan. *Id*. at ¶ 10. K.D. assigned her rights under the Plan to TPSC. *Id*. at ¶ 44. Sunrise, the sponsor and administrator of the Plan, as defined under ERISA, delegated to Cigna, *inter alia*, "the discretionary authority to interpret and apply [P]lan terms and to make factual determinations in connection with its review of claims under the [P]lan." *Id*. at ¶¶ 18, 28. "Cigna also served as the *de facto* Plan Administrator by virtue of Sunrise's complete delegation of the Plan Administrator's duties to Cigna." *Id*. at ¶ 27.

On July 23, 2015, TPSC performed bilateral breast reconstruction services on K.D (the "Medical Services").[2] *Id*. at ¶¶ 10, 37. TPSC alleges that, although it billed $184,962 for the

---

dismissal motion. Therefore, the Court will consider the allegations as alleged in the proposed Fourth Amended Complaint, for the purpose of resolving Plaintiff's motion.

[2]  More specifically, the FAC alleges that, as a result of a breast cancer diagnosis and bilateral mastectomy, K.D. received the following medical services: "bilateral pectoralis

Medical Services, Cigna, on the behalf of Sunrise, rendered payment only in the amount of $1,975.04 to TPSC. *Id*. at ¶¶ 39-40.

Prior to the date of the Medical Services, TPSC alleges that it contracted with Multiplan, a third party which maintains a network of medical providers, to become a member of the Multiplan Network (the "TPSC-Multiplan Agreement"). *Id*. at ¶¶ 22, 24. Under that Agreement, TPSC asserts that it must be reimbursed in the amount of 85% of its billed charges, less any applicable co-payments, deductibles, and co-insurance (the "Multiplan Rate"). According to TPSC, as part of Cigna's administrative duties in connection with the Plan, Cigna also contracted with Multiplan prior to the date of the Medical Services, in order to receive the following services: "utilize the Multiplan Network for the benefit of members, participants, beneficiaries, or insureds under policies or benefit plans administered by Cigna" (the "Cigna-Multiplan Agreement"). *Id*. at ¶¶ 29. TPSC alleges that, pursuant to the Cigna-Multiplan Agreement, Cigna was required to pay TPSC the Multiplan Rate (85%), in connection with the Medical Services, *i.e.*, $157,217.70. *Id*. at ¶ 47.

According to TPSC, prior to the date of the Medical Services, Cigna issued K.D. an identification card ("I.D. Card") bearing Multiplan's logo, indicating that Cigna participated in the Multiplan Network and that K.D. was authorized to be treated by members of the Multiplan Network, including TPSC. *Id*. at ¶¶ 34-35. TPSC alleges that it relied upon the conduct of Multiplan and Cigna, including but not limited to the placement by Cigna of the Multiplan logo on K.D.'s identification card, when deciding whether to perform the Medical Services. *Id*. at ¶ 36.

---

elevation, bilateral serratus anterior flap, bilateral placement of tissue expanders and Allomax, complex closure and spy angiography followed by scar revision, removal of tissue expanders, full capsulotomy, placement of implants, and complex closure[.]" FAC, ¶ 37.

On February 6, 2017, after exhausting all claim appeal procedures and administrative remedies under the Plan, *id*. at ¶ 46, TPSC filed suit against Cigna in the Superior Court of New Jersey, Law Division, Monmouth County. The initial Complaint asserted claims for breach of contract, breach of an implied-in-fact contract, and unjust enrichment. On March 29, 2017, Cigna removed the case to this Court, pursuant to 28 U.S.C. §§ 1441 and 1446, on the basis of ERISA preemption.

On May 19, 2017, Plaintiff filed a First Amended Complaint against Cigna, asserting a single claim for wrongful denial of benefits under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B). On July 27, 2017, Plaintiff filed the SAC, which added Sunrise as a Defendant, and asserted the following five causes of action: (1) breach of contract against Cigna; (2) negligent misrepresentation against Cigna; (3) wrongful denial of benefits under § 502(a)(1)(B) of ERISA against Cigna and Sunrise; (4) violation of § 502(c)(1) of ERISA, on the basis of Cigna and Sunrise's alleged failure to respond to TPSC's request for Plan documents within 30 days; and (5) breach of fiduciary duty, pursuant to § 502(a)(3) of ERISA, against Cigna and Sunrise. On May 31, 2018, I issued an Opinion, dismissing Counts Two, Four, and Five of the SAC, and granted TPSC leave to file a Third Amended Complaint ("TAC") for the purpose of including Multiplan as a defendant.

