**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., | |
| Plaintiff, | Civil Action No.3:17-cv-2055(FLW)(DEA) |
| vs. | *Document Electronically Filed* |
| CIGNA HEALTH AND LIFE INSURANCE COMPANY, SUNRISE SENIOR LIVING, LLC., AND SUNRISE SENIOR LIVING, LLC OPEN ACCESS PLUS MEDICAL BENEFITS GOLD PLAN, | **FOURTH AMENDED COMPLAINT AND JURY DEMAND** |
| Defendants. | |

Plaintiff, The Plastic Surgery Center, P.A. (hereinafter "Plaintiff" or "TPSC"), on its own behalf and as assignee and statutory derivative beneficiary for K.D., by and through its attorneys, Maggs & McDermott, LLC, by way of Fourth Amended Complaint against defendants, hereby alleges as follows:

## I. PARTIES

1. TPSC is a professional association organized and existing under the laws of the State of New Jersey and maintains its principal place of business at 535 Sycamore Avenue, Shrewsbury, New Jersey 07702.

2. Cigna Health and Life Insurance Company ("Cigna"), upon information and belief, is a corporation of the Commonwealth of Pennsylvania with its principal place of business at Two Liberty Place, 1601 Chestnut Street, Philadelphia, Pennsylvania.

3. Sunrise Senior Living, LLC ("Sunrise"), upon information and belief, is a corporation of

1

the State of Virginia with its principal place of business at 7902 Westpark Drive, McLean, Virginia.

4. Sunrise Senior Living LLC Open Access Plus Medical Benefits Gold Plan is an employee welfare benefit plan sponsored by and administered by Sunrise and also administered by Cigna pursuant to an agreement with Sunrise.

## II.   JURISDICTION AND VENUE

5. TPSC's claims are brought pursuant to the Federal Employee Retirement Insurance Security Act of 1974 ("ERISA") and pursuant to New Jersey common law.

6. Subject matter jurisdiction exists under 28 U.S.C. § 1331 as this action involves a federal question under ERISA. Jurisdiction also exists under 28 U.S.C. § 1332 as complete diversity of citizenship exists between TPSC and all Defendants and the amount in controversy exceeds $75,000.00, not including interest and costs of suit. The Court has supplemental jurisdiction over TPSC's state law claims under 28 U.S.C. § 1367.

7. Pursuant to 28 U.S.C. § 1391(d) venue is proper in this District because all Defendants conduct a substantial of amount of business in the District which subjects them to personal jurisdiction in the District. Pursuant to 28 U.S.C. § 1391(b), venue in this District is also proper because a substantial part of the events or omissions giving rise to the Plaintiff's claims against Defendants occurred in this District.

## III.   FACTUAL ALLEGATIONS

### A. The Plan

8. TPSC is a licensed medical practice specializing in plastic and reconstructive surgery and provides surgical and other medical services to patients.

2

9. K.D. is the designation of a patient to whom TPSC provided medical services on July 23, 2015 ("Date of Medical Services"). At all times relevant herein, K.D. was an employee of Sunrise and a participant or beneficiary of the Plan.

10. The Plan provides coverage to members for medical care rendered by in network and out of network healthcare providers. (Plan at page 11).

11. The Plan provides for greater reimbursement to physicians, hospitals, and other healthcare providers that are "Participating Providers," that is, in the Plan. (Plan at page 7).

12. The Plan reimburses members 80% of the in-network charge and 50% of the "Maximum Reimbursable Charge" which the Plan defines as:

> Maximum Reimbursable Charge is determined based on the lesser of the provider's normal charge for a similar service or supply; or A percentage of a schedule that we have developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market. In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of: the provider's normal charge for a similar service or supply; or the 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by the Insurance Company. Note: The provider may bill you for the difference between the provider's normal charge and the Maximum Reimbursable Charge, in addition to applicable deductibles, copayments and coinsurance.

(Plan at page 13). The Plan refers to an Out-of-Network benefit of 150% but there is no reference therein as to 150% of what amount.

13. The Plan provides reimbursement for "Covered Expenses" which "means the expenses incurred by…a person for the charges listed below… Expenses incurred for such charges are considered Covered Expenses to the extent that the services or supplies provided are

recommended by a physician and are Medically Necessary for the care and treatment of an Injury or a Sickness." (Plan at page 26).

14. Included in the Plan as a "Covered Expense" is "Breast Reconstruction and Breast Prosthesis "which the Plan defines as:

> charges made for reconstructive surgery following a mastectomy; benefits include: surgical services for reconstruction of the breast on which surgery was performed; surgical services for reconstruction of the non-diseased breast to produce symmetrical appearance; postoperative breast prostheses; and mastectomy bras and external prosthetics, limited to the lowest cost alternative available that meets external prosthetic placement needs. During all stages of mastectomy, treatment of physical of physical complications, including lymphedema therapy, are covered.

15. The Plan contains a section entitled "Exclusions and Expenses Not Covered." (Plan at page 33). Included in this section are medical services "in connection with experimental, investigational, or unproven services." (Plan at page 34).

16. The Plan provides for pre-admission certification to certify Medical Necessity for in patient hospital services. (Plan at page 25).

