*NOT FOR PUBLICATON*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| THE PLASTIC SURGERY CENTER, P.A., <br><br> Plaintiff, <br><br> v. <br><br> CIGNA HEALTH AND LIFE INSURANCE COMPANY, et al., <br><br> Defendants. | Civil Action No. 3:17-cv-2055-FLW-DEA <br><br> **OPINION** |

<u>**WOLFSON, Chief Judge:**</u>

Plaintiff Plastic Surgery Center, P.A., sues Defendants Cigna Health and Life Insurance Company ("Cigna"), Sunrise Senior Living, LLC ("Sunrise"), and Access Plus Medical Benefits Gold Plan ("the Plan") (collectively, "Defendants") under the Employee Retirement Income Security Act of 1974 ("ERISA"), *see* 29 U.S.C. § 1001, *et. seq.*, for underpaying on an out-of-network double mastectomy and bilateral breast reconstruction surgery. Defendants move for summary judgment on the grounds that Plaintiff has not shown ambiguity in the applicable insurance plan or an abuse of discretion under it. Plaintiff cross-moves for summary judgment, arguing that Plan terms require full reimbursement.[1] For following reasons, Defendants' Motion is **GRANTED** in part and **DENIED** in part, and Plaintiff's Motion is **DENIED** in full.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

---

[1] Managed care organizations such as Cigna have a strong incentive to reduce unexpected charges from out-of-network providers. These organizations, in turn, severely restrict or discourage patients from obtaining out-of-network care. Yet, in-network providers sometimes are not able to meet a patient's healthcare needs, as is apparent in this case. When reimbursement rates are nevertheless effectively zero, the healthcare system sacrifices both choice and cost, with patients ultimately footing the bill.

Plaintiff is a medical provider in New Jersey specializing in complex plastic surgery. On July 23, 2015, it performed a double mastectomy and bilateral breast reconstruction on K.D., a cancer patient. *See* Pl. Statement of Undisputed Material Facts ("Pl. SUMF"), ¶ 1; Def. Statement of Undisputed Material Facts ("Def. SUMF"), ¶ 2. Sunrise employed K.D. and insured her through its Plan, which established a certain level of coverage for out-of-network services. *See* Joint Appendix ("JA"), at 1, 11. Sunrise was the Plan Sponsor, *see* 29 U.S.C. 1002(16)(B), but delegated its decision-making authority to Cigna, who provided all claim administration. *See* JA, at 51. K.D. assigned her rights under the Plan to Plaintiff, including the right to receive payments pursuant to the Plan's benefits and to file any claims, appeals, or litigation.[2] *Id.* at 124; Def. SUMF, ¶ 9.

A. *K.D.'s Plan and Plaintiff's Bills*

Plaintiff billed Cigna over $180,000 for K.D.'s surgery. Specifically, Plaintiff billed $107,566 for Dr. Andrew I. Elkwood's services ("Claim 4015"), *see* JA, at 92, and $77,396 for Dr. Russel L. Ashinoff's services ("Claim 4009").[3] *See* JA, at 94. K.D.'s surgery involved a "bilateral pectoralis elevation; bilateral serratus anterior flap; bilateral placement of tissue expander for reconstruction; bilateral placement of Allomax, 12 cm x 15 cm, on each side; bilateral complex closure, 30 cm on each side; and a bilateral spy angiography." *Id.* at 113-15. Because providers must disaggregate their services into discrete procedures and bill them under codes designed by the insurance industry, Plaintiff's bill to Cigna took the following form:

---

2      Although not apparently at issue here, as assignee of K.D.'s rights, Plaintiff is charged with knowledge of the Plan's terms. *See, e.g., Neuma, Inc. v. E.I. Dupont de Nemours & Co.*, 133 F. Supp. 2d 1082, 1088-89 (N.D. Ill. 2001); *IHC Health Servs. v. Wal-Mart Stores, Inc.*, No. 15-846, 2016 WL 3817682, at *7 (D. Utah July 12, 2016) ("As an assignee, IHC cannot avoid the terms of the [ERISA] Plan, regardless of whether IHC had notice of those terms."); *Riverside Chiropractic Grp. v. Mercury Ins. Co.*, 404 N.J. Super. 228, 237 (App. Div. 2008).

3      Plaintiff did not appeal Dr. Ashinoff's bill to Cigna. *See* JA, at 104; Def. SUMF, ¶ 23. For that reason, *see infra*, I do not consider his charges any further in this case.

| Code for Procedure | Dr. Elkwood's bill |
|---|---|
| 19357 (RT)<br>- Right breast reconstruction | $19,350 |
| 19357 (LT)<br>- Left breast reconstruction | $19,350 |
| 15734 (RT)<br>- Muscle "flap" procedure | $19,350 |
| 15734 (LT)<br>- Muscle "flap" procedure | $19,350 |
| 15777 (RT)<br>- Implant/soft-tissue reinforcement | $10,864 |
| 15777 (LT)<br>- Implant/soft-tissue reinforcement | $10,864 |
| 15860<br>- Other repair re: integumentary system | $3,278 |
| 17999<br>- Angiography | $5,610 |
| **Total** | **$107,566** |

*See* JA, at 91-94.

K.D.'s Plan reimburses healthcare providers at different rates depending on whether they are in-network or out-of-network: 80% for in-network services and 50% of the "Maximum Reimbursable Charge" for out-of-network services, less the patient's deductible, coinsurance, and any applicable reductions. *See* JA, at 7, 12, 16; Def. SUMF, ¶ 4. The Plan defines the "Maximum Reimbursable Charge" as follows:

> Maximum Reimbursable Charge is determined based on the lesser of the provider's normal charge for a similar service or supply; or
>
> A percentage of a schedule that we have developed that is based upon a methodology similar to a methodology utilized by Medicare to determine the allowable fee for similar services within the geographic market. In some cases, a Medicare based schedule will not be used and the Maximum Reimbursable Charge for covered services is determined based on the lesser of:
>
> - the provider's normal charge for a similar service or supply; or

- the 80th percentile of charges made by providers of such service or supply in the geographic area where it is received as compiled in a database selected by the Insurance Company.

*See* JA, at 13. The Plan sets the "percentage of a schedule" at "150%." *Id.* This means that Cigna will calculate the "Maximum Reimbursable Charge" in a case involving out-of-network services by taking whatever is less between a provider's normal charges and 150% of a schedule similar to Medicare's, or, in "some cases," whatever is less between the provider's normal charges and the 80th percentile of charges for such services in the area. Regardless of the methodology it uses to calculate the "Maximum Reimbursable Charge," Cigna will pay out 50%.