TPSC filed the TAC on June 29, 2018, adding Multiplan as a party to this action, following which Defendants, once again, moved for dismissal. TPSC then cross moved to file a proposed Fourth Amended Complaint ("FAC") wherein the following causes of action are alleged: (1) wrongful denial of benefits under § 502(a)(1)(B) of ERISA against Cigna, Sunrise, and the Plan; (2) breach of contract against Cigna; (3) breach of implied-in-fact contract against Cigna; (4) breach of contract against Multiplan; (5) violation of TPSC's third party beneficiary

4

rights pursuant to the Cigna-Multiplan Agreement; and (6) unjust enrichment against Multiplan and Cigna.

In the instant matter, defendant Multiplan challenges Counts Four through Six of the proposed FAC on the basis of futility; on a separate motion, defendants Cigna and Sunrise jointly[3] oppose the amendment of Counts Three, Five, and Six. Defendants do not challenge the inclusion of Counts One and Two in the proposed FAC.

## II. DISCUSSION

### A. LEGAL STANDARD

Fed. R. Civ. P. 15(a)(2) allows a party to amend its pleading by leave of court when justice so requires. Leave to amend pleadings is to be freely given. Fed. R. Civ. P. 15(a)(2); see also *Valentine v. Bank of Am.*, No. 09-262, 2010 U.S. Dist. LEXIS 8546, at *1-2 (D.N.J. Feb. 1, 2010) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)). The decision to grant leave to amend rests within the discretion of the court. Id. (citing *Foman*, 371 U.S. at 182). Leave to amend may be denied on the basis of: (1) undue delay; (2) bad faith or dilatory motive; (3) undue prejudice to the opposing party; and (4) futility of amendment. *See id*.

Courts may properly deny a motion to amend when the amendment would not withstand a motion to dismiss. *Id*. (citing *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir. 1983)). With respect to futility, "[it is] clear that an amendment would be futile when 'the complaint, as amended, would fail to state a claim upon which relief could be granted.'" *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997)); *see also Harrison Beverage Co. v.*

---

[3] Although Cigna and Sunrise have filed a joint opposition as to Counts Three, Five, and Six of the proposed FAC, those claims are only asserted against Cigna. Nevertheless, to the extent that those claims can be read to be alleged against Sunrise, the same analysis is applicable.

5

*Dribeck Importers, Inc.*, 133 F.R.D. 463, 468 (D.N.J. 1990) (reasoning that an amendment is futile if it "is frivolous or advances a claim or defense that is legally insufficient on its face") (citations and quotations omitted)). As such, "[i]n assessing futility, the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Burlington*, 114 F.3d at 1434 (citing *Glassman*, 90 F.3d at 623) (citation omitted).

A court may grant a motion to dismiss if the complaint fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted); *see also Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir.2007) (stating that standard of review for motion to dismiss does not require courts to accept as true "unsupported conclusions and unwarranted inferences" or "legal conclusion[s] couched as factual allegation[s].") (quotations omitted). Therefore, for a complaint to withstand a motion to dismiss under Rule 12(b)(6), the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *Twombly*, 550 U.S. at 555 (citations omitted).

The Supreme Court has emphasized that, when assessing the sufficiency of a civil complaint, a court must distinguish factual contentions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When evaluating a motion to dismiss for failure to state a claim, district courts engage in a three-step progression.