17. Sunrise is the "Plan Sponsor" and the "Plan Administrator" of the Plan, as those terms are defined by ERISA. Sunrise is also a "fiduciary" with respect to the Plan as that term is defined by ERISA.

## B. Contractual Relationships

18. Cigna administers employee benefit welfare plans and processes, reviews, administers, and pays insurance and health care claims.

19. In processing, reviewing, administering, and paying insurance and health care claims,

4

Cigna determines and pays amounts that it decides are due on the claims.

20. In administering employee benefit welfare plans, Cigna enters into contracts with medical providers and networks of medical providers that provide medical services to plan participants at reduced rates.

21. Multiplan, Inc. ("Multiplan") maintains a network of medical providers ("the Multiplan Network") that upon joining the Multiplan Network agree to treat patients referred by insurers, plan administrators, and others (collectively "Payers") at rates negotiated and agreed to by the medical providers and Multiplan.

22. Multiplan enters into agreements with Payers that agree to pay for medical services provided to plan members and beneficiaries at rates agreed to by Multiplan and the medical providers.

23. TPSC contracted with Multiplan to become a member of the Multiplan Network ("the TPSC/Multiplan Contract") and was a member of Multiplan's Network on the Date of Medical Services.

24. Under the TPSC/Multiplan Contract, Multiplan agreed to allow plan members and beneficiaries to access medical services provided by TPSC on the condition that the Payers agreed to pay TPSC 85% of its billed charges, less any applicable co-payments, deductibles, and co-insurance.

25. The Plan designates Cigna as the claim administrator for health benefits claims submitted to the Plan.

26. Cigna also served as the *de facto* Plan Administrator by virtue of Sunrise's complete

5

delegation of the Plan Administrator's duties to Cigna.

27. The Plan delegated to Cigna "the discretionary authority to interpret and apply plan terms and to make factual determinations in connection with its review of claims under the [P]lan."

28. As part of its administrative duties with respect to the Plan, Cigna contracted with Multiplan to utilize the Multiplan Network for the benefit of members, participants, beneficiaries, or insureds under policies issued or benefits plans administered by Cigna ("the Cigna/Multiplan Contract"), including the Plan.

29. When Cigna entered into the Cigna/Multiplan Contract, Cigna agreed with Multiplan to reimburse healthcare providers in Multiplan's Network, including TPSC, according to the terms negotiated by Multiplan and the healthcare providers including TPSC, in the Multiplan Network.

30. By entering into the Cigna/Multiplan Contract, Cigna agreed to reimburse TPSC for treatment provided to patients who used TPSC as one of the Multiplan Network medical providers at 85% of its billed charges, less any applicable co-payments, deductibles, and co-insurance.

31. By entering into the Cigna/Multiplan Contract, Cigna was granted access by Multiplan to TPSC's services for Plan participants through the Multiplan Network only if Cigna agreed to reimburse 85% of TPSC's billed charges for services rendered to a Plan participant.

32. Multiplan allowed Cigna to access TPSC's services through the Multiplan Network for the medical services provided to K.D.

C. **Medical Treatment To K.D. By TPSC**

33. As Plan Administrator of the Plan, Cigna issued K.D. an identification card with identification number U3873569701 indicating that Cigna participated in the Multiplan Network and that K.D. was authorized to be treated by members of the Multiplan Network, including TPSC.

34. TPSC reasonably relied upon the conduct of Multiplan and Cigna including but not limited to the placement by Cigna of the Multiplan logo on K.D.'s identification card when deciding whether to provide her with medical services.

35. Pursuant to the TPSC/Multiplan Contract, the Cigna/Multiplan Contract and, the conduct of Cigna and Multiplan, TPSC, in its capacity as a member of the Multiplan Network, agreed to provide medical services to K.D. in return for payment by Cigna of those services at 85% of its billed services.

36. As a result of a breast cancer diagnosis and bilateral mastectomy, K.D., on the date of Medical Services, underwent staged bilateral breast reconstruction which included bilateral pectoralis elevation, bilateral serratus anterior flap, bilateral placement of tissue expanders and Allomax, complex closure and spy angiography followed by scar revision, removal of tissue expanders, full capsulotomy, placement of implants and complex closure at Monmouth Medical Center in Long Branch, New Jersey ("K.D. Medical Services").

37. All of the K.D. Medical Services were reasonable and medically necessary not experimental, investigational or unproven and were authorized and consistent with provisions of the Women's Health and Cancer Rights Act of 1998 which requires reimbursement by Sunrise and Cigna for reconstructive surgery of K.D.'s breasts that was removed by mastectomy including the surgery that makes the breasts look symmetrical or

balanced after a mastectomy.

38. TPSC billed charges for the K.D. Medical Services in the amount of $184,962 and filed a claim with Cigna for reimbursement.

### D. Determination By Cigna On Behalf of Sunrise

39. Pursuant to the Plan, Cigna, on behalf of Sunrise, paid TPSC $1,975.04 for the K.D. Medical Services.

40. Cigna did not reimburse TPSC for the full amount of reimbursement sought or pursuant to the terms of the Plan referring to Maximum Reimbursable Charge and Out of Network benefits.