An example is helpful at this point. Assume a provider's normal charge for a service is $50, the 80th percentile of charges in the provider's area is $75, a rate similar to the Medicare rate is $25, 150% of the Medicare-based rate is $37.50, the patient's deductible is $5.00, and there are no applicable reductions. Between the provider's normal charge ($50) and 150% of the Medicare-based rate ($37.50), Cigna will select the Medicare-based rate because it is less. Then Cigna will halve it ($18.75), subtract $5.00, and reimburse the provider $11.75. Assume instead that Cigna "will not use" the Medicare-based rate. Cigna would then select the provider's normal charge ($50) because it is less than the 80th percentile of similar charges in the area ($75), halve it ($25), subtract $5.00, and reimburse the provider $20.00.

Finally, the Plan provides the Plan Administrator with the discretionary authority to:

interpret and apply plan terms and to make factual determinations in connection with its review of claims under the plan. Such discretionary authority is intended to include, but not limited to, the determination of the eligibility of persons desiring to enroll in or claim benefits under the plan, the determination of whether a person is entitled to benefits under the plan, and the computation of any and all benefit payments. The Plan Administrator also delegates to Cigna the discretionary authority to perform a full and fair review, as required by ERISA, of each claim denial which has been appealed by the claimant or his duly authorized representative.

*See* JA, at 51; Def. SUMF, ¶ 8.

   B. *Cigna's Determinations on Plaintiff's Bill*

   Cigna responded to Plaintiff's bill as follows:

| Code for Procedure | Outcome | Cigna's Reason |
|---|---|---|
| 19357 (RT)<br>-   Right breast reconstruction | Paid $711.62 | "Maximum Reimbursable Charge" provision |
| 19357 (LT)<br>-   Left breast reconstruction | Reduced by 1/2 to $623.70 | "Multiple Surgical Reduction" provision |
| 15734 (RT)<br>-   Muscle "flap" procedure | Denied in full | Included in Code 19357 |
| 15734 (LT)<br>-   Muscle "flap" procedure | Denied in full | Included in Code 19357 |
| 15777 (RT)<br>-   Implant/soft-tissue reinforcement | Paid $175.41 | "Maximum Reimbursable Charge" provision |
| 15777 (LT)<br>-   Implant/soft-tissue reinforcement | Paid $175.41 | "Maximum Reimbursable Charge" provision |
| 15860<br>-   Other repair re: integumentary system | Reduced by 1/2 to $45.50 | "Multiple Surgical Reduction" provision |
| 17999<br>-   Angiography | Reduced to $0 | Not pre-approved |
| **Total** | **$1,731.64** | |

*See* JA, at 12-13, 16,101, 108-109.

   As detailed *supra*, Cigna denied Code 15734, which refers to a muscle "flap," because a provider may not bill for that procedure in conjunction with a breast reconstruction, to the extent that a reconstruction by definition includes a flap. *See* JA, at 63-65, 101-02; Def. SUMF, ¶ 15. In denying this Code, Cigna relied on its "Reimbursement Policy R09," as informed by the National Correct Coding Initiative ("NCCI"), a Medicare initiative. Cigna reduced Code 17999, which refers to an angiography—also known as a blood flow test—to $0 for failure to comply with the Plan's preapproval provision. *See* JA, at 168; Def. SUMF, ¶ 17. According to Cigna, although

K.D. received preapproval for Codes 19357, 15777, and 15734,[4] she did not request or receive it for Code 17999, even though the Plan requires it for in-patient hospital services regardless of whether they are medically necessary. *See* JA, at 25-26. Finally, after determining the Maximum Reimbursable Charge to be 150% of the Medicare rate exactly, Cigna reduced Code 19357 (LT), which refers to a left breast reconstruction, Code 15777, which refers to an implant, and Code 15860, which refers to an integumentary system repair, by half under the Plan's "Multiple Surgical Reduction" provision, which provides that "[m]ultiple surgeries performed during one operating session result in payment reduction of 50% to the surgery of lesser charge." *See* JA, at 12, 101; Def. SUMF, ¶ 18. Cigna then applied K.D.'s deductible, $1,071.56, to the amount covered by the Plan, $4,534.83, and paid Plaintiff half of the difference per the out-of-network rate: $1,731.64, or 1% of Plaintiff's bill. *See* JA, at 99-101; Def. SUMF, at ¶¶ 19-21.

Plaintiff appealed Cigna's determinations on February 23, 2016, specifically challenging its denial of Code 15734, the flap. *See* Def. SUMF, ¶ 30; JA, at 104-15. Cigna denied the appeal on March 31, 2016, stating that "[t]he denied service(s) do not warrant separate reimbursement given that [a flap] is considered inclusive to the primary procedure performed," *i.e.*, the reconstruction. Def. SUMF, ¶ 16; JA, at 72-73. Cigna also rejected Plaintiff's modifier, which a provider may submit to show that it is entitled to an exception from ordinary reimbursement rules, because Plaintiff did not offer "documentation to support a different session, different procedure or surgery, different site or organ system, separate incision/excision, separate lesion, or separate injury . . . not ordinarily encountered or performed on the same day by the same individual." *See*

---

4       The preapproval letter stated: "When we receive your medical claims, we'll need to make sure your health care professional performed only services we approved. If extra services were performed that weren't medically necessary or covered by your plan, we won't be able to pay for them." *See* JA, at 168; Def. SUMF, ¶ 11. The letter also stated: "This . . . isn't a guarantee that your plan will pay for the services." *Id.* Importantly, the letter did not discuss or approve any specific fees, billing practices, or reimbursement rates.

JA, at 65. To the contrary, Plaintiff offered only its surgery report, which showed that it performed the flap at the same time as, on the same anatomical site as, and during the course of the same reconstruction. *See id.* at 113-15; Def. SUMF, ¶ 16. To deny this modifier, Cigna again relied on its "Reimbursement Policy R09" and NCCI Guidance. *See* JA, at 65. Plaintiff requested external review from an Independent Review Organization ("IRO") on April 14, 2016. *See* Def. SUMF, ¶ 32; JA, at 116-44. The IRO declined review on May 12, 2016, stating that the appeal did not involve medical judgment or coverage rescission. *See* Def. SUMF, ¶ 34; JA, at 47.