First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 662. Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. at 664. Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." *Id*. This means that the inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir.2011). A complaint will be dismissed unless it "contain[s] sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). This "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Fowler*, 578 F.3d at 211 (citations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully;" mere consistency with liability is insufficient. *Iqbal*, 556 U.S. at 678. A plaintiff may not be required to plead every element of a prima facie case, but he must at least make "allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler*, 578 F.3d at 213 (3d Cir.2009).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 98 (3d Cir. 2010) cert. denied, 565 U.S. 817 (2011). Generally, when determining a motion under Rule

12(b)(6), the court may only consider the complaint and its attached exhibits. However, while "a district court may not consider matters extraneous to the pleadings, a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *Angstadt v. Midd-West Sch. Dist.*, 377 F.3d 338, 342 (3d Cir. 2004) (quoting *U.S. Express Lines, Ltd. v. Higgins*, 281 F.3d 383, 388 (3d Cir. 2002)); see *also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Here, the elements of undue delay and prejudice are not in dispute. I will only assess futility.

B. **Analysis**

*i. TPSC-Multiplan Agreement*

In Count Four of the proposed FAC, TPSC alleges that Multiplan breached Section 4.2 of the TPSC-Multiplan Agreement, which, in pertinent part, provides: "Compensation. Payment for Covered Services under this Agreement is the sole responsibility of the Payor[4] and shall be the lesser of Provider's usual charges or the reimbursement amount provided in Exhibit A." Exhibit A, which is attached to the Agreement, states that "Covered Services will be reimbursed at 85% of usual billed charges." Certification of Michael DiCocco, Esq. (dated Oct. 1, 2018) ("DiCocco Cert."), ¶ 3, Ex. A. According to TPSC, Section 4.2's language "expressly represents to TPSC that it will unequivocally receive 85% of customary billed charges from a Payor because the Payor is permitted to access the Multiplan network for its member patients." Plaintiff's Brief in Opposition to Multiplan's Motion to Dismiss ("Pl.'s Opp."), at 8. Based upon that alleged representation, TPSC maintains that, "[i]n the event that Cigna is not legally responsible to pay

---

[4] The TPSC-Multiplan Agreement includes the following definition of the term Payor: "the parties responsible for the payment of Covered Services rendered to Eligible Persons who have access to the [Mulitplan] Network pursuant to a Network Agreement." (DiCocco Cert."), ¶ 3, Ex. A. The parties do not dispute that Cigna falls within the meaning of a Payor, as defined in the TPSC-Multiplan Agreement.

8

TPSC 85% of its billed charges based on the Cigna/Multiplan Contract, then Multiplan has breached the TPSC/Multiplan Contract." FAC, ¶ 72. I disagree.[5]

In New Jersey, contract provisions are to be "read as a whole, without artificial emphasis on one section, with a consequent disregard for others." *Borough of Princeton, Bd. of Chosen Freeholders of Mercer*, 333 N.J. Super 310, 325 (App. Div. 2000), *aff'd*, 169 N.J. 135 (2001). "Literalism must give away to context." *Id*. at 325. Thus, "in weighing competing interpretations, the one to be adopted is that most in accord with justice and common sense and the probable intent of the parties." *Grelu Consulting, Inc. v. Patel*, No. A-3042-11T3, 2013 N.J. Super. Unpub. LEXIS 1362, at *8 (N.J. App. Div. 2013) (citing *Krosnowski v. Krosnowski*, 22 N.J. 376, 387, 126 A.2d 182 (1956)). Moreover, all provisions of a contract should be given effect and "while a contract's provisions must be interpreted with reference to the whole[,] the specific controls the general." *Capitol Bus Co. v. Blue Bird Coach Lines, Inc.*, 478 F.2d 556, 560 (3d Cir. 1973) (citing Restatement, Contracts §§ 235(c), 236(b) and (c) (1932); Williston on Contracts, Third Edition §§ 618, 619(1961)).