41. Relying on the Plan, NCCI Guidelines, and Cigna Reimbursement Policy R09, Cigna denied parts of the claims and reduced the amount of reimbursement on the following bases:

- the medical services provided were not medically necessary and were not Covered Expenses;
- the medical services were integral to a primary procedure and not separately reimbursable;
- the medical services were experimental, investigational or unproven services; and
- the medical services are subject to reduction because of a failure to comply with pre-certification requirements.

42. Each of the reasons set forth by Cigna for denying reimbursement or reducing

reimbursement is not supported factually or legally.

43. K.D. assigned to TPSC all of K.D.'s legal and equitable rights and claims relating to and arising out of TPSC's performance of the K.D. Medical Services, including all rights under the Plan.

44. Pursuant to the Plan, Sunrise and Cigna are obligated to pay TPSC more than the $1,975.04 that the Plan paid pursuant to the out-of-network benefits of the Plan.

45. TPSC appealed, in writing, Cigna's decision on behalf of Sunrise regarding payment for the K.D. Medical Services. Those appeals were denied, and TPSC exhausted the administrative remedies provided to K.D.

46. Pursuant to the TPSC/Multiplan Contract, the Cigna/Multiplan Contract, the conduct of Multiplan and Cigna, TPSC is entitled to be paid eighty-five percent (85%) of its billed charges, that is, $157,217.70 by Cigna.

47. Based on the conduct of Cigna and Multiplan, Cigna is obligated to pay TPSC $157,217.70 for the K.D. Medical Services.

48. Cigna is operating under a conflict of interest with respect to the Plan. By way of example and not limitation, there is competition among various companies, including Cigna, to provide administrative services to the sponsors of employee welfare benefit plans, like the Plan. Simply put, the fewer dollars Cigna determines to be payable under the Plan, the more likely it is that Cigna will remain an administrator of the Plan because the Plan is self-insured, according to Cigna.

## COUNT ONE

**(ERISA Claim For Benefits, 29 U.S.C. § 1132(a)(1)(B) Against Cigna, Sunrise, and the Plan)**

49. TPSC repeats the foregoing paragraphs as if the same were set forth at length herein.

50. This claim is for plan enforcement under 29 U.S.C. § 1132(a)(1)(B) of ERISA.

51. Under 29 U.S.C. § 1132(a)(1)(B), TPSC is entitled to recover benefits due under the Plan and to enforce its rights under the Plan.

52. The Plan required a greater payment to TPSC for performing the K.D. Medical Services than the $1,975.04 Cigna determined was owed under the Plan pursuant to out-of-network benefits available under the Plan.

53. Cigna's decision to reimburse TPSC only $1,975.04 and not a higher amount was affected by its conflict of interest described above and its decision is not entitled to any deference.

54. TPSC is entitled to recover benefits due under the Plan.

55. TPSC, therefore, seeks reimbursement and compensation for any and all benefits it should have received under the Plan.

56. As a result of the aforesaid conduct of Cigna and Sunrise, TPSC has been damaged in an amount equal to the amount of the benefits which the Plaintiff should have received under the terms of the Plan. In addition, TPSC is entitled to pre-judgment interest at the appropriate rate plus attorney's fees and costs as provided in 29 U.S.C. § 1132(g)(1).

**WHEREFORE**, TPSC respectfully demands judgment against Cigna, Sunrise, and the Plan for benefits due under the Plan and ordering Cigna and Sunrise to pay benefits under the Plan together with prejudgment interest, attorney's fees, costs of suit, and all other appropriate relief this Court deems just and proper.

## COUNT TWO

**(Breach of Contract Against Cigna)**

57. TPSC repeats the foregoing paragraphs as if the same were set forth at length herein.

58. Based on the TPSC/Multiplan Contract and the Cigna/Multiplan Contract, TPSC is entitled to be paid by Cigna 85% of its billed charges for the K.D. Medical Services, that is, $157,217.20.

59. Through payment of $1,975.04 for the K.D. Medical Services, Cigna breached its contractual obligation to pay TPSC $157,217.20.

60. Based on Cigna's breach of the contract, TPSC has suffered damages.

**WHEREFORE**, TPSC respectfully demands judgment against Cigna for compensatory damages in the amount of $155,242.66, plus pre-judgment interest, attorney's fees, and costs of suit together with all other appropriate relief this Court deems just and proper.

### JURY DEMAND

TPSC hereby demands a trial by jury for all issues so triable.

By:  *s/ James A. Maggs, Esq.*

**James A. Maggs, Esq. - 039841991**
MAGGS & McDERMOTT, LLC
Allaire Corporate Center
3349 Highway 138
Building C, Suite D
Wall, NJ   07719
(732) 223-9870
*Attorneys for Plaintiff*

Dated: May 14, 2019

### Certification Pursuant to L. Civ. R. 11.2

I certify under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the matter in controversy is not the subject of any other action pending in any court or pending arbitration proceeding or administrative proceeding.

*s/ James A. Maggs, Esq.*
James A. Maggs, Esq.

Dated: May 14, 2019