### C. The Present Litigation

Plaintiff sued Defendants in Monmouth County, New Jersey, Law Division, on February 6, 2017. Defendants removed to federal court on March 29, 2019. Three years later, now on the Fourth Amended Complaint, and after various motions, Plaintiff asserts a single claim under ERISA for full reimbursement. *See* ECF No. 109. Before the Court are summary judgment motions from both parties disputing three issues: (1) whether the "Maximum Reimbursable Charge" provision is ambiguous as to its "methodology" and "schedule," which Cigna claims is 50% of 150% of the Medicare rate; (2) whether Cigna abused its discretion under the Plan to deny Codes 15734 and 17999, and reduce Codes 19357 (LT), 15777, 15860 by half; and (3) whether Claim 4009 is reviewable, since Plaintiff failed to exhaust administrative remedies.

## II. LEGAL STANDARD

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any, . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quotations omitted); Fed. R. Civ. P. 56(a). An issue is "genuine" when "a reasonable jury could return a verdict for the non-

moving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A fact is "material" when it "might affect the outcome of the suit under the governing law." *Id.* The court construes all facts in the light most favorable to the nonmoving party, *see Boyle v. Cty. of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir. 1998), whose evidence "is to be believed," and makes "all justifiable inferences . . . in [its] favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004); *see also Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

The moving party "always bears the initial responsibility of informing the district court of the basis for its motion." *Celotex*, 477 U.S. at 323. That party may discharge its burden by "showing — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof," as here. *Singletary v. Pa. Dep't of Corr.*, 266 F.3d 186, 192 n.2 (3d Cir. 2001) (quotations and citations omitted). The nonmoving party must then identify, by affidavits or otherwise, specific facts showing that there is a triable issue. *Celotex*, 477 U.S. at 324. To do so, the nonmoving party "may not rest upon the mere allegations or denials of the . . . pleading[s]." *Saldana v. Kmart Corp.*, 260 F.3d 228, 232 (3d Cir. 2001) (quotations omitted). Instead, "[it] must make a showing sufficient to establish the existence of [every] element essential to [its] case, and on which [it] will bear the burden of proof at trial." *Cooper v. Sniezek*, 418 Fed. App'x. 56, 58 (3d Cir. 2011) (quotations and citations omitted). "While the evidence that the non-moving party presents may be either direct or circumstantial, and need not be as great as a preponderance, [it] must be more than a scintilla," *Hugh v. Butler Cnty. Family YMCA*, 418 F.3d 265, 267 (3d Cir. 2005), and conclusory declarations, even if made in sworn statements, will not suffice. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

## III.    DISCUSSION

K.D.'s Plan is governed by ERISA, *see* 29 U.S.C. § 1001, *et seq*., a federal tax and labor law that establishes "uniform federal standards for not only pension plans, but also welfare plans." *Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 225 (3d Cir. 2020). This case involves 29 U.S.C. § 502(a)(1)(B), which creates a civil cause of action for a plan participant "to recover benefits due to [her] under the terms of [her] plan, to enforce [her] rights under the terms of the plan, or to clarify [her] rights to future benefits under the terms of the plan." *Id.* Because ERISA does not permit providers to sue insurers directly, a valid assignment allows the provider to stand in the shoes of the participant, and obtain not only the right to benefits under the plan, but the capacity to bring suit for non-payment. *See N. Jersey Brain & Spine Ctr. v. Aetna, Inc.*, 801 F.3d 369, 372-73 (3d Cir. 2015). Until recently, this was the "almost universal" way for out-of-network providers to recoup compensation for services. *See Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 451-53 (3d Cir. 2018). "To assert a claim under [§ 502(a)(1)(B)], a plan participant [or assignee] must demonstrate that 'he or she . . . ha[s] a right to benefits that is legally enforceable against the plan,' and that the plan administrator improperly denied those benefits." *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (quoting *Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 574 (3d Cir. 2006)). To this end, Plaintiff argues that the "Maximum Reimbursable Charge" provision in K.D.'s Plan is ambiguous/arbitrary, Cigna abused its discretion under the Plan by denying or reducing various Codes, and it is entitled to full payment.

## A. The "Maximum Reimbursable Charge" Provision

Plaintiff argues that the "Maximum Reimbursable Charge" provision is ambiguous/arbitrary because Cigna "adopted a secret, seemingly standardless methodology for determining [it]" and "compounded this improper conduct by not even disclosing . . . the method"

or "percentage of a schedule." *See* Pl. Mov. Br., at 12. Alternatively, Plaintiff argues that the provision is ambiguous /arbitrary because it "does not mandate that the Medicare rate will be used," but instead permits a "similar" rate "in some cases," which is "vague" and "equivocal." *See* Pl. Opp. Br., at 4. Because "the provider's normal charge" is the only obvious rate mentioned in the provision, it is "the rate at which [Plaintiff] should be reimbursed." *Id.* at 5. Cigna responds that there is nothing ambiguous about the "Maximum Reimbursable Charge" provision, which means "50% of 150% of Medicare."

Whether a plan term is ambiguous is "subject to [my] *de novo* review." *Dowling v. Pension Plan for Salaried Emps. of Union Pac. Corp. & Affiliates*, 871 F.3d 239, 245-46 (3d Cir. 2017) (quoting *Taylor v. Cont'l Grp. Change in Control Severance Pay Plan*, 933 F.2d 1227, 1233 (3d Cir. 1991)). Ambiguity means "reasonable alternative interpretations." *Id.*; *see also Fleisher*, 679 F.3d at 121. "'ERISA plans, like contracts, are to be construed as a whole.'" *Kremmerer v. ICI Americas, Inc.*, 70 F.3d 281, 288 (3d Cir. 1995) (quoting *Alexander v. Primerica Holdings, Inc.*, 967 F.2d 90, 93 (3d Cir. 1992)). Federal courts have developed federal common law for this purpose, *see Firestone*, 489 U.S. at 110, but may also look to analogous state law rules that are consistent with ERISA's underlying policies.[5] *See Heasley v. Belden & Blake Corp.*, 2 F.3d 1249, 1257 & n.8 (3d Cir. 1993).

---

5     Analogous state law rules for insurance contracts are essentially the same as federal common law on ERISA. *See, e.g., Am. Motorists Ins. Co. v. L-C-A Sales Co.*, 155 N.J. 29, 41 (1998) (holding that clear policy language should generally be "interpreted according to its plain and ordinary meaning"); *Onderdonk v. Presbyterian Homes of New Jersey*, 85 N.J. 171, 184 (1981) (holding that the cardinal rule of interpretation is to give effect to "the intention of the parties to the contract as revealed by the language used, taken as an entirety"). Federal and state courts alike have also adopted *contra proferentem*, under which principle courts choose the interpretation most favorable to the insured if a provision is fairly susceptible to two interpretations. *Compare Heasley*, 2 F.3d at 1258, *with Sealed Air Corp. v. Royal Indem. Co.*, 404 N.J. Super. 363, 375 (App. Div. 2008).