Here, TPSC's interpretation of the TPSC-Multiplan Agreement, as set forth above, conflicts with ordinary principles of contractual interpretation. *Ill. Nat'l Ins. Co. v. Wyndham Worldwide Operations, Inc.*, 653 F.3d 225, 227 (3d Cir. 2011) ("A court interprets a contract according to its plain language by reading the document as a whole in a fair and common sense manner so as to match the reasonable expectations of the parties."). The pertinent language of Section 4.2 merely sets forth a discounted rate at which a *Payor* is required to render payment in

---

[5] The Court notes that, while TPSC emphasizes that it is not attempting to recover a "payment of benefit" through the assertion of a breach of contract claim against Multiplan, TPSC, nonetheless, seeks to recover damages in the amount that it is allegedly owed from Cigna, for the disputed Medical Services, *i.e.*, $157,217.70.

connection with the health care services provided by TPSC to Plan participants or beneficiaries. As such, the language of the provision neither "unequivocally" states nor guarantees that TPSC will receive 85% of its customary billed charges on every occasion when TPSC renders services. Rather, payment at the Multiplan Rate is explicitly conditioned upon the performance of "Covered Services," which is defined under the TPSC-Multiplan Agreement to constitute "health care services provided pursuant to [an ERISA] Plan." DiCocco Cert, ¶ 3, Ex. A. In that connection, the language of the Agreement is clear—Multiplan is not liable to TPSC, regardless of whether Cigna fails to pay for Covered Services or if it wrongfully denies payment; rather, only the Payor may be liable.

Indeed, the very provision upon which TPSC relies, Section 4.2, clearly sets forth that "[p]ayment for Covered Services under this Agreement is the *sole* responsibility of the Payor[,]" not Multiplan. DiCocco Cert, ¶ 3, Ex. A (emphasis added). Moreover, Section 2.3 of the TPSC-Multiplan Agreement provides:

> **2.3 Liability for Claims Decisions.** *Payors shall be* liable for claims decisions and for the payment of Payors' portions of claims pursuant to the applicable Plan. Beech[6] is not a Payor and shall not be responsible or liable for any claims decisions or for the payment of any claims submitted by Provider for furnishing Covered Services or non-Covered Services to Eligible Persons. Beech shall not be an insurer, guarantor or underwriter of the responsibility or liability of any Payor or any other party to provide benefits pursuant to any Plan.

DiCocco Cert, ¶ 3, Ex. A (emphasis added). In addition, Section 4.4. states:

> **4.4 Limitation on Billing Eligible Persons.** Provider agrees that in no event, including but not limited to nonpayment by Payor, Payor's insolvency or breach of this Agreement, shall Provider bill, charge, collect a deposit from, seek compensation, remuneration or reimbursement from or have any recourse against Eligible Persons or from persons *other than the applicable Payor* for Covered Services.

DiCocco Cert, ¶ 3, Ex. A (emphasis added).

---

[6] In March of 2010, Multiplan acquired Beech. DiCocco Cert, ¶ 3, Ex. A.

Taken together, the plain language of sections 2.3, 4.2, and 4.4 provide that Cigna, as the Payor, is solely obligated for rendering payment in connection with the performance of health care services. Indeed, nowhere in the TPSC-Multiplan Agreement is there a provision providing for an exception, such that Multiplan would be obligated to pay for any type of health care services. In other words, the TPSC-Multiplan Agreement does not contain any provision that creates an independent obligation on the part of Multiplan to reimburse TPSC, in the event that Cigna is not legally obligated to provide payment at the Multiplan Rate, *e.g.*, when health care services are not covered under the Plan.[7] This makes logical sense, because Multiplan is not an insurer—it exists solely to maintain a network of health care providers. Accordingly, because TPSC's claims are related to non-payment in connection with the performance of health care services, the TPSC-Multiplan Agreement does not provide Plaintiff a cause of action against Multiplan in this context. TPSC can only look to Cigna, the Payor, to be made whole. Thus, TPSC's breach of contract claim against Multiplan in the proposed Fourth Amended Complaint is futile.[8]

   *ii. State Law Claims*

Defendants oppose the amendment of Counts Three, Five, and Six of the proposed FAC, which includes the following contractual and quasi-contractual claims under New Jersey state law, respectively: (a) breach of implied-in-fact contract between TPSC and Cigna; (b) unjust enrichment against Cigna and Multiplan; and (c) denial of third-party beneficiary rights against

---

[7]  The Court notes that this very issue, among other things, is the subject of the parties' dispute in Count One—wrongful denial of ERISA benefits.