If a plan term is unambiguous, then it must be ascribed its plain meaning. *See Bill Gray Enters., Inc. Emp. Health & Welfare Plan v. Gourley*, 248 F.3d 206, 220 n.12 (3d Cir. 2001); *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 437 (3d Cir. 1997) (stating that an interpretation "will not be dismissed if reasonable"). If a plan term is ambiguous, but the plan vests the administrator with the authority to "construe" it, *Gritzer v. CBS, Inc.*, 275 F.3d 291, 295 (3d Cir. 2002), make eligibility or benefits determinations, *McLeod v. Hartford Life & Accident Ins. Co.*, 372 F.3d 618, 623 (3d Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)), or act as fact finder, *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 847 (3d Cir.2011), as here,[6] then I must review the administrator's interpretation under an "the arbitrary and capricious standard."[7] *Fleisher*, 679 F.3d at 121; *Bill Gray Enters.*, 248 F.3d at 218; *Adair v. Abbott Severance Pay Plan for Emps. of Kos Pharms.*, 781 F. Supp. 2d 238, 244 (D.N.J. 2011).

An administrator's interpretation is arbitrary and capricious if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Doroshow v. Hartford Life and Accident Ins. Co.*, 574 F.3d 230, 234 (3d Cir. 2009); *Abnathya v. Hoffman- La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Soubik v. Dir., Office of Workers' Comp.*

---

6 There is no dispute that the Plan vests Cigna with the authority to interpret Plan terms. See JA, at 13, 51; Def. SUMF, ¶ 8. At an earlier stage of litigation, Plaintiff contended that Cigna's interpretations are not entitled a deferential standard of review, notwithstanding the Plan's terms, because Cigna has a structural or procedural conflict of interest. *See* ECF No. 95. However, in the context of denying Plaintiff's request for discovery beyond the administrative record, I determined that not to be the case. See ECF No. 110, at 4-5 ("[T]he simple fact that Cigna has been retained to provide services to the sponsor of the Plan is not by itself enough."). Even if a conflict existed, the standard of review would remain unchanged because a conflict is just one of many factors in the abuse of discretion inquiry. *See, e.g.*, *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 847 (3d Cir. 2011) ("In a situation where 'a benefit plan gives discretion to an administrator or fiduciary who is operating under a conflict of interest, that conflict must be weighed as a factor[] in determining whether there is an abuse of discretion.'") (citing *Firestone*, 489 U.S. at 115).

7 "In the ERISA context, the arbitrary and capricious and abuse of discretion standards of review are essentially identical." *Miller*, 632 F.3d at 845 n.2 (citing *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 n.6 (3d Cir. 2010)). Accordingly, I use them interchangeably.

*Programs*, 366 F.3d 226, 233 (3d Cir. 2004). Hence, in all, "[w]hen a plan's language is ambiguous and the administrator is authorized to interpret it, courts 'must defer to this interpretation unless'" no reasonable mind could do so. *Fleisher*, 679 F.3d at 121 (quoting *McElroy v. SmithKline Beecham Health & Welfare Benefits Trust Plan*, 340 F.3d 139, 143 (3d Cir. 2003)).

The "Maximum Reimbursable Charge" provision in this case is far from "plain English." *Cf.* Def. Opp. Br., at 6. Even so, its relevant portions are not ambiguous.[8] The Plan clearly pays out-of-network services 50% of the Maximum Reimbursable Charge, *see* JA, at 12-13, which dooms Plaintiff's claim that it is entitled to the full amount billed. At most, it is entitled to half, less deductibles. *See Saltzman v. Indep. Blue Cross*, 384 Fed. App'x. 107, 111 (3d Cir. 2010) (stating that a plan participant may only recover benefits actually owed under the plan); *Atl. Spinal Care v. Aetna*, No. 12-6759, 2014 WL 1293246, at *9 (D.N.J. Mar. 31, 2014) ("[A] provider is not entitled to payment in any amount it chooses to bill . . . . The plain language of the plan makes clear that services are paid differently when rendered by out-of-network providers versus in-network providers."). The Plan further states that the "percentage of a schedule" for out-of-network services is "150%." *See* JA, at 13; *id.* at 56 ("The percentage used to determine the 'Maximum Reimbursable Charge' is listed in The Schedule."). As such, Plaintiff cannot reasonably claim that Cigna did not "disclose" the percentage. *Cf.* Pl. Opp. Br., at 12.

The relationship between the "Maximum Reimbursable Charge" provision and the Medicare rate is also unambiguous, but not in the way Cigna posits. Cigna reads the provision to mean, "on its face," that "[t]he Plan's payment to an out-of-network provider will be half of 150%

---

[8] Plaintiff's only real case for ambiguity is that the Plan does not state when—besides merely "in some cases"—Cigna may disregard its "Medicare based schedule" and instead take the lesser of the provider's normal charges or the 80th percentile of charges for such services in the area. Although I remand to the Plan administrator to recalculate benefits on different grounds, *see infra*, Cigna should also consider this aspect of the provision.

of Medicare" exactly. *See* Def. Mov. Br., at 17. That contradicts plain Plan language dictating that, where Cigna declines to determine the "Maximum Reimbursable Charge" by the provider's normal charge or the 80th percentile of charges for similar services in the area, as here, then it must do so using a schedule it "developed" "based on" a methodology "similar to" the methodology Medicare uses—not simply by taking whatever amount Medicare would pay. *Cf. Goldstein v. Aetna Life Ins. Co.*, No. 19-2188, 2021 WL 1115915, at *2, *4 (D. Del. Mar. 24, 2021) (finding a "Recognized Charge" provision unambiguous when defined as "[a]n amount determined by Aetna, or its third-party vendors, based on data resources selected by Aetna, reflecting typical competitive charges and/or payments for a service, adjusted for the geographic area in which the service was provided"). For whatever reason, Cigna does not explain its methodology (if in fact it developed one) or provide its fee schedule (if in fact it produced one). Nor, based on the record, does Cigna derive a "Medicare based" methodology as instructed by the Plan, instead simply adopting Medicare's allowable amount.