[8]  While the Court previously granted TPSC leave to file a Third Amended Complaint, for the purpose of including Multiplan as a defendant, the TPSC-Multiplan Agreement was not provided until after that decision was rendered.

Cigna and Multiplan. The Court notes that TPSC's Cross-Motion in support of the proposed FAC does not address the proposed amendments, in substance, but rather merely references the governing standards of law and quotes the additional allegations which are alleged in the proposed FAC.

Count Three of the proposed FAC alleges as follows: "the conduct of Cigna in dealing with TPSC objectively viewed, reveals a promise to pay TPSC for the medical services provided to K.D. equal to 85% of its billed charges." FAC, ¶ 64. The conduct, which TPSC references, includes the placement of Multiplan's logo on an I.D. issued by Cigna to K.D., which TPSC allegedly relied on in determining whether to provide K.D. with medical services. FAC, ¶¶ 34-35.

It is well-established that a contract implied-in-fact "'is in legal effect an express contract, and varies from the latter only insofar as the parties' agreement and assent thereto have been manifested by conduct instead of words.'" *Saint Barnabas Medical Center v. Essex County*, 111 N.J. 67, 77 (1988) (quoting *St. Paul Fire & Marine Ins. Co. v. Indemnity Ins. Co. of North America*, 32 N.J. 17, 23 (1960)); *accord* Restatement (Second) of Contracts § 4, comment a ("A promise may be stated in words either oral or written, or may be inferred wholly or partly from conduct."). In other words, the only difference between an implied-in-fact contract and an express contract is that the parties' agreement has been manifested by conduct instead of words. *Id*. "Like express contracts, contracts implied in fact depend on 'mutual agreement and intent to promise . . . and can be established by objective proofs.'" *Id*. (quoting *Borough of W. Caldwell v. Borough of Caldwell*, 26 N.J. 9, 29 (1958)). Therefore, the relevant inquiry when a party attempts to establish proof of agreement through conduct rather than words is whether the conduct of the defendant, as viewed by a reasonable person in the relevant custom or trade,

revealed a promise to pay. *Duffy v. Charles Schwab & Co., Inc.*, 123 F. Supp. 2d 802, 804 (D.N.J. 2000).

Here, while the FAC alleges that Cigna breached an express contractual provision to render payment for health care services at the Multiplan Rate, it also alleges that Cigna breached an implied-in-fact contract between the parties, on the basis of the same conduct. However, because express contracts and implied-in-fact contracts are mutually exclusive, TPSC's claim for breach of implied-in-fact contract is futile on such grounds alone. *Roselle Park Bldg. & Loan Ass'n v. Friedlander*, 116 N.J.L. 32, 34 (1935) ("It is axiomatic that a contract cannot arise by implication in fact where there is an express contract between the parties relating to the same subject-matter . . . ."); *Chase Manhattan Bank v. Iridium Afr. Corp.*, 239 F. Supp. 2d 402, 409 (D. Del. 2002) ("A party may not simultaneously allege an implied-in-fact and express contract based on the same terms or embracing the same subject matter.").

Nevertheless, TPSC's implied-in-fact contract claim suffers from a more fundamental problem. Cigna's alleged placement of Multiplan's logo on an insurance card which was provided to K.D., with nothing more, does not reasonably satisfy the contractual elements of offer and acceptance. *See In re Penn Cent. Transp. Co.*, 831 F.2d 1221, 1228 (3d Cir. 1987) ("The elements necessary to form an implied-in-fact contract are identical to those required for an express agreement.") (citation omitted). Indeed, even if K.D.'s insurance card bore Multiplan's logo, this fact does not sufficiently aver that Cigna had agreed to compensate TPSC in the amount of 85% of its billed charges, in exchange for the health care services which were rendered to K.D. Based on the dearth of allegations in this regard, there is no basis to find that a "meeting of the minds" between Cigna and TPSC had occurred, such that an implied-in-fact contract was created. Therefore, Count Three of the proposed FAC fails on the basis of futility.

Next, Count Five of the proposed FAC asserts that "TPSC is a third party-beneficiary of the Cigna/Multiplan Contract because Cigna and Multiplan intended that TPSC as a member of that Multiplan Network to which Cigna had access would benefit from the contract by treating patients, including K.D., at a reduced rate and be paid 85% of the billed charges." FAC, ¶ 75. TPSC concedes that it is not a signatory to the Cigna/Multiplan Contract.