Cigna reasons that "[a] methodology that is identical to Medicare's [may] necessarily [be] one that is similar to [it]." *See* Def. Mov. Br., at 17. The problem is, this presupposes that Cigna *has* a methodology, and assumes, without demonstrating it is so, that its methodology produces a fee schedule mirroring the one Medicare uses. Perhaps Cigna means to suggest that it has formally adopted the Medicare rate under K.D.'s Plan. Yet, if so, Cigna does not point to any evidence of that policy or practice, or Plan language permitting it to do so. Cigna also claims that "[a] healthcare benefit plan may define the allowed amount for an [out-of-network] service in any number of ways, such as using a fee schedule or linking coverage to some percentage of Medicare rates." *Franco v. Conn. Gen. Life Ins. Co.*, 289 F.R.D. 121, 126 (D.N.J. 2013). That is certainly true, but the touchstone is still the plan's language—and here, K.D.'s Plan links the "percentage

of a schedule" (150%) to a "Medicare *based*" rate, which Cigna must develop using a methodology like Medicare's.

This is not a distinction without a difference or a point unmoored from a purpose. The absence of a discernable methodology/schedule raises the possibility that Cigna inconsistently applied or followed procedures to determine the allowable amount for Plaintiff's bill, which could countenance an arbitrary and capricious decision. Critically, moreover, if Cigna were able to adopt the Medicare rate itself, then Plan language requiring Cigna to develop its own methodology/schedule would be meaningless. *See, e.g.*, *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 439 (3d Cir. 1997) (rejecting a proposed interpretation of a policy that would render an entire section of the plan superfluous); *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 795 (3d Cir. 2010) (instructing courts to consider "whether [a party's interpretation] renders any language in the Plan meaningless or internally inconsistent"); *Cumberland Cnty. Improvement Auth. v. GSP Recycling Co., Inc.*, 358 N.J. Super. 484, 497 (App. Div. 2003) (instructing state courts to interpret contracts, including insurance policies, so as to avoid rendering any provision redundant or unnecessary). And, of course, had the drafters of the Plan intended the "Maximum Reimbursable Charge" provision to mean "150% of the Medicare rate," period, then they would have written it that way. *See, e.g.*, *Onderdonk v. Presbyterian Homes of New Jersey*, 85 N.J. 171, 184 (1981) (stating that the cardinal rule in contract interpretation is to give effect to "the intention of the parties to the contract as revealed by the language used"); *Werner Indus., Inc. v. First State Ins. Co.*, 112 N.J. 30, 35 (1988) ("The fundamental principle of insurance law is to fulfill the objectively reasonable expectations of the parties.").

For these reasons, I find that Cigna arbitrarily applied the "Maximum Reimbursable Charge" provision. *Accord Bergamatto v. Bd. of Trustees of the NYSA- ILA Pension Fund*, 933

F.3d 257, 264 (3d Cir. 2019) (holding that a court can "set aside" an interpretation if it is not "reasonably consistent with the plan's text"); *Brunswick Surgical Ctr., LLC, v. CIGNA Healthcare*, No. 09-5857, 2010 WL 3283541, at *4 (D.N.J. Aug. 18, 2010) (stating that a plan administrator "is compelled to give effect to the plan's plain meaning, and a failure to do so is necessarily an abuse of discretion"); *Pain & Surgery Ambulatory Ctr., P.C. v. Conn. Gen. Life Ins. Co.*, No. 11-5209, 2012 WL 3781516, at *4 (D.N.J. Aug. 30, 2012) ("If the terms are unambiguous, then any plan administrator action that is inconsistent with the plan's terms is arbitrary."). I **REMAND** to Cigna to recalculate any amounts paid under the Plan consistent with the terms and requirements of the "Maximum Reimbursable Charge" provision as written.[9] *See, e.g.*, *Syed v. Hercules Inc.*, 214 F.3d 155, 162 (3d Cir. 2000) (remanding "so the claimant gets the benefit of a full and fair review"); *Caldwell v. Life Ins. Co. of N. Am.*, 287 F.3d 1276, 1288 (10th Cir. 2002) ("The remedy when an ERISA administrator fails to make adequate findings or to explain adequately the grounds of her decision is to remand the case to the administrator."); *Gallo v. Amoco Corp.*, 102 F.3d 918, 923 (7th Cir. 1996) (same).

## B. *Cigna's Decision to Deny/Reduce Various Codes*

Regardless of whether Cigna applied the "Maximum Reimbursable Charge" provision arbitrarily, and must recalculate any amounts paid under the Plan, I must decide whether Cigna properly denied/reduced various Codes. The same standard of review applies.

### i. Code 15734

---

9     Remand is the appropriate remedy because Cigna must develop and use its methodology/schedule to determine the "Maximum Reimbursable Charge," in accordance with the terms of that provision. It is not only inappropriate for the Court to do that for Cigna, but I could not in any event because Cigna has not identified its methodology/schedule. *See, e.g.*, *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (stating that "the role of the court is to determine whether the administrator . . . made a correct decision"); *C.E. v. Excellus Blue Cross Blue Shield*, No. 14-6950, 2017 WL 593492, at *14 (D.N.J. Feb. 14, 2017) (remanding because a court should not "act as the plan administrator" for the parties).

Plaintiff devotes the bulk of its motion to Code 15734 (muscle flap). Plaintiff begins by arguing that Cigna should have paid Code 15734 because the American Medical Association's ("AMA") Correct Coding Sourcebook "sometimes" permits billing separately for a flap and a reconstruction—the implication being that Cigna should have followed the AMA rather than its own reimbursement policy, as informed by NCCI Guidelines. *See* Pl. Br., at 10. Plaintiff then cites its surgery report to argue that Cigna should have granted a modifier for the flap. *Id.* at 11. Plaintiff also argues that Cigna selectively classified Code 19357 (breast reconstruction) and Code 15860 (integumentary repair) as "separate and distinct" procedures under the "Multiple Surgical Reduction" provision, but classified Code 15734 as "inclusive" of Code 19357 under "Reimbursement Policy R09," solely to "pay the lowest amount" on each Code, which is "inherently contradictory." *See* Pl. Opp., at 5-6. Finally, Plaintiff argues that Cigna preapproved Code 15734 in conjunction with Code 19357 in a letter to K.D., but changed its mind after the fact. *Id.* at 9-10.