In New Jersey, a third party can maintain an action based on a contract only if it is a "person for whose benefit the contract is made." N.J.S.A. 2A:15-2. This requires that the contracting parties have expressly intended for that third-party to receive a benefit which might be enforced in the courts." *Washington v. Corr. Med. Servs.*, No. 05-3715, 2006 U.S. Dist. LEXIS 25127, at *5 (D.N.J. Apr. 28, 2006) (quotations omitted); *GE Capital Mortg. Services, Inc. v. Privetera*, 346 N.J. Super. 424, 434 (App. Div. 2002). "The test for determining whether a third-party has an actionable right under contract is whether contracting parties intended that a third party should receive a benefit which might be enforced in the court." *GE Capital*, 346 N.J. Super at 434. In other words, "[t]o qualify as a third-party beneficiary, it must be shown that the contract was 'made for the benefit of that third party within the intent and contemplation of the contracting parties'." *Grand St. Artists v. Gen'l Electric. Co.*, 19 F. Supp. 2d 242, 253 (D.N.J. 1998).

Importantly, a contract is not enforceable by a merely incidental third-party beneficiary. *See GE Capital*, 346 N.J. Super at 434 ("If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing."); *see E.I. Dupont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 196 (3d Cir. 2001) (stating that "if it was not the promisee's intention to confer direct benefits upon a third party, but rather such third party happens to benefit from the performance of the promise either coincidentally or

indirectly, then the third party will have no enforceable rights under the contract" because the third party is nothing "more than an incidental third party beneficiary"); *Prinzivalli v. Aruba Phoenix Beach Resort*, No. 06-6004, 2008 U.S. Dist. LEXIS 22202, at *2 (D.N.J. Mar. 20, 2008) ("Without this intention to confer a benefit, the third party just so happens to benefit and he or she will have no contractual rights under the agreement.") (citing *Reider Communities, Inc. v. N. Brunswick Twp.*, 227 N.J. Super. 214, 567 (App. Div. 1988)). Unlike an intended beneficiary, an incidental beneficiary is a party that benefits from a contract between two other parties but is not itself a party to that contract and is not intended by the parties to the contract to have enforcement rights. 13 Samuel Williston & Richard A. Lord, A Treatise On The Law Of Contracts § 37:7 (4th ed. 2000 & Supp. 2002). Accordingly, a court must examine the contract's terms and the surrounding circumstances to discern whether the contracting parties intended to confer benefits on the non-signatory party. *Prinzivalli*, 2008 U.S. Dist. LEXIS 22202, at *2.

Here, in a conclusory fashion, TPSC alleges that it is a third-party beneficiary to the Cigna-Multiplan Agreement, merely because "Cigna and Multiplan intended that TPSC as a member of [the] Multiplan Network to which Cigna had access would benefit from the contract by treating patients, including K.D., at a reduced rate[.]" FAC, ¶ 75. Aside from these threadbare assertions, TPSC alleges no further substantive allegations. This claim fails because third-party beneficiary status is dependent upon an examination of the disputed contract's terms and provisions. However, TPSC has neither provided a copy of the Cigna-Multiplan Agreement for consideration, nor does it reference a single provision from that contract in the proposed FAC. In the absence of this information, TPSC has not sufficiently alleged, nor can the Court ascertain, if Cigna and Multiplan entered into an agreement for the direct benefit of TPSC, or whether TPSC merely constitutes an incidental third-party beneficiary, or even a beneficiary at all. This

15

distinction is significant, because a mere incidental third-party beneficiary or non-beneficiary has no standing to enforce a provision of a contract, to which it is not a signatory. *Kaminski v. Twp. of Toms River*, No. 10-2883, 2011 U.S. Dist. LEXIS 40607, at *25 (D.N.J. April 14, 2011) (finding that, because the plaintiffs did not dispute that they were not signatories to the contract at issue, they were required to demonstrate third-party beneficiary status, in order to have standing to bring a breach of contract claim); *Edwards v. Corr. Med. Servs.*, No. 09-3979, 2010 U.S. Dist. LEXIS 37587, at *12 (D.N.J. March 9, 2010) ("Under New Jersey law, a third-party beneficiary has standing to sue only where that party is an intended beneficiary of the contract.") (citation omitted). Because TPSC has not sufficiently alleged its third-party beneficiary status in order to bring a breach of the Cigna-Multiplan Agreement against Cigna, Count Five is futile.