First, I am not persuaded that Cigna should have deviated from "Reimbursement Policy R09" to pay Code 15734, which Cigna stated in the Plan and referenced as the reason for denial in communications with Plaintiff. *See* JA, at 13, 65. Simply, Plan language bars that billing practice. *Id.* NCCI Guidelines also instruct providers not to report Code 15734 with Code 19357 because they are inclusive of each other, which "Policy R09" explicitly incorporates. The NCCI is a Center for Medicare & Medicaid Services ("CMS") initiative. As such, it is persuasive evidence of standard insurance industry practice. *Accord Krauss v. Oxford Health Plans, Inc.*, 418 F. Supp. 2d 416, 428 (S.D.N.Y. 2005) (concluding same), *aff'd*, 517 F.3d 614 (2d Cir. 2008). To the extent that Cigna enforced "Policy R09" on its literal terms, which billing practice reflects Guidelines promulgated by Medicare and common to all insurers, Cigna by definition did not act unreasonably

or arbitrarily. In any event, Plaintiff concedes that Code 15734 is not billed with Code 19357, *see* Pl. Mov. Br., at 9 ("CPT Code 15734 ordinarily is incident to CPT Code 19357.") (emphasis removed), and misrepresents the AMA Sourcebook, which establishes that "CPT 15734 is not inclusive to CPT 19357, *and is allowed with modifiers*,"[10] *id.* at 10 (emphasis added), a statement identical to "Policy 09" and NCCI Guidelines.

Relatedly, Plaintiff has not presented any evidence that Cigna abused its discretion by denying a modifier for Code 15734. Plaintiff submits its surgery report as evidence to the contrary. But the report, as written, falls well short of satisfying any relevant criteria for a modifier. Per "Reimbursement Policy R09" and "M59," and consistent with NCCI Guidelines, *see* Def. SUMF, at ¶¶ 14-15, Cigna requires "documentation to support a different session, different procedure or surgery, different site or organ system, separate incision/excision, separate lesion, or separate injury (or area of injury in extensive surgeries not ordinarily encountered or performed on the same day by the same individual)" to reimburse modified Code 15734. *Id.* at 13, 65. Plaintiff's report merely states that "during the surgery, the bilateral serratus anterior flaps were elevated (10-15 centimeters) laterally and their insertions were dissected off the anterior chest wall." Pl. Mov. Br., at 11. While that indicates Plaintiff performed a flap, it does not show that the flap was a "separate, distinct . . . procedure[]." *Id.* The report suggests the opposite: Plaintiff performed the flap at the same time as, on the same anatomical site as, and during the course of the same surgery as the reconstruction. *See* JA, at 113-15. Plaintiff's argument in this regard is devoid of merit.

---

10      While Plaintiff cited the Sourcebook in its internal appeal to Cigna, *see* JA, at 104, it attached just one page listing hundreds of codes without any explanation. *See id.* at 109. That is not sufficient to permit meaningful review, either then or now, and I do not consider the Sourcebook on the parties' motions beyond this context. *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997) (holding that a reviewing court must look only at the evidence that was before the administrator); *Emmett v. Hotel Emps. & Rest. Emps. Int'l Union Welfare-Pension Funds*, No. 06-4205, 2007 WL 3167115, at *6 (D.N.J. Oct. 25, 2007).

Third, I reject Plaintiff's contention that Cigna abused its discretion by treating Codes 19357 and 15734 as "composite" under "Reimbursement Policy R09," but classifying Codes 19357 (LT) and 15860 as separate under the "Multiple Surgical Reduction" provision. Medicare itself has adopted a 150% rate for bilateral procedures, such as K.D.'s breast reconstruction, meaning that the second procedure is reimbursed at 50% of the first, as here. *See* 59 Fed. Reg. p. 32767. At the same time, Medicare, through NCCI Guidelines, instructs providers not to report Code 15734 with Code 19357 unless there is a valid modifier. *See supra*. That is good reason to find that the Plan did not arbitrarily adopt both billing practices. And Plaintiff does not point to any evidence indicating that Cigna deviated from Plan language or industry norms by enforcing both provisions against Plaintiff in these circumstances.

Plaintiff finally argues that Cigna abused its discretion because it preauthorized Code 15734 in its approval letter to K.D., but changed its mind after the fact, a "revers[al] . . . without a factual basis." *See* Pl. Mov. Br., at 9-10. As discussed *supra*, K.D. requested—and received—preapproval for Codes 19357 and 15734, which Cigna now asserts cannot be billed together absent a modifier. But Plaintiff makes far too much of the standard form letter. By its terms, the letter approves only certain procedures, not specific fees, billing practices, or reimbursement rates. The letter also does not "guarantee that your plan will pay for the services," couches approval/eligibility strictly in the context of K.D.'s "health plan," and directs K.D. to "plan documents for details about your coverage." *See* JA, at 168. In these regards, the letter subjects both preapproval and reimbursement to Plan terms and limitations. The letter cannot then replace the terms of the Plan—which does not permit a provider to bill Codes 19357 and 15734 without a modifier, *see* JA, at 13, 65 (citing "Reimbursement Policy R09")—when Plaintiff later makes a quintessential ERISA claim for payment. Plaintiff's claim must be resolved according to Plan language and provisions,

not whatever the form letter happens to preapprove. As such, it was not arbitrary or capricious for Cigna to determine, after receiving Plaintiff's surgery report and other relevant records, that K.D.'s Plan does not cover Code 15734 as billed, notwithstanding the letter. *See, e.g.*, *Glastein v. Horizon Blue Cross Blue Shield of Am.*, No. 17-7983, 2018 WL 3849904, at *3 (D.N.J. Aug. 13, 2018) (calling a claim to the contrary "bogus"). I **GRANT** summary judgment to Cigna on this claim.

> i. <u>Code 17999</u>

Plaintiff also argues that Cigna should have paid for Code 17999 (angiography) because, even though K.D. did not request or receive preapproval for it, that procedure is medically necessary.[11] *See* Pl. Opp., at 7. Cigna argues that its preapproval provision imposes an independent requirement for inpatient hospital services such as the angiography, regardless of whether they are medically necessary.[12]

Under the Plan, "[c]ertain services require prior authorization to be covered." *See* JA, at 45. This includes essentially all inpatient services at a hospital or "other health care facility." *Id.* at 25-26. Consistent with the "Prior Authorization/Pre-Authorized" provision, K.D. requested and received approval for Codes 19357, 15777, and 15734. *See* JA, at 168. But she did not request— or receive—approval for Code 17999. *Id.* The approval letter underscored the importance of the Prior Authorization provision: "When we receive your medical claims, we'll need to make sure your health care professional performed only services we approved. If extra services were

---

11    Medical necessity is different from medical emergency, which is governed by the Plan's Emergency Medical Condition and Emergency Services provisions. *See* JA, at 54. Such services generally pay out the same whether they are in-network or out-of-network, and do not require preapproval. *See, e.g.*, *id.* at 17. Plaintiff does not contend that a medical emergency (as defined by the Plan) necessitated the angiography, only that it was medically necessary.