Finally, Count Six of the proposed FAC alleges as follows: "Multiplan and Cigna have benefitted and been unjustly enriched at the expense of TPSC because they have not paid TPSC the reasonable value of the K.D. Medical Service[.]" FAC, ¶ 79. In New Jersey, in order to allege a claim for unjust enrichment, a party must plead the following elements: "(1) at plaintiff's expense, (2) defendant received benefit, (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *In re K-Dur Antitrust Litig.*, 338 F. Supp. 2d 517, 544 (D.N.J. 2004) (quoting Restatement of Restitution § 1 (1937)); *see VRG Corp. v. GKN Realty Corp.*, 135 N.J. 539, 554 (1994) ("The unjust enrichment doctrine requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights.").

Here, TPSC cannot adequately plead that Cigna or Multiplan received a benefit, or that it would be unjust for them to retain the alleged benefit without payment, *as a result of the health*

16

*care services which were rendered to K.D.* Indeed, district courts have consistently dismissed unjust enrichment claims under substantially similar circumstances, reasoning that, if anything, the benefit is derived solely by the insured party. *New Jersey Carpenters Health Fund v. Philip Morris, Inc.*, 17 F. Supp. 2d 324, 344 (D.N.J. 1998) ("The argument that the [plaintiffs] conferred a benefit on defendants because the defendants may ultimately be found liable for the medical costs that the [plaintiffs] have already paid is simply too remote and speculative to constitute a recoverable benefit."); *Broad St. Surgical Ctr., LLC v. UnitedHealth Group, Inc.*, No. 11-2775, 2012 U.S. Dist. LEXIS 30466, at *23 (D.N.J March 6, 2012) ("In this case, the Plaintiff provided services to [medical patients] and any benefit conferred was conferred on [the medical patients] not [the medical insurer]. [The Plaintiff], as the insurance company, 'derives no benefit from those services; indeed, what the insurer gets is a ripened obligation to pay money to the insured—which hardly can be called a benefit.'") (quoting *Travelers Indem. Co. v. Losco Group, Inc.*, 150 F. Supp. 2d 556, 562 (S.D.N.Y. 2001)). Accordingly, TPSC's claim for unjust enrichment, too, fails on the basis of futility.

## III. CONCLUSION

For the reasons set forth above, TPSC's request for leave to file a proposed FAC with respect to Counts Three through Six is **DENIED**. Within 14 days of the date of the Order accompanying this Opinion, TPSC is directed to file the Fourth Amended Complaint, which would include only the following claims: (1) a wrongful denial of benefits claim under § 502(a)(1)(B) of ERISA against Cigna, Sunrise, and the Plan; and (2) a breach of contract claim against Cigna.[9] An appropriate Order accompanies this Opinion.

---

[9] Although Cigna has not moved to dismiss TPSC's claim for breach of contract in Count Two of the proposed FAC, I note that this cause of action appears to be duplicative of TPSC's third-party beneficiary claim in Count Five, which has been found futile. Indeed, just like Count

Dated: April 30, 2019

/s/ Freda L. Wolfson
Freda L. Wolfson
United States District Judge

---

Five, TPSC's breach of contract claim is based upon Cigna's failure to comply with the provisions of the Cigna-Multiplan Agreement, and TPSC does not dispute that it is a non-signatory to that Agreement. Therefore, in order to succeed on its breach of contract claim against Cigna, TPSC must demonstrate that it is an intended beneficiary of the Cigna-Multiplan Agreement. Count Two, therefore, may be subject to dismissal on that basis, and on the additional basis of ERISA preemption. The Court anticipates motion practice if Count Two is repled.