12    The parties also dispute whether an angiography is medically necessary at all, but because I decide that Cigna did not abuse its discretion in denying Code 17999, *see infra*, I need not reach this issue. To be sure, though, the Plan appears to grant Cigna the discretion to define what is or is not medically necessary. *See* JA, at 56 ("Medically Necessary Covered Services are those determined by the Medical Director . . .").

performed that weren't medically necessary or covered by your plan, we won't be able to pay for them." *Id.* at 168.

Plaintiff reads the approval letter to mean that "[a] denial of a procedure not preauthorized is supported only if the procedure is medically unnecessary or not covered by the plan." *See* Pl. Opp., at 7. Plaintiff then claims that the angiography is medically necessary to prevent tissue death, and concludes that "[t]here is no basis to deny payment" for Code 17999. *Id.* Plaintiff's interpretation is erroneous. The Plan's default rule for inpatient hospital services is not "approval unless otherwise denied as unnecessary," but rather "denial unless otherwise preapproved," regardless of whether the services are medically necessary. *See* JA, at 45, 56. Medical necessity and preapproval are independently necessary and jointly sufficient to cover inpatient services. *See, e.g.*, *id.* at 168 ("While you're in the hospital, [Cigna will] work with your doctors . . . to get approvals for any medically necessary services covered by your plan."); *id.* at 45 ("In general, health services . . . must be Medically Necessary to be covered under the plan."); *id.* at 56 (defining "Medically Necessary"); *id.* at 25 ("The term Prior Authorization means the approval that a Participating Provider must receive . . . , prior to services being rendered, in order for certain services . . . to be covered under this policy.").

Other considerations support Cigna's decision to deny Code 17999. First, Cigna's decision is consistent with Plan goals: to provide inpatient services while minimizing costs, prevent unnecessary procedures, pay only for those benefits legally due under the Plan, and enforce the Plan's utilization/medical management provisions. *Accord Pers. Pool of Ocean Cty., Inc. v. Trs. of Heavy & Gen. Laborers' Welfare Fund*, 899 F. Supp. 1362, 1372-73 (D.N.J. 1995) (upholding administrator's decision where the "goals of the Plan are to provide those benefits permitted by the Plan in accordance with its provisions," and where the explicit language of that plan provided

only limited benefits for the type of expense at issue); *Elite Orthopedic & Sports Med. PA v. N. New Jersey Teamsters Benefit Plan*, No. 14-6932, 2017 WL 3718379, at *6 (D.N.J. Aug. 29, 2017) (same). Second, Cigna's decision does not render any other Plan language meaningless or inconsistent. Quite the opposite, it enforces the Prior Authorization provision, *see* JA, at 25-26, which Plaintiff's position ignores. Third, Cigna's decision does not conflict with any substantive or procedural requirements of ERISA. *Accord Davidson v. Wal-Mart Assocs. Health & Welfare Plan*, 305 F. Supp. 2d 1059, 1087 (S.D. Iowa 2004) ("ERISA does not create a substantive entitlement to [health] benefits . . . . [t]he level of benefits to be provided is within the control of the private parties creating the plan . . . [and] ERISA does not prohibit exclusions in plan benefits where the exclusion has a legitimate business purpose."). Finally, Cigna's decision is consistent with, not contrary to, Plan language. *See* JA, at 25.

In short, rather than cover an inpatient procedure unless it is medically unnecessary, Cigna will only do so if the procedure is both medically necessary and preauthorized. Because K.D. did not seek or receive approval for an angiography, Plaintiff has no right to payment under the Plan regardless of whether the procedure was medically necessary. Cigna, in turn, did not abuse its discretion by denying Code 17999.[13] I **GRANT** summary judgment to Cigna on this claim.

     ii.    Codes 19357, 15860, and 15777

Plaintiff mentions in passing that Cigna improperly reduced Code 19357 (breast reduction), Code 15860 (integumentary repair), and Code 15777 (implant) by half, but never substantively explains why that is the case, or whether Cigna abused its discretion under the "Multiple Surgical

---

[13]    Plaintiff does not point to a single case where a patient failed to seek preapproval but a court held that the insurance company improperly denied coverage anyway, nor have I found one. Even in cases where a plaintiff challenges an insurance company's decision to *deny* preapproval, courts employ a highly deferential standard of review and usually uphold the decision. *See, e.g.*, *Whitford v. Horizon Blue Cross Blue Shield of New Jersey*, No. 17-2637, 2018 WL 2422020, at *5 (D.N.J. May 29, 2018).

Reduction" provision in doing so, and most of all, does not submit any evidence to this end. Plaintiff seems to raise the "Multiple Surgical Reduction" provision merely to support its contention that Cigna improperly denied Code 17999 by treating some procedures as inclusive of each other but others separately. For that reason, Plaintiff has not properly supported its claim as to these Codes. In any event, courts have found identical reimbursement schemes to be acceptable under ERISA. *See, e.g.*, *Krauss*, 418 F. Supp. 2d at 428 ("There is nothing irrational about concluding that a surgeon ought not be reimbursed at double his normal rate for performing bilateral surgery . . . . Repairing or replacing two organs at the same time makes use of the same facilities, requires only one hospital stay, and is generally less time-consuming for the doctor as well as the patient. Independent studies, conducted by the Harvard School of Public Health in 1993, concluded that multiple and bilateral surgeries required only forty to fifty percent more work than would be required for a single surgery of the same type."). Likewise, as discussed *supra*, Medicare has adopted a 150% rate for bilateral procedures, which is evidence of standard insurance industry practice and necessarily not arbitrary or unreasoanble. *See* 59 Fed. Reg. p. 32767. I **GRANT** summary judgment to Cigna on this claim.

### D. *Plaintiff's Decision not to Appeal Claim 4009 to Cigna*

Finally, the parties dispute whether Plaintiff may seek review in federal court for Claim 4009, which encompasses Dr. Ashinoff's bill. *See* JA, at 98. Cigna argues in the negative because Plaintiff did not appeal Claim 4009. Plaintiff argues that its appeal would have been futile in light of Cigna's decisions on Claim 4015.

An ERISA participant must exhaust administrative remedies before initiating a lawsuit to recover benefits or otherwise enforce rights. *See Harrow v. Prudential Ins. Co. of Am.*, 279 F.3d 244, 249 (3d Cir. 2002). The exhaustion requirement reduces frivolous lawsuits, promotes the

consistent treatment of claims, and enhances fiduciary management by preventing premature court intervention. *See Metro. Life Ins. Co. v. Price*, 501 F.3d 271, 279 (3d Cir. 2007). Because it is an affirmative defense, *see Am. Chiropractic Ass'n v. Am. Specialty Health, Inc.*, 625 Fed. App'x. 169, 173 (3d Cir. 2015), a defendant bears the burden of proof. *See Jakimas v. Hoffmann-La Roche, Inc.*, 485 F.3d 770, 782 (3d Cir. 2007). Here, Cigna has submitted sufficient evidence to show that Plaintiff did not exhaust its administrative remedies: *e.g.*, Plaintiff did not appeal Claim 4009 internally to Cigna or externally to the IRO, as required by the Plan. *See* JA, at 23-25, 104-44 (attaching Plaintiff's appeal letters for Claim 4015, neither of which references charges associated with Claim 4009). Plaintiff concedes this point. *See* Pl. Opp., at 4 ("[We] made the decision to pursue an appeal of Dr. Elkwood's claim knowing that the decision . . . would be the basis for approving or denying an appeal on Dr. Ashinoff's claim.").

Still, "[a] plaintiff is excused from exhausting administrative procedures under ERISA if it would be futile to do so." *Harrow*, 279 F.3d at 249; *see also Berger v. Edgewater Steel Co.*, 911 F.2d 911, 916 (3d Cir. 1990) ("Although the exhaustion requirement is strictly enforced, courts have recognized an exception when resort to the administrative process would be futile."). A plaintiff must make a "clear and positive showing of futility." *Brown v. Cont'l Baking Co.*, 891 F. Supp. 238, 241 (E.D. Pa. 1995). To determine whether a plaintiff is excused on this basis, a court considers: "(1) whether plaintiff diligently pursued administrative relief; (2) whether plaintiff acted reasonably in seeking immediate judicial review under the circumstances; (3) existence of a fixed policy denying benefits; (4) failure of the insurance company to comply with its own internal administrative procedures; and (5) testimony of plan administrators that any administrative appeal was futile." *Harrow*, 279 F.3d at 249; *Berger*, 911 F.2d at 916-17; *see also Metz v. United Counties Bancorp.*, 61 F. Supp. 2d 364, 383-84 (D.N.J. 1999).

Plaintiff insists that it would have been futile to appeal Claim 4009 in light of Cigna's decisions on Claim 4015. I am not convinced that Plaintiff's lack of success in appealing Claim 4015, alone, constitutes a "clear and positive showing of futility" with respect to Claim 4009. *Brown*, 891 F. Supp. at 241. Plaintiff offers only a "bare assertion" as to how Cigna might have treated that claim. *See Dunn v. Honeywell Int'l, Inc.*, No. 11-2810, 2012 WL 12517918, at *5 (D.N.J. Oct. 9, 2012). It is true that Cigna denied Claim 4015 based on Plan terms—*e.g.*, billing separately for one and the same procedure without submitting a modifier, failing to obtain preapproval, and performing multiple surgeries at once. However, Plaintiff has not demonstrated that these terms constitute policies that are "so fixed that an appeal would serve no purpose." *See Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund*, 590 F. Supp. 211, 216 (E.D. Pa. 1984); *see also Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 419 (6th Cir. 1998) ("A plaintiff must show that 'it is certain that his claim will be denied on appeal, not merely that he doubts that an appeal will result in a different decision.'") (quoting *Lindemann v. Mobil Oil Corp.*, 79 F.3d 647, 650 (7th Cir.1996)). To the contrary, as Cigna represents in its motion, "had Plaintiff substantiated its claim for a separate payment under Code 15734 with the appropriate modifier, it might well have been paid." *See* Def. Opp., at 11. Further, while the Plan states that an assistant surgeon's allowable charges are "limited" to a "percentage of the [primary] surgeon's," *see* JA, at 12, it does not indicate that an assistant surgeon's reimbursement eligibility rises and falls with that of the primary surgeon.

In any event, "all factors may not weigh equally" in every case, *Harrow*, 279 F.3d at 250, and I find it decisive here that Plaintiff pursued no administrative relief on Claim 4009 despite knowing the appeals procedures available to it, *see* JA, at 45-47, 63-65, the differences in Dr. Ashinoff's bill compared to Dr. Elkwood's, the fact that the doctors' claims are reimbursed

separately (perhaps even differently) pursuant to "Cigna Reimbursement Policies," *id.* at 12, and the fact that "[i]n most case, [Plaintiff] may not initiate a legal action against Cigna until [it] ha[s] completed the appeals process." *Id.* at 47; *accord Emami v. Cigna Health & Life Ins. Co.*, No. 17-9226, 2019 WL 4187700, at *5 (D.N.J. Sept. 3, 2019) (granting summary judgment on assistant doctor's claims in part on this basis); *D'Amico v. CBS Corp.*, 297 F.3d 287, 293 (3d Cir. 2002) ("Plaintiffs who fail to make known their desire for benefits to a responsible company official are precluded from seeking judicial relief.") (citations omitted). I **GRANT** summary judgment to Cigna on this claim.

## A. CONCLUSION

Defendants' Motion for Summary Judgment is **GRANTED** as to Code 15734 because Plan terms bar billing for that Code in conjunction with Code 19357 without a valid modifier, consistent with NCCI Guidelines, which Plaintiff did not submit; **GRANTED** as to Code 17999 because Plaintiff did not seek preapproval for that procedure in accordance with the Plan; **GRANTED** as to Codes 19357, 15777, and 15860 because Plan terms permit Cigna to reduce by half multiple surgeries performed at the same time; **GRANTED** as to Dr. Ashinoff's charges because Plaintiff failed to exhaust administrative remedies; and **DENIED** as to its claim that it did not arbitrarily apply the "Maximum Reimbursable Charge" provision to determine how much to pay Plaintiff under any Code not denied or reduced to $0. Plaintiff's Motion for Summary Judgment is **DENIED** in full. I **REMAND** to Cigna to recalculate any amounts paid under the Plan, consistent with the terms of the "Maximum Reimbursable Charge" provision as written, which may affect Codes 19357, 15777, and 15860.

**DATED**: April 29, 2021                            /s/ Freda L. Wolfson
                                                    Hon. Freda L. Wolfson
                                                    U.S. Chief District Judge